Nos. 21-13740

---

## UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

---

PENELOPE STILLWELL, co-relator, for herself and as
representative of co-relator William Stillwell, deceased,

*Qui Tam* Plaintiff-Appellant,

vs.

STATE FARM FIRE AND CASUALTY CO. and
MOTORISTS MUTUAL INSURANCE COMPANY,

Defendants-Appellees.

---

Appeal from the Honorable Steven D. Merryday
United States District Court Judge, Middle District of Florida
Tampa Division, Case No. 8:17-cv-01894-SDM-AAS

---

**OPENING BRIEF (Corrected)**

---

Jeremy L. Friedman, CA Bar No. 142659
Attorney at Law
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087
Email: jlfried@comcast.net

Attorney for *Qui Tam* Plaintiff and Appellant
Penelope Stillwell

**Stillwell,** *etc.* **v. State Farm Fire and Casualty,** *et al.***, No. 21-13740 (CIP 1 of 2)**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE

1.    Allen, Esq., David Matthew

2.    Anthem Blue Cross and Blue Shield (ANTM)

3.    Boyd & Jenerette, P.A.

4.    Carlton Fields Jordan Burt, P.A.

5.    Center for Medicare and Medicaid Services

6.    Chamberlain, Esq., Daniel

7.    Cohen & Malad, LLP

8.    Emden, Esq., Christopher J.

9.    Eagle-Kirkpatrick Management Company, Inc.

10.    Estate of William Stillwell, deceased

11.    Franz, Esq. Kevin D.

12.    Friedman, Esq. Jeremy L.

13.    Gooden, Esq., Kansas R.

14.    GT Services, Inc., d/b/a Green Touch Services, Inc.

15.    Grover, Esq., Steven F.

16.    Hill & Lemongello, P.A.

17.    Joven, Esq., Carol N.

18.    Kirkpatrick Management Co., Inc.

19.    Lemongello, Esq., Daniel

20.    Merryday, Honorable Steven D.

21.    Motorists Mutual Insurance Company

22.    Optimal Performance and Physical Therapies

23.    Price Waicukauski Joven & Caitlin, LLC

24.    Reid, Esq., Benjamin

**Stillwell,** *etc.* **v. State Farm Fire & Casualty,** *et al.***, No. 21-13740 (CIP 2 of 2)**

25.  Rocap, Esq., Richard A.

26.  Rocap Law Firm

27.  Sansone, Honorable Amanda A.

28.  Schulz, Esq., Bradley J.

29.  Section C Homeowners Association, Inc.

30.  State Farm Fire and Casualty Company

31.  State Farm Litigation. Counsel

32.  Steven F. Grover, P.A.

33.  Stillwell, Penelope

34.  United States Attorney's Office

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Relator Penelope Stillwell desires oral argument. This appeal raises novel issues under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended in 1986 and 2009, and its intersection with the Medicare Secondary Payer Act (MSP) and Section 111 of the Medicare, Medicaid and SCHIP Extension Act (MMSEA), both codified at 42 U.S.C. § 1395y(b). Appellant believes oral argument would aid the Court's decisional process, as it would permit counsel to address any questions by the panel regarding the complex statutory scheme designed to protect fiscal integrity of the Medicare Program.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS ................................................................... iv

TABLE OF AUTHORITIES ............................................................... vi

JURISDICTION ........................................................................... xi

ISSUES ..................................................................................... 1

STATEMENT OF THE CASE ............................................................ 3

A.     Statutory and Regulatory Background ....................................... 3

       1.     Medicare Secondary Payer ............................................ 3

       2.     Section 111 of MMSEA ................................................ 6

       3.     False Claims Act ....................................................... 9

B.     Facts of the Case ............................................................ 10

C.     Procedural History ........................................................... 15

D.     Final Disposition ............................................................ 17

E.     Standards of Review ........................................................ 19

SUMMARY OF ARGUMENT ............................................................ 20

ARGUMENT ............................................................................... 23

I.     Stillwell States a Claim Under MSP ........................................ 23

       A.     As Representative of a Medicare Beneficiary with an Interest in the
              Claims for Repayment, Stillwell has Standing Under MSP ............. 23

       B.     Stillwell Pleads Facts Meeting the Legal Elements of MSP ........... 24

       C.     Payment of a Settlement to the Stillwells Did Not Extinguish the
              Insurers' Primary Plan Responsibility Owed to Medicare, Nor
              Turn the Beneficiary Into a Primary Plan ........................... 26

II.     Stillwell States Claims Under the False Claims Act ................................... 29

        A.      Stillwell Alleges Particular Facts Showing State Farm and Motorists
                Engaged in False and Improper Conduct ......................................... 29

        B.      Stillwell Adequately Alleges Causation of False Claims ................ 33

        C.      Stillwell Pleads "Reverse False Claim" Violations ......................... 35

III.    The District Court Was Wrong to Dismiss Based on Inaction by the
        Secretary or the Judicial Policy Favoring Settlements ............................... 38

CONCLUSION ................................................................................................... 40

CERTIFICATE OF COMPLIANCE .................................................................... 41

CERTIFICATE OF SERVICE ............................................................................. 41

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 19

*Berry v. Toyota Motor Sales, U.S.A.*,
    2015 U.S. Dist. LEXIS 3319 (W.D. La. 2015) ...................................... 38, 39

*Bruton v. Carnival Corp.*, 2012 U.S. Dist. LEXIS 64416 (S.D. Fla. 2012) ......... 39

*Cochran v. United States Health Care Fin. Admin.*,
    291 F.3d 775 (11th Cir. 2002) ...................................................................... 4

*Early v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 16711 (S.D. Fla. 2013) ........... 39

*Frank v. Gateway Ins. Co.*,
    2012 U.S. Dist. LEXIS 33581 (W.D. La. 2012) ............................ 28, 38, 39

*Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318 (11th Cir. 2009) ................... 19, 20

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
    832 F.3d 1229 (11th Cir. 2016) ................................................. 5, 23, 24, 28

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
    880 F.3d 1284 (11th Cir. 2018) ........................................................... 27, 28

*McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*,
    423 F.3d 1256 (11th Cir. 2005) .................................................................. 9

*Michigan Spine & Brain Surgeons, PLLC v. State Farm Mutual Automobile*
    *Insurance Co.*, 758 F.3d 787 (6th Cir. 2014) ........................................... 23

*MSP Recovery Claims, Series LLC v. Ace American Ins. Co.*,
    974 F.3d 1305 (11th Cir. 2020) ........................................................... 23, 24

*MSP Recovery Claims, Series LLC v. Grange Ins. Co.*,
    2019 U.S. Dist. LEXIS 214201 (N.D. Ohio 2019) ..................................... 24

*MSP Recovery, LLC v. Allstate Ins*. Co., 835 F.3d 1351 (11th Cir. 2016) .......... 24

*Negron v. Progressive Cas. Ins. Co.*,

    2016 U.S. Dist. LEXIS 24994 (D. N.J. 2016) ............................................ 35

*Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089 (11th Cir. 2020) ........................ 18, 34

*Ruiz v. Rhode Island*, 2020 U.S. Dist. LEXIS 73448 (D. R.I. 2020) .................... 6

*Sipler v. Trans Am Trucking, Inc.*, 881 F. Supp. 2d 635 (D.N.J. 2012) .............. 39

*Stalley ex rel. U.S. v. Orlando Regional Healthcare System*,

    524 F.3d 1229 (11th Cir. 2008) .................................................... 23

*Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007) ................... 23

*United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144 (5th Cir. 1996) ....................... 11

*United States ex rel. Clausen v. Lab. Corp. of America*,

    290 F.3d 1301 (11th Cir. 2002) .................................................... 20

*United States ex rel. Customs Fraud Investigations v. Victaulic Co.*,

    839 F.3d 242 (3d Cir. 2016). ...................................................... 36

*United States ex rel. Drescher v. Highmark, Inc.*,

    305 F. Supp. 2d 451 (E.D. Pa. 2004) ........................................... 34

*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009) .......... 15

*United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*,

    739 F.3d 598 (11th Cir. 2014) .................................................... 19

*United States ex rel. Matheny v. Medco Health Sols., Inc.*,

    671 F.3d 1217 (11th Cir. 2012) ................................................... 36

*United States ex rel. Saint Joseph's Hosp., Inc. v. United Distribs.*,

    2015 U.S. Dist. LEXIS 164015 (S.D. Ga. 2015) ....................................... 35

*United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*,

    2009 U.S. Dist. LEXIS 15988 (N.D. Okla. 2009) ..................................... 35

*United States ex rel. Takemoto v. ACE, Ltd.*,

    157 F. Supp. 3d 273 (W.D.N.Y. 2015) ........................................... 20

*United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542 (D.C. Cir. 2002) 9

*United States ex rel. Walker v. R & F Props. of Lake Cty., Inc.*,

    433 F.3d 1349 (11th Cir. 2005) ................................................... 15

*United States ex rel. Wallace v. Exactech, Inc*,

    2020 U.S. Dist. LEXIS 139593 (N.D. Ala. 2020)  ..................................... 36

*United States ex. rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001) .............. 33, 34

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003)  ........... 3, 4, 6, 24

*United States v. Crumb*, 2016 U.S. Dist. LEXIS 112661 (S.D. Ala. 2016)  ........ 36

*United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234 (11th Cir. 1999)  ............. 36

*Universal Health Servs. v. United States ex rel. Escobar*,

    579 U.S. 176 (2016) ............................................................. 33,34

*Williamson v. Travelport, LP*, 953 F.3d 1278 (11th Cir. 2020) ........................... 19


<u>Statutes</u>

28 U.S.C. § 1291 ..................................................................... xi

28 U.S.C. § 1331 ..................................................................... xi

28 U.S.C. § 1345 ..................................................................... xi

False Claims Act, 31 U.S.C. § 3729  ...................................... xi, 2, 9, 18, 20, 35-37

False Claims Act, 31 U.S.C. § 3730 ......................................... xi, 3, 9

False Claims Act, formerly 31 U.S.C. § 3729(a)(7) ............................. 36

False Claims Act, 31 U.S.C. § 3732(a)  ........................................... xi

Social Security Act, 42 U.S.C. § 1395y(a)(1)(A) ........................... 33, 34

Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) ...... 1, 3-6, 24, 26, 27, 37

Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3) ................. xi, 1, 3, 5, 23

Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(6) ................... 33

Section 111 of the Medicare, Medicaid and SCHIP Extension

    Act of 2007 (MMSEA), 42 U.S.C. § 1395y(b)(8) ............................... 1, 6, 7

42 U.S.C. § 1396k ................................................................. 31

Medicare Prescription Drug, Improvement, and Modernization

Act of 2003 (MMA), Pub. L. 108-173. ...................................................... 27

Fraud Enforcement and Recovery Act, Pub. Law 111-21,

123 Stat. 1617 (2009) (FERA) ............................................................... 18, 36

Legislative History

S. Rep. No. 99-345 (1986) ...................................................................... 9

H. Rep. No. 99-660 (1986) ...................................................................... 9

S. Rep. No. 111-10 (2009) ...................................................................... 9

Rules

Federal Rules of Civil Procedure, Rule 8 ................................................ 37

Federal Rules of Civil Procedure, Rule 9(b) ......................................... 20, 36, 37

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................... 19, 25

Regulations

42 C.F.R. § 411.22 ................................................................... 5, 24, 27, 37

42 C.F.R. § 411.25 ...................................................................... 5

42 C.F.R. § 411.26 ...................................................................... 6

24 C.F.R. § 411.31 ...................................................................... 34

42 C.F.R. § 411.32 ...................................................................... 33

42 C.F.R. § 411.37 ...................................................................... 26. 31

42 C.F.R. § 411.39 ...................................................................... 31

42 C.F.R. § 411.46 ...................................................................... 17, 38

42 C.F.R. § 411.50 ...................................................................... 11, 38

42 C.F.R. § 411.51 ...................................................................... 38

42 C.F.R. § 411.52 ...................................................................... 33, 38

42 C.F.R. § 411.53 ...................................................................... 33, 38

42 C.F.R. § 411.54 ...................................................................... 38

Administrative Materials

73 Fed. Reg. 9679 ............................................................................. 25, 27

Advanced Notice of Proposed Rulemaking 77 Fed. Reg. 35917 .......................... 38

Medicare Claims Processing Manual (Pub.100-04), Chapter 26 .......................... 33

Section 111 NGHP User Guide ................................................... 7, 8, 27, 29, 30, 32

Other Authorities

Joel Hesch, Understanding the Revised Reverse False Claims Provision

of the False Claims Act and Why No Proof of a False Claim is Required,

53 UIC J. Marshall L. Rev. 461 (2021) ....................................................... 36

**JURISDICTION**

Subject matter jurisdiction in the district court for this action under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.,* and the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3), is predicated upon 28 U.S.C. § 1331 and § 1345, as well as 31 U.S.C. § 3730 and § 3732(a) and (b).

This appeal is from the Judgment of the district court disposing of all claims dated September 27, 2021, ECF 125, following entry on the same day of an order of dismissal, ECF 124.

Jurisdiction here over the district court's judgment is predicated on 28 U.S.C. § 1291. Notice of appeal, ECF 126, was timely filed October 25, 2021.

## ISSUES

Under the Medicare Secondary Payer Act (MSP), 42 U.S.C. § 1395y(b)(2), the government is proscribed from paying Medicare claims as primary payer when payment "has been or reasonably can be expected to be made" under a liability or no-fault insurance policy. Liability and no-fault insurance are considered "primary plans" which must reimburse the government whenever it is demonstrated they have *or had* responsibility to make payment for any item or service paid for by Medicare. The United States – or an interested party under the statutory private right of action in § 1395y(b)(3) – may sue primary plans and recover double damages when they fail to reimburse Medicare's secondary payments.

To enforce accountability under MSP, Congress enacted Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA), codified in the MSP statutory framework at § 1395y(b)(8). Thereunder, each no-fault or liability insurance policy or plan "shall" (i) "determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under" Medicare, and (ii) "if the claimant is determined to be so entitled" submit information "to the Secretary in a form and manner (including frequency) specified by the Secretary," including "the identity of the claimant" and "such other information as the Secretary shall specify in order to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim."

Under the Secretary's instructions, no-fault and liability plans every quarter must report (1) when they have ongoing responsibility for medical costs related to an injured Medicare beneficiary (and when such ongoing responsibility has been terminated); and, independently, (2) claims information regarding a total payment obligation to a claimant/beneficiary in connection with an injury pursuant to a settlement, judgment or other payment.

In December 2010, William Stillwell suffered a catastrophic injury to his left ankle, requiring amputation and substantial medical care for the rest of his life. State Farm Fire and Casualty Co. (State Farm) and Motorists Mutual Insurance Company (Motorists) were no fault and liability insurers with primary payer responsibility for medical costs resulting from William's injury. William and his wife Penelope commenced this action under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the private right of action of MSP. William passed away in April 2020, and Penelope continues the action as relator and representative of William's estate. In her third amended complaint, Penelope alleges that neither State Farm nor Motorists reimbursed the government for Medicare claims paid to William's providers, and neither complied with mandatory reporting requirements of MMSEA Section 111. She alleges that, instead, these insurers entered into a settlement in 2016, purporting to extinguish their primary payer responsibilities and shift those responsibilities onto the Stillwells. The release drafted by Motorists and used by both insurers to enforce the settlement stated falsely that William had concluded his care related to the injury, and that he did not expect post-settlement injury-related medical costs.

This appeal raises two questions:

1.  May State Farm or Motorists extinguish primary payer responsibility under MSP solely by entering into a private settlement agreement without Medicare's involvement releasing the beneficiary's post-settlement claims to medical damages?

2.  Does relator Penelope state claims under the False Claims Act by alleging that State Farm and Motorists knowingly (a) caused William's medical providers to present Medicare claims to the government as primary payer, or (b) concealed or improperly avoided their obligation to reimburse Medicare's secondary payments?

## STATEMENT OF THE CASE

Relator and plaintiff Penelope Stillwell alleges State Farm and Motorists were "primary plans" under § 1395y(b)(2)(A)(ii), with no-fault and liability insurance coverage obligating them to pay medical costs associated with William Stillwell's injury and to reimburse the government for Medicare's conditional secondary payments. As representative of the beneficiary's estate, she sues under the private right of action, § 1395y(b)(3), to recover double damages for William's injury-related post-settlement medical costs paid for by Medicare.

Penelope further alleges State Farm and Motorists knowingly (1) caused William's care providers to present legally false claims to Medicare as primary payer, and (2) concealed or improperly avoided an obligation to reimburse Medicare; by failing to comply with mandatory MMSEA reporting requirements, by entering a private agreement purporting to shift primary payer responsibility onto the beneficiary, and by creating a false statement William expected no post-settlement injury-related medical care. She sues for treble damages and penalties under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b).

### A.    Statutory and Regulatory Background

#### 1.    Medicare Secondary Payer

"The MSP is actually a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs. In a nutshell, the MSP declares that, under certain conditions, Medicare will be the secondary rather than primary payer for its insureds. Consequently, Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 874-75 (11th Cir. 2003) (citations omitted).

Although the statute is structurally complex, "the MSP's function is straightforward." *Id*.

> If payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay. In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly. [*Id*. (*quoting Cochran v. United States Health Care Fin. Admin*., 291 F.3d 775, 777 (11th Cir. 2002)).]

Medicare has been secondary to workers' compensation from inception of the program in 1965. In 1980, Congress amended the law to make Medicare a secondary payer to other insurers, including liability and no-fault plans. 42 U.S.C. § 1395y(b)(2)(A)(ii) ("[T]he term "primary plan" means a . . . liability insurance policy or plan (including a self-insured plan) or no fault insurance").

Several parts of MSP are pertinent to the resolution of this appeal. First, the statute proscribes payment by Medicare as the primary payer when a primary plan has or had responsibility to pay. 42 U.S.C. § 1395y(b)(2)(A)(ii) ("Payment under [the Medicare program] *may not be made*, except as provided in subparagraph (B), with respect to any item or service to the extent that . . . payment has been made or can reasonably be expected to be made under a . . . *liability insurance* policy or plan . . . or under *no fault insurance*") (emphasis supplied).

Second, MSP allows Medicare to make secondary payments conditioned on reimbursement by the primary plan. 42 U.S.C. § 1395y(b)(2)(B)(i) ("The Secretary may make payment under this title with respect to an item or service if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly []. Any such payment by the Secretary *shall be conditioned on reimbursement* to the appropriate Trust Fund in accordance with the succeeding provisions") (emphasis supplied).

Third, primary plans are obligated to reimburse Medicare's secondary payments whenever it is demonstrated the primary plan has *or had* responsibility to

pay. 42 U.S.C. § 1395y(b)(2)(B)(ii) ("Subject to paragraph (9) [not at issue in this case], a primary plan, and an entity that receives payment from a primary plan, *shall reimburse* the appropriate Trust Fund for any payment made by the Secretary . . . with respect to an item or service *if it is demonstrated* that such primary plan has *or had* a responsibility to make payment with respect to such item or service") (emphasis supplied). "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id*.

Regulations promulgated by the Center for Medicare and Medicaid Services (CMS) clarify that demonstration of primary payer responsibility "by other means" includes but is "not limited to a settlement, award, *or contractual obligation*." 42 C.F.R. § 411.22 (emphasis supplied). Primary plans also "must provide notice about primary payment responsibility and information about the underlying MSP situation" and "describe the specific situation and the circumstances," whenever "it is demonstrated to" the primary payer "that CMS has made a Medicare primary payment for services for which the primary payer has made or should have made primary payment." 42 C.F.R. § 411.25.

MSP provides the United States may sue "any or all entities that are or were required or responsible (directly, as an insurer . . . ) to make payment" and "*may . . .collect double damages*" (§ 1395y(b)(2)(B)(iii)). Double damages are *required* under the private right of action "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)" (§ 1395y(b)(3)(A)). *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1240 (11th Cir. 2016) ("Unlike the Government's cause of action, the private cause of action uses the mandatory language 'shall' to describe the damages amount").

In addition, the United States has subrogation rights (§ 1395y(b)(2)(B)(iv)); intervention rights (42 C.F.R. § 411.26(b)); it may waive recovery of conditional payments (§ 1395y(b)(2)(B)(v)); it has a website for claimants and applicable plans to determine final reimbursement amounts for paid costs (§ 1395y(b)(2)(B)(vii)); and primary plans have a special right and process for appeal over determinations of conditional reimbursement amounts (§ 1395y(b)(2)(B)(viii)).

2.    **Section 111 of MMSEA**

Waiting for insurance companies to notify CMS after their primary payer status had been "demonstrated" to them proved inefficient, leading to a strategy of "pay and chase" and depletion of Medicare funds. As this Circuit noted in 2003, "when Medicare pays, [] it is paying 'in the dark' – it does not know, and cannot know, whether someone else will pay." *Baxter Int'l.*, 345 F.3d at 901.

As a result, in 2007, Congress amended the Medicare Act with Section 111 of MMSEA, codified within MSP at § 1395y(b)(8). Section 111 sought to increase Medicare's knowledge base by imposing an affirmative duty on primary plans to determine and self-report their status to Medicare. "The MMSEA reporting requirements were adopted to add teeth to a concept embedded in the law since 1980 – that Medicare is the secondary payor and must be reimbursed if any other payment source is available." *Ruiz v. Rhode Island*, 2020 U.S. Dist. LEXIS 73448, *6 n. 5 (D. R.I. 2020) (citations omitted).

As Senator Grassley noted just prior to the passage of Section 111:

As in previous legislation that Congress has passed, this legislation will continue to improve accountability in the Medicare Program. There are situations when Medicare is not the primary payer for a beneficiary's health care, but it is currently difficult to identify these situations. This legislation will improve the Secretary's ability to identify beneficiaries for whom Medicare is the secondary payer by requiring group health plans liability insurers to submit data to the Secretary. [153 Cong. Rec. S15834 (daily ed. Dec. 18, 2007).]

In pertinent part, with emphasis supplied, § 1395y(b)(8) provides:

"[A]n applicable plan *shall* – (i) *determine whether a claimant* (including an individual whose claim is unresolved) *is entitled to benefits* under the [Medicare] program . . . on any basis; and (ii) *if the claimant is determined* to be so entitled, *submit the information* described in subparagraph (B) with respect to the claimant *to the Secretary in a form and manner (including frequency) specified by the Secretary*. . . . The information described in this subparagraph is – (i) the *identity of the claimant* for which the determination . . . was made; and (ii) *such other information as the Secretary shall specify in order to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim*."

A liability or no-fault insurance plan which fails to comply with reporting requirements "may be subject to a civil money penalty of up to $1,000 for each day of noncompliance with respect to each claimant" (§ 1395y(b)(8)(E)).

> A civil money penalty under this clause shall be *in addition to any other penalties prescribed by law and in addition to any Medicare secondary payer claim* under this title with respect to an individual. [*Id.* (citation omitted, emphasis supplied).]

Subparagraph (H) provides: "Notwithstanding any other provision of law, the Secretary may implement this paragraph by program instruction or otherwise." CMS has issued and revised five volumes of instructions for Non-Group Health Plans (NGHP), entitled "MMSEA Section 111 Medicare Secondary Payer, Mandatory Reporting Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation User Guide" ("NGHP User Guide").[1] Relator's third amended complaint (ECF 105, ¶¶52-63) summarizes these reporting requirements, including:

---

[1]These User Guides may be accessed at CMS's website: https://www.cms.gov/ Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-F or-Non-Group-Health-Plans/NGHP-User-Guide/NGHP-User-Guide.

- Organizations that must report under Section 111 are called Responsible Reporting Entities ("RREs").

- RREs have two distinct duties: (1) determine whether a claimant is entitled to Medicare benefits, and (2) if so, the insured's identity and pertinent claims data must be reported to CMS.

- If Medicare eligibility is determined, an RRE must report whenever the RRE has assumed or is required to assume an ongoing responsibility for medicals ("ORM"), *i.e.,* responsibility to pay, on an ongoing basis, for the injured person's medical bills associated with a claim. The RRE must also report when ORM is terminated.

- When reporting ORM, RREs must provide information on the alleged cause and nature of the injury, and the associated diagnosis codes (International Classification of Diseases, Ninth and Tenth Revision, or ICD-9 or ICD-10), so CMS may determine which specific claims for medical items or service should be paid by the RRE.[2]

- In addition, an RRE must also report information connected to a Total Payment Obligation to Claimant ("TPOC"), including the dollar amount of a settlement, judgment, or other payment.

- If a claim report does not have an ORM, the TPOC fields are required. Conversely, if a claim report has ORM, and there is a settlement, judgment, award, or other payment that is in addition to or apart from the ORM, they must report if the cumulative amount is over the TPOC threshold. The mandatory reporting threshold for liability insurance TPOC Amounts dated January 1, 2016 or after is $750.

---

[2]Relator attached a printout of data elements for these mandatory reports as Exh. A to Third Amended Complaint. ECF 105-1. These elements are described in NGHP User Guide, Chapter IV, Technical Information, § 6.2.

### 3.    False Claims Act

"The False Claims Act is the primary law on which the federal government relies to recover losses caused by fraud." *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Known originally as "Lincoln's Law," the Act was passed during the Civil War, providing for damages and penalties against those who falsely or fraudulently claim federal funds**.** In 1986, Congress amended the Act, to make it "the Government's primary litigative tool for combating fraud" "in modern times." S. Rep. No. 99-345, at 2, 1986 U.S.C.C.A.N. 5266. *See also* H. Rep. No. 99-660, at 18 (1986) (Act "used as the primary vehicle by the Government for recouping losses suffered through fraud" and it is "important that it be an effective tool for recouping these losses").

*Qui tam* provisions, §3730(b), authorize private persons to "stand in the shoes of the government" and enforce the False Claims Act. This provision "is a powerful tool that augments the government's limited enforcement resources by creating a strong financial incentive for private citizens to guard against efforts to defraud the public fisc." *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 546 (D.C. Cir. 2002). In 2009, Congress reinvigorated the Act, calling it "[o]ne of the most successful tools for combating waste and abuse in Government spending." S. Rep. No. 111-10, at 10, 2009 U.S.C.C.A.N. 430, 437.

Under the False Claims Act, treble damages and penalties are imposed on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States, or who " or "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money" to the government, §3729(a)(1)(A) & (a)(1)(G). "Knowingly" is defined as "actual knowledge," "reckless disregard," or "deliberate ignorance" of the truth or falsity of the information, and the Act expressly requires "no proof of specific intent to defraud," §3729(b)(1).

**B.** **Facts of the Case**

On December 13, 2010, William Stillwell sustained serious personal injuries – including a complex left ankle fracture – while on premises of an Indianapolis living community. He became entitled to Medicare on March 30, 2011. His medical condition arising from the incident worsened, and his lower left leg was amputated on July 5, 2011. ECF 105, ¶¶66-71.

The Stillwells brought suit for injuries and loss of consortium in Indiana against Eagle-Kirkpatrick Management Co., Kirkpatrick Management Co., G.T. Services, Inc. d/b/a Green Touch Services, Sycamore Springs Home Owners Association and Section C Homeowners Association. *Id*., ¶¶72-75.

State Farm and Motorists Mutual insured the tortfeasors and retained counsel to defend them. Eagle-Kirkpatrick, Kirkpatrick Management, and Sycamore Springs Homeowners Associations were represented by State Farm's in-house/litigation counsel, Bradley J. Schulz, Esq.; and G.T. Services was represented by Motorists Mutual's insurance defense counsel, Richard A. Rocap., Esq., and his law firm, Rocap Law Firm, LLC. *Id*., ¶¶77-81.

On November 19, 2013, the Medicare Secondary Payer Recovery Contractor (MSPRC) sent a letter, ECF 105-3, to William stating it had established a recovery case after it was notified of a filed liability, no-fault or worker's compensation insurance claim. The letter asked for information regarding William's injuries, but did not indicate Medicare knew the identity of any insurers or type of coverage. Relator alleges the Stillwells gave the recovery letter to their attorney, and believed it was passed along to the insurers' counsel. ECF 150, at ¶¶84-86.

During the litigation, the attorneys for State Farm and Motorists participated in discovery, and they gained actual knowledge of the "seriousness of [William's] accident related injuries and his clear need for continued medical care throughout his lifetime for the injuries." *Id*., ¶87.

On May 11, 2016, the insurers' attorneys attended the deposition of a certified case manager and life care planner, Cheryl Koenemann, who testified to William's need for future care. *Id.*, ¶¶91, 92. She understood William's ankle was "nonhealing and [had] no blood flow the area and he had to make the choice whether to have a fusion or to amputate because of the, basically, the nonunion of the fracture." ECF 105-4 at 17:5-11. Based on a 15-year life expectancy, she testified William would require between $727,852.90 and $770,519.60 for future life care and products. ECF 105-4, at 23:14-20.

Settlement negotiations took place between June 2016 and February 2017. ECF 105, ¶¶94-98. On August 20, 2016, the Stillwells' attorney sent an email to the attorneys for State Farm and Motorists, confirming an agreement to settle at $200,000 "plus MedPay." ECF 105-7. Two days later, the Stillwells signed a "settlement recap" with their attorney that referred to "unused MedPay funds" of $5,000. ECF 105-8. These documents indicate the insurance policies covering the accident included "MedPay" – or medical payments coverage, a form of no-fault insurance. *See* 42 C.F.R. § 411.50(b) ("*No-fault insurance* means insurance that pays for medical expenses for injuries sustained on the property or premises of the insured . . . regardless of who may have been responsible . . . [It] is *sometimes called "medical payments coverage"*, "personal injury protection ", or "medical expense coverage") (emphasis supplied). *See, e.g., United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996) ("We conclude that USAA is a no-fault insurance carrier because Medpay is a form of no-fault insurance").

With full knowledge of their role as carriers with liability and no-fault insurance coverage for William's injury, and of the substantial amounts expected for his future care, both insurers together over the next six months drafted language for releases that they believed would allow them avoid obligations as primary payers owed to the government under MSP. ECF 105, ¶¶99-116.

On August 25, 2016, attorney for State Farm prepared a Memorandum of Understanding, stating terms of the settlement, but omitting any reference to "MedPay," post-settlement medical costs or Medicare. ECF 105, ¶99. This document was not dated but was signed by the attorneys and the Stillwells, and later it was filed with the Indiana court. ECF 105, ¶¶103, 104; ECF 105-11.

On October 5, 2016, CMS sent William a conditional payment letter with a final settlement detail document, stating the total conditional charges requiring payment was $10,575.35. ECF 105, ¶101; ECF 105-9, at 8. On December 5, 2016, CMS sent a demand letter for $19,672.99. ECF 105, ¶102; ECF 105-19, at 3. Neither communication indicated that the government knew whether there was insurance coverage, who any insurers might be, or what type of coverage was required under any policies. Emails between the parties' counsel on January 20, 2017, revealed, however, that *they* knew about the Medicare coverage and amounts owed under MSP for paid claims. ECF 105-12.

Motorists then tendered a check for $100,000 accompanied by a proposed release. ECF 105-13. Therein, the Stillwells were asked to agree "any existing or future medical lien or liens of any type relating to William Stillwell shall be the responsibility of William and Penelope Stillwell," who also agree to "defend, indemnify and save harmless" the insurer from "any claim by or on behalf of William Stillwell or Penelope Stillwell[] brought as a result of any treatment, injuries, or damages." *Id*., at 3-4. It referred to Medicare's "statutory subrogation interest," and it containing the following false statement:

> William Stillwell has completed treatment for his injuries suffered in the Incident. Based upon consultation with her (sic) medical care providers, William Stillwell and Penelope Stillwell do not anticipate the need for future medical care. [ECF 105, ¶105; ECF 105-13, at 4.]

The Stillwells refused to sign. In their view, it violated MSP and they "object to being asked to initial the false statement." ECF 105-14, at 2; ECF 105, ¶¶106-112.

In February, 2017, the insurers communicated with each other and agreed to submit a revised global release. On February 2, State Farm's attorney wrote that he had "done some digging" and he believed Motorists' "language is correct and [we] would need to incorporate it into our release as well." ECF 105-15.

> My understanding is that the need to protect Medicare from paying for future services applies in liability cases. If a settlement covers future medical services, there needs to be a set aside. Some indicia of the possibility of future medical services is the use of a life care plan, or a catastrophic injury (*both present here*). [*Id.* (emphasis supplied).]

A set aside for William's expected future medical care likely would have undone the insurers' agreement. Not only would there be substantial costs involved getting outside counsel or third party to draft an agreement – *see* ECF 105-14, at 1 – but the amount needed to cover William's expected future care would consume the settlement amount. So, instead, on February 3, 2017, State Farm and Motorist combined and presented a single global release. ECF 105-16, at 19-21.

Although the global release omitted the false statement, it retained the same language requiring the *Stillwells* to "agree and promise to defend, indemnify and save harmless" the insurers for any claim "brought as a result of any treatment." *Id.*, at 21. It made no mention of the primary plans' obligations under MSP, but asked the *Stillwells* to acknowledge that "*they* have considered the interests of Medicare/Secretary of Human Services as required by federal law." *Id.* (emphasis supplied). To get the Stillwells to sign the release and simply submit future injury-related medical care to Medicare, the proposal had the Stillwells acknowledge:

> Their future medical care shall not be affected by the terms and conditions of this document. [*Id.*]

The Stillwells refused again to sign the release, as the language "sought to shift to the Stillwells, and away from State Farm and Motorists Mutual, the insurers' obligations under the MSPA as primary payers." *Id.*, ¶¶113-115.

On February 20, 2017, Motorists moved to enforce the settlement, attaching both unsigned releases, including the original release with the false statement of no injury-related future medical expenses. Counsel claimed in his papers that deposit of Motorists' check into the attorney's client trust account constituted acceptance of this original release (the one with the false statement). ECF 105-16, at 6.

On July 17, 2017, the Indiana court enforced the settlement on behalf of all insureds by entering judgment in the amounts stated. ECF 105, ¶116, 117; ECF Nos. 105-16 and 105-17. On July 6, 2018, judgment of the Indiana court was affirmed on appeal. ECF 105, ¶118. In affirming the judgment, however, the Indiana appellate court made clear the parties never reached agreement on the question of responsibility to Medicare, which was not resolved by the judgment.

> The only issue that was not fully addressed in the settlement agreement was the language of the release for Medicare. The language regarding the release(s), however, was not a material part of the agreement. [ECF 105-18, at 8.]

Thus, while the judgment resolved claims by the Stillwells against Eagle-Kickpatrick, Green Touch and other insureds, it effectuated no waiver of Medicare claims under MSP, and the Stillwells were not bound to any obligation that they hold the insurers harmless against Medicare for future claims.

Relator alleges State Farm and Motorists knowingly failed to notify CMS of primary plan status; failed to report ongoing responsibility under MedPay; failed to report total payment obligations involving past medicals; failed to consider Medicare's interest in settlement; drafted and used releases containing false statements and/or improper clauses designed to extinguish primary payer duties; caused William's providers to submit claims for payment to Medicare that were legally false; and conspired to, and in fact did, knowingly and improperly avoid obligations under MSP to reimburse the government for post-settlement injury-related secondary payments. ECF 105, ¶¶110, 111, 119-129, 133-135, 164.

Relator alleges "over one hundred health care providers provided accident-related medical care, supplies, and equipment to Mr. Stillwell and submitted claims to Medicare for reimbursement," identifying a long list of specific providers over two-pages of the complaint, and attaching exhibits which state the dates of service, dates that claims were paid, claim ID numbers, providers, payees, amounts billed and amounts paid. ECF 105, ¶137, ECF Nos. 105-21 and 105-22. Over several paragraphs and four pages of the complaint, relator pleads the particulars of multiple examples of Medicare's payment of William's post-settlement injury-related medical costs. ECF 105 (at 30-34), ¶¶138-141.

## C.    Procedural History

William and Penelope Stillwell filed their original complaint under seal on August 10, 2017. ECF 1. The government declined intervention on April 16, 2018, and the Stillwells proceeded on their own. ECF 7. While the Stillwells sued on their own behalf under MSP, the United States remains the real party in interest in a False Claims Act case, even when it has not intervened. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009); *United States ex rel. Walker v. R & F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005).

With leave of court, the Stillwells filed a first amended complaint, including exhibits. ECF Nos. 61, 61-1 and 61-2. State Farm and Motorists filed separate motions to dismiss, ECF Nos. 56 and 57, which the Stillwells opposed. ECF 62.

On July 18, 2019, while the motion was pending, the case was reassigned from Hon. Elizabeth A. Kovachevich to Hon. Thomas P. Barber. On September 17, 2019, the case was reassigned twice again, and it was eventually set before Hon. Steven D. Merryday. ECF Nos. 63, 66 and 67. Judge Merryday then referred the motions to dismiss to Magistrate Judge Amanda A. Sansome for a report and recommendation. ECF 68. On November 1, 2019, Judge Merryday stayed the action pending resolution of the motions. ECF 70.

On February 27, 2020, the magistrate judge recommended the motions be granted. ECF 71. She concluded the settlement required the Stillwells to pay for future medical costs, extinguishing the insurers' primary payer obligations.

> [T]he Indiana court's decision enforcing the global release, which relieves the defendants from responsibility for Mr. Stillwell's future medical expenses, discredits part of the Stillwells' theory. Because the Stillwells were responsible for any future medical liens or bills, the defendants had no requirement to report any primary payer obligation for future medical expenses to Medicare. [*Id.*, at 19.]

Applying similar reasoning, the magistrate rejected the argument that the insurers failed to obtain a release and waiver from Medicare of future costs, for example by use of a Medicare Set Aside (MSA).

> While an MSA for future medical expenses in a settlement agreement may be a prudent approach, no federal law or regulation requires an MSA in personal injury settlements. [*Id.*, at 20-21.]

The magistrate concluded "any waiver of recovery to Medicare is Mr. Stillwell's responsibility and not the defendants." *Id.*

The magistrate judge agreed that State Farm and Motorists were primary payers, at least "while the litigation and settlement talks occurred." *Id.*, at 30. But she stated Medicare was reimbursed, and thus "the Stillwells cannot show that the defendants failed to comply with their requirements as primary payers." *Id.* In addition, citing the 2013 CMS recovery letter,[3] the magistrate judge concluded "CMS knew about the liability insurance claim" and the exhibit attached to the complaint "signifies the reporting requirement was satisfied." *Id.*, at 22.

Relators timely objected to the Report and Recommendation, ECF 74, and the insurers responded, ECF Nos. 75 and 76. On May 29, 2020, Judge Merryday adopted the Report and Recommendation in pertinent part, and he dismissed the first amended complaint with leave to amend. ECF 80.

---

[3]Exhibit B to the first amended complaint is Exhibit C to the second. ECF 105-3.

Shortly before the court ruled, on April 21, 2020, William Stillwell passed away. Subsequently, Penelope substituted counsel, and on September 22, 2020, she substituted as representative of William's estate. ECF 100.

On September 25, 2020, Penelope filed the third amended complaint, with exhibits. ECF 105 and associated entries. State Farm and Motorists filed motions to dismiss. ECF Nos. 109 and 110, respectively. Penelope opposed. ECF 120.

## D.    Final Disposition

On September 27, 2021, the district court granted the insurers' motions. ECF 124. In his order, Judge Merryday followed the same logic and agreed with the same points he had adopted from the magistrate judge's prior report:

First, the court stated that no "authority requires that a liability settlement with a Medicare beneficiary cover future medical expenses," *id*., at 2. It found it significant that "CMS prescribes in 42 C.F.R. § 411.46(b)(2) a standard for voiding a workers' compensation settlement that fails to cover expected medical expenses," *id*., at 8, but the government "has not" promulgated "a rule regulating a liability settlement or a mechanism for approving a proposed liability settlement." *Id*., at 2. Citing judicial policy of encouraging settlements in tort litigation, Judge Merryday stated that he declined to impose a liability set-aside requirement "by judicial fiat," because establishment of such a rule "is exclusively either an executive or legislative prerogative." *Id*.[4]

Second, the court concluded settlement of the personal injury case had extinguished State Farm and Motorists' primary payer obligations, making the Stillwells "primary payers." ECF 124, at 3 ("by accepting the lump sum settlement the Stillwells released the insurers from the obligation to pay under the insurance policies, and consequently the Stillwells – not the insurers – became the primary

---

[4]As addressed *infra* at 38-40, Judge Merryday mistook relator's argument, which seeks enforcement of existing law under MSP, not the imposition of a new rule.

payers for post-settlement medical expenses").[5]

Third, the court held each count failed because "assertion that the insurers failed to properly report a TPOC or an ORM is a necessary predicate to each claim," and "Penelope fails to sufficiently support this assertion." *Id*., at 8. Judge Merryday concluded that the CMS recovery letter, ECF 105-3, as well as its demand letter, ECF 105-10, "conclusively contradict the unsupported assertion that the insurers failed to report a TPOC." ECF 124, at 10. With respect to ORM, he held: "Because the Stillwells, not the insurers, retain the primary responsibility to pay William's future medical expenses until the Stillwells exhaust the settlement proceeds, the insurers had no ORM to report." *Id*., at 12-13.[6]

Fourth, the court dismissed Counts 7 and 8 for "reverse false claims" by knowingly and improperly avoiding an obligation to pay under § 3729(a)(1)(G), as amended by the Fraud Enforcement and Recovery Act, Pub. Law 111-21, 123 Stat. 1617 (2009) (FERA). Judge Merryday concluded these claims failed "because the insurers reimbursed CMS for the conditional payments" and "no unpaid obligation exists." ECF 124, at 13.[7]

Fifth, the court held relator cannot sustain any count for "causing" William's health care providers to make false claims. Citing *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020), the court stated relator "must plead both (1) that the defendant's conduct was a substantial factor inducing the claim's or the statement's submission and (2) that the submission was reasonably foreseeable."

---

[5] As addressed *infra* at 26-28, the Stillwells contend this holding is contrary to the text and design of MSP, its regulations and Eleventh Circuit law.

[6] As addressed *infra* at 29-32, the court conflated the duties of the beneficiary with the mandatory reporting obligations of primary plans; and it overlooked no-fault insurance as the source of the insurer's unterminated ORM.

[7] Magistrate Judge Sansome had quoted pre-FERA language. ECF 71, at 27. Judge Merryday's conclusion is addressed *infra*, at 26-28, 35-37.

ECF 124, at 14. Judge Merryday concluded "Penelope identifies no conduct by the insurers directing or inducing a healthcare provider to file a false claim with Medicare or to convey, either implicitly or explicitly, that Medicare was the primary payer on a claim." *Id.*, at 15.

> Although failing to report a primary-payer responsibility might result in a false claim or statement by a third party, Penelope fails to allege a claim based on the insurers' causing a provider to file a false claim or statement, and she cannot sustain the FCA claims. [*Id.*][8]

In addition, Judge Merryday held relator failed to plead with particularity that State Farm and Motorists conspired to violate the Act, *id.*, at 15-16. The final disposition was silent on the issue of materiality.[9]

## E.    Standards of Review

This Court reviews *de novo* the lower court's grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014); *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accept as true the facts as alleged in the operative complaint and attached documents, and draws all reasonable inferences in plaintiff/relator's favor. *Williamson v. Travelport, LP*, 953 F.3d 1278, 1284 n.1 (11th Cir. 2020). "If allegations in the complaint conflict with an attached document that [plaintiff] adopts, the document controls. *Id.* (citations omitted).

---

[8]Addressed *infra*, at 33-35.

[9]The magistrate had found the first amended complaint sufficient in this regard. *See* ECF 71, at 23-24. Judge Merryday modified this conclusion as "premature" when he adopted the report and recommendation. ECF 80, at 3.

With respect to the False Claims Act counts, under Rule 9(b) relator must also plead circumstances of fraud with particularity. *United States ex rel. Clausen v. Lab. Corp. of America*, 290 F.3d 1301, 1308 (11th Cir. 2002). Rule 9(b) is satisfied if she alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper,* 588 F.3d at 1324.[10]

## SUMMARY OF ARGUMENT

May a liability or no-fault insurer, with primary payer responsibility under MSP to cover an injured beneficiary's medical care, extinguish its obligation to reimburse the government by entering into a settlement with the beneficiary, where the beneficiary releases the third-party tortfeasor from future damages? No. By statute and regulations, a primary plan must reimburse Medicare's primary payment when it is demonstrated the primary plan has *or had* responsibility to make payment, and the government may recover its outlays from the insurer even though it already paid those outlays to the beneficiary to satisfy a settlement or judgment. Under MSP, the government may seek payment from the beneficiary who has been compensated *or* from the tortfeasor's liability insurer directly. This recovery right is not disturbed by any payments already made by the insurer.

In other words, the Stillwells' release of claims through the settlement did not extinguish State Farm or Motorists' obligation, as a primary payer, to pay money to the government, which has reimbursement rights against State Farm and Motorists independent of the Stillwell's right to recover under tort law.

---

[10]Seemingly, Rule 9(b) does not apply to the post-FERA reverse false claim Counts based on avoidance of an obligation (Counts 7 and 8) or conspiracy to avoid (Counts 5 and 6). *See United States ex rel. Takemoto v. ACE, Ltd.*, 157 F. Supp. 3d 273, 279 (W.D.N.Y. 2015) (text of FERA "strongly suggest[s] that the 'knowing avoidance' prong of §3729(a)(1)(G) does not require proof of fraud, and instead applies 'regardless of whether such actions involve a falsehood'") (citation omitted). Since relator pleads with particularity, the standard is not dispositive.

Penelope Stillwell, as representative of her deceased husband William, has standing under MSP's private right of action to recover primary payments and double damages from the insurers. In her third amended complaint, she pleads facts satisfying all three elements: (1) State Farm and Motorists each were primary plans responsible for paying William's injury-related medical care; (2) the government paid claims submitted by providers of William's injury-related health care, and while the Stillwells reimbursed Medicare out of the settlement for *paid claims* – less procurement costs – neither insurer reimbursed the government for hundreds of thousands of dollars paid to providers who furnished care or supplies *post-settlement*; and (3) damages.

The district court erred when it concluded the Stillwells could not maintain an action under MSP against State Farm or Motorists. Only the insurers – not the beneficiary – can be a "primary plan" under the statute. Settlement of the personal injury claim did not, and could not, extinguish the insurers' primary payer duties, nor turn the Stillwells into a "primary plan."

This case is about more than the failure to reimburse the government as required by MSP. Each insurance company knowingly and improperly avoided its reimbursement obligations. Despite mandatory reporting requirements, neither State Farm nor Motorists notified CMS about its liability and MedPay coverage, or supplied claim information vital to CMS's recovery efforts. The court below erred when it barred relator's allegations of these failures because of the settlement and CMS notices sent to the Stillwells. Just as the settlement did not extinguish the insurers' obligation to reimburse Medicare, it also could not be a reason to report termination of ongoing responsibility for William's injury-related medical care. Nor does the fact that Medicare knew of the claim relieve the liability insurers of *their* requirement to notify Medicare and provide sufficient information for Medicare to track injury-related medical costs back to the primary plans.

And it gets worse. To avoid its obligation to pay for injury-related care, Motorists' attorney drafted a release with the false statement that William had completed treatment for his injuries and did not anticipate the need for future care. Lawyers for both insurers knew this was false, but they nevertheless sought – and obtained – enforcement of the settlement on the basis of the release. Moreover, the insurers joined together to draft a global release which would have required the Stillwells to indemnify the insurers and save them harmless against any claim for William's care. Apparently, to convince them to sign the release and submit claims for post-settlement medical care to Medicare, the release stated that their "future medical care shall not be affected by [its] terms and conditions."

It was therefore error to dismiss relator's counts under the False Claims Act, which the insurers violated when they knowingly caused claims submitted by William's providers to be *legally false*. Because of the coverage, Medicare was proscribed from making payments to these providers as primary payer. Had they reported their primary payer status as required, Medicare would have paid those claims as secondary payer, or the providers would have billed the insurers directly. Moreover, Penelope's allegations fit even more comfortably within the post-FERA "reverse false claim" provision, as the allegations show the insurers "knowingly and improperly" avoided their reimbursement obligation to the government.

Judge Merryday's worries about encroaching on executive prerogative was misplaced. Relator seeks to enforce the statutes on their terms. She does not ask for the creation of a rule which requires Medicare set-asides in liability cases, and she does not need such a rule to exist to be entitled to the relief she seeks. Moreover, this case is not about rules which discourage settlements, and a reversal would not confuse parties trying to settle personal injury lawsuits. But allowing Stillwell to continue her action would have primary plans take MSP responsibilities seriously, weigh them in the balance, and decide how lawful they want their conduct to be.

# ARGUMENT

## I. Stillwell States a Claim Under MSP

### A. As Representative of a Medicare Beneficiary with an Interest in the Claims for Repayment, Stillwell has Standing Under MSP

Medicare beneficiaries have standing to invoke MSP's private right of action to recover the government's secondary payments from primary plans. *See MSP Recovery Claims, Series LLC v. Ace American Ins. Co.*, 974 F.3d 1305, 1313 (11th Cir. 2020). "Consistent with the breadth of § 1395y(b)(3)(A)'s text and its cost-reduction and efficiency goals, this circuit and others have interpreted this section to allow recovery when the plaintiff has a connection to Medicare's unreimbursed conditional payment; such plaintiffs are presumed to be 'in a better position,' when incentivized with double damages, 'to recover on behalf of Medicare than the government itself.'" *Id*. (citation omitted).

Such standing exists under MSP "even when those beneficiaries' medical bills had already been paid by Medicare." *Id*. (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 524-525 (8th Cir. 2007)).

> The Eighth Circuit explained that affording beneficiaries access to the private right of action would incentivize them to seek damages and "pay back the government for its outlay," thus reducing the cost of Medicare. We endorsed that holding in *Stalley ex rel. U.S. v. Orlando Regional Healthcare System*, 524 F.3d 1229, 1234 (11th Cir. 2008). [*Ace American*, 974 F.3d at 1313 (citation omitted).]

*See also Humana*, 832 F.3d at 1234 ("The MSP private cause of action is not a *qui tam* statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider"); *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mutual Automobile Insurance Co.*, 758 F.3d 787, 793 (6th Cir. 2014) (implying that allowing providers to recover double damages even after receiving conditional payments advances Congress's intent to "curb skyrocketing health costs and preserve the fiscal integrity of the Medicare system").

**B.    Stillwell Pleads Facts Meeting the Legal Elements of MSP**

In the context of summary judgment, this Court in *Humana* recited the elements of an action under MSP. *See* 832 F.3d at 1239. Those elements are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." *Id*. *See MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, 2019 U.S. Dist. LEXIS 214201, at *70 (N.D. Ohio 2019).

Stillwell pleads sufficient facts to establish these elements. She alleges William was a Medicare beneficiary, and State Farm and Motorists both were primary plans covering his injury-related medical costs. This was demonstrated by the insurers' payments pursuant to the settlement and judgment. Under the MSP statute and regulations, such payments demonstrate primary plan responsibilities. 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.22. *See ACE American*, 974 F.3d at 1319 ("Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments"); *Humana*, 832 F.3d at 1239 ("We agree with the district court that Western is a primary plan under § 1395y(b)(2)(A) because it is a liability insurer that, under a settlement agreement, paid Ms. Reale, a Medicare Advantage plan enrollee, for covered medical expenses"); *Baxter*, 345 F.3d at 903 (11th Cir. 2003) (complaint "sufficiently alleges constructive knowledge" on behalf of the primary payer based on entity's entry into a settlement agreement with beneficiaries).

In addition, Stillwell alleges State Farm and Motorists' no-fault policies as an independent basis for primary plan status. ECF 105, ¶¶185, 193. MedPay was discussed and documented in settlement communications. ECF 105-7, ECF 105-8. Demonstration of primary payer responsibility "by other means" includes contractual obligation, as provided in 42 C.F.R. § 411.22. *See MSP Recovery, LLC v. Allstate Ins*. Co., 835 F.3d 1351, 1360-61 (11th Cir. 2016) ("a contractual

obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act).[11]

Stillwell pleads facts to meet remaining elements under MSP. She alleges that *after* the settlement date, William's "health care providers submitted claims to Medicare for the medical care that he received for his injuries" and that in "most instances, Medicare reimbursed the health care providers in part or in full." ECF 105, ¶136. "After the settlement, over one hundred health care providers provided accident-related medical care, supplies, and equipment to Mr. Stillwell and submitted claims to Medicare for reimbursement," including providers named in a long list. *Id.*, ¶137. Her allegations, *id.*, ¶¶138-141, and exhibits, ECF Nos. 105-21 and 105-22, document Medicare payments for which State Farm and Motorists has or had primary plan responsibility, and over which Medicare was not reimbursed. Such allegations are sufficient under Rule 12(b)(6) pleading standards to state a claim pursuant to the private cause of action provision of MSP.

///

///

---

[11]*See also* 73 Fed. Reg. 9679, 9682-9683 ("A contract can establish that a primary plan is obligated to make primary payment for designated covered items and services under the plan. A primary payer has the obligation upon learning that Medicare has paid for certain items and services provided to an individual for which it has primary payment responsibility to determine if it is the proper primary payer for those items and services. This determination constitutes a demonstration of primary payment responsibility for those items and services and the consequential obligation to repay Medicare").

### C. Payment of a Settlement to the Stillwells Did Not Extinguish the Insurers' Primary Plan Responsibility Owed to Medicare, Nor Turn the Beneficiary Into a Primary Plan

Judge Merryday and Magistrate Sansome both concluded that as a result of the settlement – which the Indiana courts enforced – State Farm and Motorists were no longer primary payers for William's post-settlement injury-related care. As Judge Merryday described it: "by accepting the lump sum settlement the Stillwells released the insurers from the obligation to pay under the insurance policies, and consequently the Stillwells – not the insurers – became the primary payers for post-settlement medical expenses. ECF 124, at 3.

But, how could a private settlement between the injured beneficiary and the third party insured extinguish an obligation which the insurer owed to Medicare? Even if the Stillwells had signed releases with false statements and language improperly shifting primary payer duties onto William, there is no way a private settlement agreement without the government's participation could waive CMS's right to repayment under MSP. And, in this case, the Stillwells refused to sign "save harmless" agreements demanded by the insurers, and the Indiana court held the parties never reached agreement on Medicare claims. ECF 105-18, at 8.

William Stillwell was a Medicare beneficiary who received a primary payment, but he cannot be a "primary plan" as defined in § 1395y(b)(2)(A)(ii). MSP is about coordination of benefits (COB), between insurance coverage, not subrogation rights and traditional liens. Congress enacted MSP in 1980 and MMSEA in 2007 precisely because *insurance carriers* were placing on the Government primary responsibility for costs incurred by Medicare beneficiaries. Medicare may recover secondary payments for *claims paid* to beneficiaries – with limitations, *e.g.,* § 411.37 ("Medicare reduces its recovery to take account of the cost of procuring the judgment or settlement") – but no agreement with the insurers can turn the Stillwells into "primary plans" under MSP.

Pursuant to MSP and its regulations, an insurer of a party cannot extinguish primary payer duties through settlement with the beneficiary. MSP employs the disjunctive "or" between "has" or "had" in § 1395y(b)(2)(B)(ii). So does § 411.22 – a regulation finalized pursuant to Title III of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub. L. 108-173.

> In accordance with section 301(b)(2)(A) of the MMA, we added a new § 411.22 to clarify that a primary payer, and an entity that receives payment from a primary payer, become obligated to reimburse CMS if and when it is demonstrated that the primary payer *has or had* primary payment responsibility. . . . This means that *a primary payer may not extinguish its obligations under the MSP provisions by paying the wrong party – for example, by paying the Medicare beneficiary or the provider when it should have reimbursed the Medicare program.* Primary payers are expected to reimburse CMS when it is demonstrated that they have or had payment responsibility. [73 Fed. Reg. 9679, 9680 (emphasis supplied).[12]]

*See also* NGHP User Guide, Chapter III, Ch. 4, at 4-4 ("insurer . . . cannot, by contract or otherwise, supersede federal law").

Judge Tjoflat made this very point in his dissent from this Circuit's denial of rehearing *en banc* in *Humana*, 880 F.3d 1284, 1287 (11th Cir. 2018).

> Under the MSP Act . . . the Government can seek reimbursement from the beneficiary who has been compensated *or* from the tortfeasor's liability insurer directly. And this recovery right is not disturbed by any payments the liability insurer might have made already: the Government can recover its outlays from the liability insurer even though the insurer has already paid those outlays to the beneficiary in satisfaction of a settlement or judgment. See *id.* § 1395y(b)(2)(B)(ii) ("[A] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the [Government] under this subchapter with respect to an item or service if it is demonstrated that such primary plan has *or had* a responsibility to make payment with respect to such item or service." (emphasis added)). [*Humana*, 880 F.3d at 1287 (emphasis supplied by Judge Tjoflat).]

---

[12]CMS need not "first pursue the entity which receives payment before it can pursue the primary payer." 73 Fed. Reg. 9679, 9680-9682.

Although Judge Tjoflat dissented from denial of rehearing *en banc* – in a case over a Medicare Advantage plan's standing under MSP – this passage spoke to "Traditional Medicare," and it is dispositive of the issue on Stillwell's appeal.

> Stated differently, a beneficiary's release of a liability insurer does not extinguish the liability insurer's obligation, as a primary payer, to reimburse the Government. The Government does not occupy the status of a subrogee of part of the beneficiary's claim against the tortfeasor; it has reimbursement rights as against the tortfeasor's liability insurer that are independent of the insured's right of action for recovery under tort law. [*Id.*]

*See also Humana*, 832 F.3d at 1239-40 ("Western's payment to Ms. Reale or any other party is insufficient to extinguish its prospective reimbursement obligation").

Judge Merryday's conclusion the insurers' payments to and settlement with the Stillwells extinguished the primary plans' responsibility to Medicare – and made the Stillwells the "primary payers" under MSP – should therefore be reversed as legal error. No previous circuit or district court decision under MSP has held that an insurers' settlement with a beneficiary satisfies the government's right to reimbursement, or turns the beneficiary into a primary plan.[13]

Stillwell's appeal presents this important question under MSP. Based on the text of the statute, its regulations and Eleventh Circuit law, this Court should clarify the impact of private settlements on primary plan responsibilities, and hold that only insurers – not beneficiaries – can be "primary plans," and they cannot avoid primary payer responsibility under MSP by settlement or contract.

---

[13]Judge Merryday cites to *Frank v. Gateway Ins. Co.*, 2012 U.S. Dist. LEXIS 33581, at *11 (W.D. La. 2012). That case did not involve the government's right to repayment, however. There, the court determined whether a Medicare set-aside was necessary for a settlement, and the government expressly – and reasonably – declined to participate. *Id.*, at *2-3. After taking testimony from providers, the court established a $3,200 set aside, and stated the beneficiary is "responsible as a primary payer for future medical items or services that would otherwise be covered by Medicare" – up to the set-aside amount. The poorly worded phrase did not, and could not, end the government's right to pursue the primary plans under MSP.

## II. Stillwell States Claims Under the False Claims Act

### A. Stillwell Alleges Particular Facts Showing State Farm and Motorists Engaged in False and Improper Conduct

As detailed above,[14] relator alleges particular facts showing State Farm and Motorists knew that they were primary plans with liability and no-fault insurance covering William Stillwell's injury, and that medical evidence showed William's expected future medical costs totaled in the hundreds of thousands of dollars; Motorists prepared a release stating falsely that William concluded injury-related medical care and did not anticipate future medical costs, and State Farm "agreed" with the language and relied on it to secure an order from the Indiana court enforcing the settlement; both insurers (after some "digging") were aware of their responsibility to make payments to Medicare under MSP but, together, drafted releases that would have required the Stillwells to be primary payers for post-settlement injury-related medical bills, and to indemnify and hold the insurers harmless in "any claim" related to such treatment; they both failed to make primary payments to providers of William's injury-related health care, or repay Medicare's secondary payments; and they failed to notify CMS as required by MSP or comply with mandatory Section 111 reporting, including claims information related to ORM under MedPay policies or TPOC to the Stillwells' attorney.

Judge Merryday held that because "the Stillwells, not the insurers, retain the primary responsibility to pay William's future medical expenses . . . the insurers had no ORM to report." ECF 124, at 12-13. This overlooks the MedPay provisions in the insurers' liability policies – evident to them since the time of the claim.[15]

---

[14]*Supra*, at 10-14. *And, see* ECF 105, ¶¶119-121.

[15]Judge Merryday stated ORM typically "only applies" to no-fault and workers compensation, quoting NGHP User Guide, Chapter II, § 2. That text, however, refers to "Chapter III for a more complete explanation of ORM"; and there, § 6.3 states ORM "may occur in some circumstances with liability insurance."

More importantly, settlement with the Stillwells could not have "terminated" the insurers' ORM. Under the Secretary's instructions, a primary plan with ORM

> will report two events: an initial (add) record to reflect the acceptance of ongoing payment responsibility, and a second (an update) record to provide the end date of ongoing payment responsibility (in the ORM Termination Date Field, 79). [NGHP User Guide Chapter IV, Technical Information, § 6.1, at 6-3.]

With regard to ORM termination, the Secretary's instructions are specific. Only three possible reasons exist to report the termination of ORM:

- "Where there is no practical likelihood of associated future medical treatment," supported by a statement "signed by the beneficiary's treating physician that no additional medical items and/or services associated with the claimed injuries will be required;"

- "Where the insurer's responsibility for ORM has been terminated under applicable state law associated with the insurance contract;" or

- "Where the insurer's responsibility for ORM has been terminated per the terms of the pertinent insurance contract, such as maximum coverage benefits."[16]

Settlement with the beneficiary, or payment made to satisfy a judgment, is *not* among the reasons to properly terminate ORM.

Had State Farm or Motorists reported an ORM, it would have been required to report its purported termination. Neither insurer, however, could have obtained a physician's statement that William required "no additional" medical care for his injury. Both knew it was "critical to report ORM claims with . . .enough information for Medicare to identify medical claims" related to the covered claim.[17] So, the insurers simply avoided reporting ORM all together.

---

[16] NGHP User Guide, Chapter III, Policy Guidance, § 6.3.2, at 6-12.

[17] NGHP User Guide, Chapter III, Policy Guidance, § 6.3, at 6-11.

Judge Merryday also thought allegations that the insurers had failed to report TPOC were "conclusively contradict[ed]" by CMS notices sent to the Stillwells. ECF 124, at 10 (referring to ECF 105-3 and ECF 105-10). And yet, these notices concerned *the Stillwells'* obligations to Medicare, not those of the insurers. Indeed, neither the identities nor types of insurance were identified in the notices, and they do not present a basis to bar allegations that the insurers failed to comply.

Of course, the Stillwells' payments to Medicare out of the settlement funds for *paid claims* did not provide information required of primary plans to inform CMS of the primary plans' responsibility under MSP for *future* costs. MSP and its regulations establish a process by which beneficiaries or primary plans may register with the government website, obtain (and dispute) a report on conditional payment amounts, and finalize reimbursement obligations. When Medicare is repaid for past payments out of a settlement, under § 411.37 the beneficiary is entitled to a reduction "to take account of the cost of procuring the judgment or settlement." But the regulations make clear: reimbursement for Medicare's conditional secondary payments may only be for *past* costs, as Medicare cannot collect reimbursement for *future* claims yet to be made. *See* § 411.39 (d).[18]

Had the insurers sought to resolve responsibilities for the post-settlement injury-related medical costs, they could have used the same process, including special rules for insurer appeals. *See* § 411.24(i)(1). That would have required a report to the government, however, something the insurers declined to do.

---

[18]A parallel issue is pending for decision by the Supreme Court in Gallardo v. Marstiller, No. 20-1263 (argued January 10, 2022). That case concerns whether a state Medicaid program under 42 U.S.C. § 1396k may recover reimbursement for *past* medical expenses from the portion of the beneficiary's recovery that compensates for *future* medicals. While the case arises in a different context, the question presented there illustrates the same reason Congress enacted Section 111 of MMSEA. In order for CMS to protect the integrity of government health insurance programs, there needs to be complete and honest reporting of payments and obligations of other insurers also responsible for the same payments.

This failure by the primary plans to report in compliance with mandatory Section 111 requirements is akin to an affirmative false certification of a material fact. Although the Stillwells did not state so expressly, the Court could infer from the allegations in the complaint that the insurers falsely represented to CMS that they were not primary plans responsible for coverage on William's injury-related medical care. Relator alleges that State Farm and Motorists were RREs, and she details the reporting requirements reflected in the Secretary's instructions. Judge Merryday and the parties cited to and relied upon the NGHP User Guide, which sets forth requirements for primary plans to affirmatively file reports on a quarterly basis, stating the information required by Section 111.[19] From these allegations and sources, it is fair to infer that the insurers made false affirmative material misrepresentations regarding primary payer responsibilities.

Accepting the insurers' strategy, Judge Merryday took no issue with the language of the releases rejected by the Stillwells, including the false statement about William's "concluded" medical care. *See* ECF 124, at 5. On the appeal, this Court should accept relator's allegations as true, and infer that the purpose and use of the releases were improper: to obtain the Stillwells' "save harmless" agreements over the insurers' obligations, and to have future injury-related medical claims – "not [] affected by the terms and conditions" the release, ECF 105-16, at 21 – submitted to Medicare for primary payment.

---

[19] Referring to Appendix H, the instructions state: "For Section 111 reporting purposes, use of the 'Definitions and Reporting Responsibilities' . . . is critical." NGHP User Guide Chapter I, § 4.1. There: "Accountability for submitting the reports in the manner and form stipulated by the Secretary and the accuracy of the submitted information continues to rest with each" insurer. NGHP User Guide, Chapter V, at H-3. Further, insurers must produce "file submissions" with "claim information" associated with ORM and TPOC, and identify an Account Manager, who must "personally agree to the terms of the User Agreement," and "certify that the information contained in this Registration is true, accurate and complete." NGHP User Guide, Chapter II, Ch. 3, at 3-2, and §§ 4.2.1 and 5.

**B.    Stillwell Adequately Alleges Causation of False Claims**

In the body of her complaint, ECF 105, ¶¶122-129, and Counts 1 through 4, relator alleges the insurers' actions caused submission of false claims to Medicare for primary payments related to William's injury. These claims were *legally false*, because the providers certified falsely to the unavailability other health care plans.

> By submitting the secondary responsibility claims to Medicare for primary payment, Mr. Stillwell's healthcare providers are certifying their compliance with all applicable laws including federal regulation regarding Medicare's secondary payer status. [ECF 105, ¶123.]

To claim costs to Medicare, William's physicians and suppliers had to use a CMS-1500 form, which has a section to "provide information on other health insurance." *See* Medicare Claims Processing Manual (Pub.100-04), Chapter 26, at 3. MSP required these providers certify the truth of information provided on other plan coverage. *See* § 1395y(b)(6)(A) ("no payment may be made . . . unless the entity . . . completes (to the best of its knowledge and on the basis of information obtained from the individual to whom the item or service is furnished) the portion of the claim form relating to the availability of other health benefit plans"). When providers submitted claims to Medicare as primary payer, and omitted State Farm and Motorists as other insurance plans, these certifications were untrue. *See* § 1395y(a)(1)(A); 42 C.F.R. §§ 411.32(a), 411.52(a)(1) and 411.53(a)(1).

In *United States ex. rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001), overruled in part by *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), the Second Circuit held "in submitting a Medicare reimbursement form" a provider "implicitly certifies compliance with" § 1395y(a)(1)(A) – a parallel Medicare "Exclusion" of claims for services not medically necessary. *Mikes* – like other Circuit decisions before *Escobar* – held "a claim under the Act is legally false only where a party certifies compliance with a statute or regulation as a condition to governmental payment." 274 F.3d at 697.

Because this section contains an express condition of *payment* – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary." [274 F.3d at 700 (original emphasis).]

*Mikes* held the relator did not have a claim under § 1395y(a)(1)(A), however, and could base her case only on a statute on which payment was not conditioned. *Id*., at 701. It was this portion of *Mikes* that was overruled. *See Escobar*. 579 U.S. at 190 (false implied certification is not limited to violation of provisions "that the Government expressly designated a condition of payment").

Judge Merryday's reliance on *Ruckh* for the proposition that relator failed to plead "causation" is misplaced. In *Ruckh*, this Court addressed the district court's grant of judgment as a matter of law following a jury trial. A body of evidence existed upon which the Court could review material facts, including a question of causation. *See* 963 F.3d at 1107-08. At the pleading stage, however, the requirement to substantiate proof of causation is less exacting. *See United States ex rel. Drescher v. Highmark, Inc*., 305 F. Supp. 2d 451, 460-61 (E.D. Pa. 2004) (allowing the government to go forward on false claims inducement at the pleading stage, even though evidence developed later might negate causation).

Had the insurers provided required notice of no-fault coverage, providers could have billed them directly, at "full charges and expect those charges to be paid." 24 C.F.R. § 411.31(b). Similarly, had they reported true claims information on William's injury-related health care costs, CMS would have made secondary payments, and could have gone after the insurers for repayment. Relator's allegations are thus sufficient at the pleading stage to show the insurers' conduct caused submission of false claims to Medicare for primary payment.[20]

---

[20]Relator can think of no purpose for the release saying: "future medical care shall not be affected" by the settlement, ECF 105-16, at 21, other than to induce William to have his doctors and suppliers submit claims to Medicare.

More importantly, because "causation" here revolves around "falsity" rather than "submission," the analysis is different. Providers submitted claims because they truthfully performed services. The insurers' conduct – failure to make primary payments, non-compliance with Section 111 reporting requirements, releases that purported to shift primary payer responsibility to a beneficiary without Medicare's knowledge – caused providers' submissions to be legally false. As relator alleges:

> Defendants caused Medicare conditional payments to be wrongly disbursed as Medicare primary payments. ECF 105, ¶124.

Relator's allegations – that State Farm and Motorists' conduct caused claims submitted by William's health care providers to be legally false – are therefore sufficient to plead causation. *See Negron v. Progressive Cas. Ins. Co.*, 2016 U.S. Dist. LEXIS 24994 (D. N.J. 2016) ("By remaining ignorant of the fact that Relator did not have qualifying health insurance (*i.e.*, a non-Medicare/ Medicaid health insurance policy) for a health first policy, Relator's auto insurer caused Relator's health providers to treat Medicare as the primary payer of Relator's auto-related medical costs"); *United States ex rel. Saint Joseph's Hosp., Inc. v. United Distribs*., 2015 U.S. Dist. LEXIS 164015, at *27-29 (S.D. Ga. 2015) (falsity established when claim submitted to Medicare as a primary payment); *United States ex rel. Sharp v. E. Okla. Orthopedic Ctr*., 2009 U.S. Dist. LEXIS 15988, at *52-54 (N.D. Okla. 2009) (failure to disclose the existence of primary payers made claims submitted to Medicare legally false).

## C.    Stillwell Pleads "Reverse False Claim" Violations

Relator's allegations fit even more comfortably within the "reverse false claims" provision of the False Claims Act, as amended by FERA. In Counts 7 and 8, ECF 105, ¶¶172-181, and within the conspiracy allegations in Counts 5 and 6, *id*., ¶¶164, 169, Stillwell alleges facts showing State Farm and Motorists each "knowingly and improperly avoid[ed] . . . an obligation to pay or transmit money" to the government. 31 U.S.C. § 3729(a)(1)(G).

Among other changes, FERA removed the requirement that the government (or relators) allege and prove affirmative use of "a false record or statement to conceal, avoid, or decrease an obligation to pay," as required under the previous version of the Act, formerly 31 U.S.C. § 3729(a)(7). *See United States ex rel. Matheny v. Medco Health Sols., Inc*., 671 F.3d 1217, 1229 (11th Cir. 2012) (relators sufficiently pled a reverse false claim under Rule 9(b) applied to pre-FERA conduct); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (government allegations sufficient to establish reverse false claims).

As a result, Stillwell need not allege any affirmative use of the false statement in the original release to establish a claim under § 3729(a)(1)(G).

> In the wake of the FERA amendments to the False Claims Act in May 2009, it is no longer imperative for a plaintiff to identify a false record or statement in order to prevail on a reverse false claim theory of liability. [*United States v. Crumb*, 2016 U.S. Dist. LEXIS 112661, at *51-54 (S.D. Ala. 2016) (citation omitted).[21]]

Moreover, while Stillwell must plead facts showing an obligation to pay that is independent of an affirmative False Claims Act violation, *see United States ex rel. Wallace v. Exactech, Inc*, 2020 U.S. Dist. LEXIS 139593, at *63-64 (N.D. Ala. 2020) – and she does – there is no requirement under § 3729(a)(1)(G) that she plead the making of a false or fraudulent claim. *See United States ex rel. Customs Fraud Investigations v. Victaulic Co.*, 839 F.3d 242, 254 (3d Cir. 2016).[22]

Here, relator alleges an obligation to pay the government arising from an independent source: MSP. Once it was "demonstrated" to either primary plan that it "has or had a responsibility to make payment with respect" to any care paid for

---

[21]Because the government proceeded under the "knowingly and improperly avoids" clause of § 3729(a)(1)(G), the court in *Crumb* held the complaint was not deficient "for failing to allege affirmative use of a false record or statement." *Id*.

[22]*And see* Joel Hesch, Understanding the Revised Reverse False Claims Provision of the False Claims Act and Why No Proof of a False Claim is Required, 53 UIC J. Marshall L. Rev. 461, 471-472 (2021).

by Medicare, § 1395y(b)(2)(B)(ii) provides that the primary plan "*shall reimburse the appropriate Trust Fund*" (emphasis supplied). *See* 24 C.F.R. § 411.22(a).

Stillwell also alleges facts showing the attorneys for the primary plans had actual knowledge of Medicare's payment for William's injury-related care, and of the plans' obligation to reimburse the government for those payments. Indeed, the entire strategy – endorsed by the court below – was to craft a settlement by which they could avoid repayment obligations. That the original release contained a material false statement is certainly relevant, but not required, for relator's claims.

Under pleading standards of either Rule 8 or Rule 9(b), relator's allegations are sufficient to state a claim for knowingly and improperly avoiding an obligation to pay money to the government under § 3729(a)(1)(G). And, there is more. Stillwell alleges that State Farm and Motorists knowingly failed to comply with Section 111 mandatory reporting requirements, leaving Medicare in the dark about their primary plan responsibilities. State Farm and Motorists "could have prevented Mr. Stillwell's healthcare providers" from submitting claims "by simply reporting any ORM or TPOC obligation." ECF 105, ¶128. Through their counsel, the insurers "avoided financial responsibility of the medical bills when they intentionally or recklessly failed to make reasonable and prudent inquiries to ensure compliance with the MSPA.." *Id*., ¶133. Further, relator alleges in detail how the report of ORM triggers Medicare's recovery process through CMS's Benefits Coordination and Recovery Center. *Id*., ¶134 ("ORM Indicator is the key to Section 111 processing"). *And see id*., ¶135 ("When ORM is indicated, the Commercial Repayment Center ("CRC") will search Medicare records for claims paid by Medicare for medical services and supplies related to the beneficiary's reported injury" up to the "ORM termination date"). These allegations establish that the insurers knowingly and improperly avoided their obligation to pay under MSP, and dismissal of Penelope's reverse false claim Counts was error.

### III. The District Court Was Wrong to Dismiss Based on Inaction by the Secretary or the Judicial Policy Favoring Settlements

Judge Merryday's worries about crossing the line between judicial authority and legislative/executive prerogative was misplaced in this case. Relator seeks to enforce MSP and the False Claims Act on their terms. She does not ask for the creation of a rule which requires Medicare set-asides in liability cases, and she does not need such a rule to exist to be entitled to the relief she seeks.

It is true that CMS has not provided specific additional guidance on liability Medicare set-asides, despite issuing an Advanced Notice of Proposed Rulemaking on the topic. 77 Fed. Reg. 35917, 35919 (June 15, 2012). In fact, in cases cited by Judge Merryday where courts were asked to determine the need for, or amounts of, a liability Medicare set-aside, CMS reserved rights, but declined to participate. *Frank,* 2012 U.S. Dist. LEXIS 33581, at *2-3; *Berry v. Toyota Motor Sales, U.S.A.*, 2015 U.S. Dist. LEXIS 3319, at *6-7 (W.D. La. 2015). Medicare need not decide prospectively whether liability or no-fault insurance plans responsible for coverage in any one case have satisfied obligations to reimburse future medical claims that have yet to be made. Since the settlement does not extinguish the insurers' obligations under MSP, there is no need to set up some process by which these insurers can escape MSP requirements at the time of a settlement.

Although regulations provide for lump sum commutation of future benefits in workers' compensation cases, § 411.46, even there, a settlement that "appears to represent an attempt to shift to Medicare the responsibility for payment of medical expenses for the treatment of a work-related condition" "will not be recognized." In other words, MSP and its regulations impose the *same* obligations on liability and no-fault insurers that are imposed on workers compensation plans – including the right to reimbursement of secondary payments. *See* § 411.50 through § 411.54. The lump sum provision for workers compensation but not for liability in no way means that liability insurers can avoid MSP by making lump sum settlements.

That the district court thought the Stillwells requested imposition of a set-aside rule in liability cases underscores a misunderstanding of the case. None of the cases cited by the court involved a primary plan's obligations under MSP. Rather, they involved either (1) enforcement of settlements despite failure of the parties to agree on Medicare coverage (as occurred with the Stillwells in Indiana courts);[23] or (2) joint requests for approval of settlements with or without set-asides.[24] These decisions therefore did not decide a primary plan's responsibility for primary payment of future medical care. As one court concluded – after review of these decisions – it is up to counsel, not the courts, to be "carefully and diligently research this issue and weigh the financial and legal considerations in advising their clients of the best course of action to take." *Early v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 16711, at *9 (S.D. Fla. 2013).

Contrary to Judge Merryday's conclusion, enforcement of MSP in this case will not discourage settlements. An insurance carrier with responsibility to pay medical care related to a beneficiary's injury can and should still be able to settle litigation between beneficiaries and insureds, including payment for past medical expenses that – as happened here – are reimbursed to Medicare. But when the insurance carrier knows there is a likelihood of future ongoing costly medical care for the injuries, they must consider their obligations to the government under MSP.

A primary plan has three basic choices: <u>Option One</u>, the primary plan may comply with MSP and Section 111, directly pay providers for injury-related care, legally, and only once.

---

[23] *Bruton v. Carnival Corp.*, 2012 U.S. Dist. LEXIS 64416, at *1 (S.D. Fla. 2012) (plaintiff concluded her treatment and struck the provision of a set-aside); *Sipler v. Trans Am Trucking, Inc.*, 881 F. Supp. 2d 635 (D.N.J. 2012) (parties did not agree to language affecting the plaintiff's right to claim future Medicare benefits).

[24] *See Frank*, *supra* (based on medical evidence, court determined $3,200 set-aside was reasonable); *Berry*, *supra* (based on medical evidence, court determined no set-aside was necessary).

<u>Option Two</u>, the primary plan may comply with Section 111, and choose to pay neither the providers nor Medicare; but then be subjected to a government or private action under MSP, and pay twice.

<u>Option Three</u>, the primary plan may choose to not comply with Section 111, leave Medicare in the dark about its primary payer status, and pay neither the providers nor Medicare; but then be subject to a claim like Stillwell's under the False Claims Act, and pay three times.

This case is not about rules which discourage settlements. Reversal here will not confuse parties trying to settle personal injury lawsuits. But a ruling that allows Stillwell to continue with her action would make primary plan insurers take their MSP responsibilities seriously, weigh them in the balance, and decide how lawful they want their conduct to be.

## CONCLUSION

The Court should reverse the judgment of the district court and remand for further proceedings.

Respectfully submitted,

Dated: April 26, 2022       Law Office of Jeremy L. Friedman

By:  <u>/s/Jeremy L. Friedman</u>
Jeremy L. Friedman

Attorney for *qui tam* plaintiff and appellant
Penelope Stillwell

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7), because it contains 12,828 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect in 14 point Times New Roman.

Dated: April 26, 2022

/s/Jeremy L. Friedman
Jeremy L. Friedman

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Jeremy L. Friedman
Jeremy L. Friedman