IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 21-13740-BB

**PENELOPE STILLWELL, FOR HERSELF AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM STILLWELL, DECEASED**

**Appellants**

**v.**

**STATE FARM FIRE & CASUALTY CO. and MOTORISTS MUTUAL INSURANCE COMPANY,**

**Appellees**

On Appeal from the United States District Court Middle District of Florida
District Court Docket No.: 8:17-CV-01894-SDM-AAS

**APPELLEE MOTORISTS MUTUAL INSURANCE COMPANY'S ANSWER BRIEF**

| BOYD & JENERETTE, PA | |
|---|---|
| **KANSAS R. GOODEN** | **KEVIN D. FRANZ** |
| Florida Bar No. 058707 | Florida Bar No. 15243 |
| kgooden@boydjen.com | kfranz@boydjen.com |
| 11767 S. Dixie Hwy, #274 | 1001 Yamato Road, Suite 102 |
| Miami, FL 33156 | Boca Raton, FL 33431 |
| Tel: (305) 537-1238 | Tel: (954) 670-2198 |
| ***Lead Counsel*** | |
| ***Counsel for Appellee Motorists Mutual Insurance Company*** | |

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Eleventh Circuit Rule 26.1-1, the Appellee MOTORISTS MUTUAL INSURANCE COMPANY, submits the following interested persons and entities:

Allen, Esq., David Matthew

Anthem Blue Cross and Blue Shield (ANTM)

Boyd & Jenerette, P.A.

Carlton Fields Jorden Burt, P.A.

Centers for Medicare & Medicaid Services

Chamberlain, Esq., Daniel

Cohen & Malad, LLP

Emden, Esq., Christopher J.

Engle-Kirkpatrick Management Company, Inc.

Estate of William Stillwell, deceased

Franz, Esq., Kevin D.

Friedman, Esq., Jeremy L.

Gooden, Esq., Kansas R.

G.T. Services, Inc., d/b/a Green Tough Services, Inc.

Grover, Esq., Steven F.

Hill & Lemongello, P.A.

Joven, Esq., Carol N.

Kirkpatrick Management, Co., Inc.

Lemongello, Esq., Daniel

Merryday, Honorable Steven D.

Motorists Mutual Insurance Company

Optimal Performance and Physical Therapies

Price Waicukauski Joven & Caitlin, LLC

Reid, Esq., Benjamin

Rocap, Esq., Richard A.

Rocap Law Firm

Sansone, Honorable Amanda A.

Schulz, Esq., Bradley J.

Section C Homeowners Association, Inc.

State Farm Fire and Casualty Company

State Farm Litigation Counsel

Steven F. Grover, P.A.

Stillwell, Penelope

United States Attorney's Office

United States of America Ex Rel.

## CORPORATE DISCLOSURE

Motorists Mutual Insurance Company is not a publicly held corporation. Motorists Mutual Insurance Company is a mutual company, owned by its policyholders, not by purchasers of stock.  There is no parent corporation of Motorists Mutual Insurance Company owning 10% or more of Motorists Mutual Insurance Company's stock.

## STATEMENT REGARDING ORAL ARGUMENT

Motorists Mutual does not request oral argument.  At issue is solely whether the District Court correctly dismissed Stillwells' Third Amended Complaint for failure to state a cause of action.  The issues have been repeatedly briefed below as it concerns all similar versions of Stillwells' complaints, and both Magistrate Judge Sansone and District Court Judge Merryday have issued extensive orders on the issues that repeat themselves.  Thus, Motorists Mutual does not believe oral argument is necessary or would be helpful.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................v

TABLE OF CITATIONS ................................................................... viii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE...............................................................1

   I.    Nature of the Case .....................................................................1

   II.   Course of Proceedings and Disposition......................................1

   III.  Statement of the Facts ...............................................................4

         A.    William Stillwell's Indiana personal injury lawsuit, his Medicare Enrollment, and Medicare's notice of his claims............................4

         B.    Settlement of the Indiana claim: SETTLEMENT RECAP .............5

         C.    Additional letters from CMS to William Stillwell and his counsel.7

         D.    MEMORANDUM OF UNDERSTANDING .................................7

         E.    Settlement payment, original Indemnifying Release, and subsequent Global Release. ...............................................................8

         F.    Enforcement of the settlement agreement in Indiana ...................10

         G.    Third Amended Complaint ...........................................................11

         H.    Motions to Dismiss the Third Amended Complaint .....................13

         I.    Order of dismissal with prejudice, final judgment, and appeal .....13

   IV.  Standard or Scope of Review ....................................................16

SUMMARY OF THE ARGUMENT .......................................................16

ARGUMENT AND CITATIONS TO AUTHORITY ...........................................17

I.    STILLWELLS DID NOT STATE A CLAIM UNDER THE MSP ACT ..................................................................................................17

      A.    The Third Amended Complaint did not satisfy rules 8 or 12(b)(6) ..................................................................................................17

      B.    Stillwells did not state a claim under the MSP Act .......................18

      C.    CMS may recover any additional payments from the Stillwells—a commonplace occurrence in personal injury settlement agreements involving a Medicare beneficiary ..................................................21

      D.    Stillwells improperly ask this Court for an advisory opinion unsupported by precedent or legal authority on an issue never raised below ...............................................................................................25

II.   STILLWELLS DID NOT STATE A CLAIM UNDER THE FCA.........27

      A.    Stillwells did not satisfy the heightened pleading standard under Rule 9(b) for the FCA claims.........................................................27

      B.    Stillwells did not state a cause of action under the FCA ...............29

      C.    The District Court correctly dismissed Count 2: 31 U.S.C. § 3729(a)(1)(A) ...............................................................................30

            i.    There are no false claims .....................................................30

                  a.    The Global Release is not a false or fraudulent document .................................................................31

                  b.    There is no requirement to create a "Medicare Set Aside" or to "carve out" additional funds for Medicare ..................................................................34

            ii.   Presentment of claims is not pled with particularity ...........36

            iii.  The *knowledge* element is not pled with particularity.........39

vi

iv.    Materiality is not pled with particularity ............................42

D.    The District Court correctly dismissed Count 4: 31 U.S.C. § 3729(a)(1)(B) ...................................................................................45

E.    The District Court correctly dismissed Count 6: 31 U.S.C. § 3729(a)(1)(C) ...................................................................................45

F.    The District Court correctly dismissed Count 8: 31 U.S.C. § 3729(a)(1)(G) ...................................................................................46

III.    THE DISTRICT COURT PROPERLY CONSIDERED JUDICIAL POLICY FAVORING SETTLEMENTS AND PROPERLY DECLINED TO LEGISLATE FROM THE BENCH .................................................49

CONCLUSION ........................................................................................52

CERTIFICATE OF COMPLIANCE ........................................................53

CERTIFICATE OF SERVICE .................................................................53

# **TABLE OF CITATIONS**

**Cases**                                                         **Page**

Abate v. Wal-Mart Stores East, L.P.,
    503 F. Supp. 3d 257 (W.D. Pa. 2020) ............................................................35

Aranki v. Burwell,
    151 F. Supp. 3d 1038 (D. Ariz. 2015) ............................................................35

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................17

Bacon v. 21st Century Ins. Co.,
    No. CV 18-5509 PA (MRW), 2018 U.S. Dist. LEXIS 198816 (C.D. Cal
    Nov. 20, 2018) ................................................................................................21

Bell Atl. Corp v. Twombly,
    550 U.S. 554 (2007)........................................................................................17

Benson v. Sebelius,
    771 F. Supp. 2d 68 (D.D.C. 2011)...........................................................22, 23

Berry v. Toyota Motor Sales, U.S.A., Inc.,
    No. 1:11-CV-01611, 2015 U.S. Dist. LEXIS 3319 (W.D. La. 2015)...........35

Bertrand v. Talen's Marine & Fuel LLC,
    No. 10-cv-1257, 2012 U.S. Dist. LEXIS 78053 (W.D. La. June 4, 2012) ...23

Biden v. Missouri,
    142 S. Ct. 647 (2022)......................................................................................50

Big R Towing, Inc. v. David Wayne Benoit, et al.,
    No. 10-538, 2011 U.S. Dist. LEXIS 1392 (W.D. La. 2011) .........................34

Bingham v. HCA, Inc.,
    783 F. App'x 868 (11th Cir. 2019).................................................................29

Bruton v. Carnival Corp.,

No. 11-21697-CIV-UNGARO/TORRES, 2012 U.S. Dist. LEXIS 64416
(S.D. Fla. 2012) ............................................................................35

Christensen v. Harris County,
529 U.S. 576 (2000).......................................................................27

Cole-Hoover v. N.Y. Dep't of Corr. Servs.,
No. 01-CV-00826(M), 2013 U.S. Dist. LEXIS 148989 (W.D.N.Y. Oct. 16,
2013) ..............................................................................................35

Corsello v. Lincare, Inc.,
428 F. 3d 1008 (11th Cir. 2005) ................................................... 28, 43, 45-46

Daniels v. Rivers,
No. 14 C 1533, 2014 U.S. Dist. LEXIS 169719 (N.D. Ill. Dec 9, 2014)......23

Dean Witter Reynolds, Inc. v. Fernandez,
741 F. 2d 355 (11th Cir. 1984) .....................................................25

Frank v. Gateway Ins. Co.,
No. 11-0121, 2012 U.S. Dist. LEXIS 33581 (W.D. La. Mar. 13, 2012) 24, 34

Glover v. Liggett Group, Inc.,
459 F. 3d 1304 (11th Cir. 2006) ...................................................18

Griffin Indus. v. Irvin,
496 F. 3d 1189 (11th Cir. 2007) ...................................................18

Guidry v. Chevron USA, Inc.,
No. 10-cv-00868, 2011 U.S. Dist. LEXIS 148942 (W.D. La. Dec. 28, 2011)
.......................................................................................................24

Guinn v. Sturm,
No. 10-cv-00320-LJO-SKO, 2013 U.S. Dist. LEXIS 31804 (E.D. Cal. Mar
7, 2013) ..........................................................................................23

Hadden v. United States,
661 F. 3d 298 (6th Cir. 2011) .......................................................21, 22

Harbuck v. Marsh Block & Co.,

896 F. 2d 1327 (11th Cir. 1990) ............................................................32, 50

Harvey v. Fla. Health Scis. Ctr., Inc.,
      728 F. App'x 937 (11th Cir. 2018) ..............................................18

Holmes v. Continental Can Co.,
      706 F. 2d 1144 (11th Cir. 1983) ..................................................50

Humana Med. Plan, Inc. v. Western Heritage Ins. Co.,
      832 F. 3d 1229 (11th Cir. 2016) ..................................................19

I.A. Durbin, Inc. v. Jefferson Nat'l Bank,
      793 F. 2d 1541 (11th Cir. 1986) ..................................................32

Jallali v. Sun Healthcare Grp.,
      667 F. App'x 745 (11th Cir. 2016) .........................................29, 30

Klusmeier v. Bell Constructors, Inc.,
      469 F. App'x 718 (11th Cir. 2012) .........................................38, 43

Marsteller ex rel. U.S. v. Lynn Tilton, Patriarch Partners, LLC,
      880 F. 3d 1302 (11th Cir. 2018) ..................................................27

Mathis v. Leavitt,
      554 F. 3d 731 (8th Cir. 2009) .....................................................22

McDermott, Inc. v. AmClyde,
      511 U.S. 202 (1994)....................................................................51

Miller v. French,
      530 U.S. 327 (2000).....................................................................50

MSPA Claims I, LLC v. Tenet Fla., Inc.,
      318 F. Supp. 3d 1349 (S.D. Fla. 2018)...................................16, 19

Olson v. Fairview Health Servs. of Minn.,
      831 F. 3d 1063 (8th Cir. 2016) ...............................................28, 47

Oxford Asset Mgmt. v. Jaharis,
      297 F. 3d 1182 (11th Cir. 2002) ..................................................48

R.T. Vanderbilt Co. v. Occupational Safety & Health Review Com.,
　　　708 F. 2d 570 (11th Cir. 1983) .......................................................50

Ruckh v. Salus Rehab., LLC,
　　　963 F. 3d 1089 (11th Cir. 2020) ...................................................37

Sebelius v. Auburn Reg'l Med. Ctr.,
　　　568 U.S. 145 (2013).......................................................................50

Shalala v. Guernsey Memorial Hosp.,
　　　514 U.S. 87 (1995).........................................................................27

Shapiro v. Sec'y of HHS,
　　　No. 15-22151-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 42278 (S.D.
　　　Fla Mar 23, 2017) ..........................................................................22

Siclari v. CBI Acquisitions, LLC,
　　　No. 2015-28, 2017 U.S. Dist. LEXIS 184017 (D.V.I. Nov. 7, 2017)...........23

*Sipler v. Trans Am Trucking, Inc.,
　　　881 F. Supp. 2d 635 (D.N.J. 2012)...........................................35, 51

Sirpal v. Univ. of Miami,
　　　509 F. App'x 924 (11th Cir. 2013)................................................26

Stillwell v. Eagle-Kirkpatrick Mgmt. Co.,
　　　107 N.E. 3d 1113, 2018 Ind. App. Unpub. LEXIS 788 (Ind. Ct. App. July 6,
　　　2018) trans. denied 2018 Ind. LEXIS 834 (Ind. Nov. 28, 2019) cert. denied,
　　　139 S. Ct. 2756 (2019)...........................................................11, 32

Taransky v. Sec'y of the United States HHS,
　　　760 F. 3d 307 (3d Cir. 2014) .......................................................23

United States v. Baxter Int'l,
　　　345 F. 3d 866 (11th Cir. 2003) ....................................................22

United States v. HPC Healthcare, Inc.,
　　　723 F. App'x 783 (11th Cir. 2018)................................................45

United States v. Kaman Precision Prods.,
    No. 6:09-cv-1911-Orl-31GJK, 2011 U.S. Dist. LEXIS 97263 (M.D. Fla.
    Aug. 30, 2011) .................................................................................................40

United States v. Lee Mem'l Health Sys.,
    14-cv-437-FtM-38CM, 2019 U.S. Dist. LEXIS 35783 (M.D. Fla. Mar. 6,
    2019) ...............................................................................................................48

United States v. Mortg. Inv'rs Corp.,
    987 F. 3d 1340 (11th Cir. 2021) .....................................................................42

United States v. R&F Properties of Lake County, Inc.,
    433 F. 3d 1349 (11th Cir. 2005), cert. denied, 127 S. Ct. 554 (2006) .... 29-30

United States. ex. rel. Bane v. Breathe Easy Pulmonary Servs.,
    597 F. Supp. 2d 1280 (M.D. Fla. 2009) .........................................................45

*United States. ex. rel. Clausen v. Lab. Corp. of Am.,
    290 F. 3d 1301 (11th Cir. 2002) ...........................................28, 29, 31, 40, 43

United States. ex. rel. Durcholz v. FKW, Inc.,
    189 F. 3d 542 (7th Cir. 1999) .........................................................................47

United States. ex. rel. Gelbman v. City of New York,
    790 F. App'x 244 (2d Cir. 2019) ....................................................................47

United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.,
    842 F. 3d 430 (6th Cir. 2016) ...................................................................44, 47

United States ex rel. Kaimowitz v. Ansley,
    250 F. App'x 912 (11th Cir. 2007).................................................................30

United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.,
    929 F. 3d 721 (D.C. Cir. 2019).......................................................................44

United States ex rel. Kelly v. Serco, Inc.,
    846 F. 3d 325 (9th Cir. 2017) .........................................................................47

United States ex rel. Matheny v. Medco Health Solutions, Inc.,
    671 F. 3d 1217 (11th Cir. 2012) .....................................................................31

United States ex rel. Mikes v. Straus,
    274 F. 3d 687 (2d Cir. 2001) ..........................................................39

United States ex rel. Modern Mosaic, Ltd. v. Turner Constr. Co.,
    946 F. 3d 201 (4th Cir. 2019) .......................................................26

United States ex rel. Paul v. Biotronik, Inc.,
    18-cv-396-T-36JSS, 2020 U.S. Dist. LEXIS 68818 (M.D. Fla. Apr. 20,
    2020) ...............................................................................................48

United States ex. re. Petratos v. Genentech Inc.,
    855 F. 3d 481, 490 (3d Cir. 2017) .............................................43, 44

United States ex rel. Phalp v. Lincare Holdings, Inc.,
    857 F. 3d 1148 (11th Cir. 2017) ...............................................30, 45

United States ex rel. Rosenfeld v. Univ. of Miami & Timothy G. Murray,
    No. 12-24513-CIV-LENARD/LOUIS, 2018 U.S. Dist. LEXIS 233729 (S.D.
    Fla. Mar. 29, 2018) ........................................................................46

United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.,
    843 F. 3d 1033 (5th Cir. 2016) ................................................. 48-49

United States ex rel. Stinson, Lyons, Berlin & Bustamante, P.A. v. Provident Life
& Acci. Ins. Co.,
    721 F. Supp. 1247 (S.D. Fla. 1989) ...............................................46

United States ex rel. Wilkins v. United Health Grp., Inc.,
    659 F. 3d 295 (3d Cir. 2011) .........................................................36

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,
    579 U.S. 176 (2016)............................................... 30, 37, 42, 43-44

*Urquilla-Diaz v. Kaplan Univ.,
    780 F. 3d 1039 (11th Cir. 2015) ........................... 16, 27-28, 44, 48

Weiss v. Azar,
    No. ELH-17-1127, 2018 U.S. Dist. LEXIS 208285 (D. Md. Dec 7, 2018)..23

Williams v. Capital One Bank (USA) N.A.,
    785 F. App'x 741 (11th Cir. 2019) ................................................................. 18

Wilson v. Pac. Gulf Marine, Inc.,
    No. 08-60879-CIV-ALTONAGA, 2009 U.S. Dist. LEXIS 132472 (S.D. Fla.
    Mar. 6, 2009) ....................................................................................... 26

Wright v. Liberty Med. Supply, Inc.,
    No. 09-cv-02490-JMC, 2011 U.S. Dist. LEXIS 81621 (D.S.C. July 25,
    2011) ................................................................................................... 24

Young v. Borders.,
    850 F. 3d 1274, 1287 (11th Cir. 2017) ................................................. 27

Zinman v. Shalala,
    867 F. 3d 841, 846 (9th Cir. 1995) ....................................................... 51

**Rules**

Fed. R. Civ. P. 8 ......................................................................................... 13, 17

Fed. R. Civ. P. 9 ......................................................................................... 13, 27

Fed. R. Civ. P. 12 ....................................................................................... 13, 17

**Statutes**

21 U.S.C. § 3729 .......................................................................................... *passim*

42 U.S.C. § 1302 .............................................................................................. 50

42 U.S.C. § 1395y ........................................................................................ *passim*

**Regulations**

42 CFR § 411.22 ......................................................................................... 22, 25

**Legislative History**

S. Rep. No. 99-345 (1986) .............................................................................. 40

## <u>Other Authorities</u>

Aaron D. Frishman, Esq., <u>Medicare Set-Asides in Personal Injury Cases: Is There A Standard Method of Practice?</u>
   NAELA Journal, Vol. 8, No. 2, Fall, 2012.....................................................35

https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c26pdf.pdf
...............................................................................................................38

Medicare Claims Processing Manual, Chapter 26..................................................38

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW[1]

Whether the District Court correctly dismissed Stillwells'[2] MSP Act claims with prejudice for failure to state a claim.

Whether the District Court correctly dismissed Stillwells' FCA claims with prejudice for failure to state a claim.

## STATEMENT OF THE CASE

### I.    NATURE OF THE CASE

This is an appeal of a dismissal with prejudice of a (1) *qui tam* action under the False Claims Act ("FCA") and (2) a private cause of action under the Medicare Secondary Payer Act ("MSP Act").

### II.    COURSE OF PROCEEDINGS AND DISPOSITION

In 2017, William and Penelope Stillwell filed a *qui tam* action against Motorists Mutual Insurance Co. ("Motorists Mutual") and State Farm Fire and

---

[1] The Stillwells' two issues on appeal on page 2 of the Initial Brief differ from the three issues under Sections I-III.  In this appeal of a dismissal with prejudice, the only issue is whether the complaint stated a claim (i.e., Sections I & II of the Initial Brief).  Motorists Mutual's Sections I-III mirror the Stillwells'.  But Motorists Mutual does not believe issue III is dispositive.  Motorists Mutual contends only two issues are necessarily before this Court and are identified here.

[2] As it relates to the Second and Third Amended Complaints, "Stillwells" refers to Penelope Stillwell, individually, and Penelope Stillwell as representative of the Estate of William Stillwell, Deceased.  As it relates to prior versions, "Stillwells" refers to Penelope Stillwell, individually, and William Stillwell, individually.

Casualty Co. ("State Farm") (collectively "Defendants") under 31 U.S.C. § 3729(a)(1)(A), (B) & (C) of the FCA. (Doc. 1).

The Complaint alleged that Defendants "fraudulently caused Medicare to pay claims for services provided to William Stillwell . . . . [and] conspired to illegally shift William Stillwell's future medical expenses onto the Medicare program." (Id. at p. 5). The United States declined to intervene; Stillwells' counsel moved to withdraw. (Doc. 7, 10). Defendants moved to dismiss the Complaint for failure to state a cause of action. (Docs. 23, 26).

Stillwells obtained new counsel and leave to file a First Amended Complaint bringing claims under 31 U.S.C. §§ 3729(a)(1)(A), (B) & (G) of the FCA, as well as under 42 U.S.C. § 1395y(b)(3)(A) of the MSP Act. (Docs. 29, 35, 35-1). Stillwells claimed Defendants engaged in an "illegal scheme in which they concealed their primary payer responsibility under the MSP Act by failing to report their Ongoing Responsibility for Medicals ("ORM") or Total Payment Obligation to Claimant ("TPOC") in accordance with MMSEA, and thus, caus[ed] healthcare providers to submit false and fraudulent claims to Medicare." (Doc. 35-1, p. 5).

Defendants moved to dismiss the First Amended Complaint arguing, among other things that the Stillwells: (1) failed to plead the FCA claims with particularity under rule 9(b); (2) failed to provide enough factual allegations to raise a right to relief above the speculative level under rule 8; (3) failed to state a cause of action

2

under the FCA and MSP Act under rule 12(b)(6); and (4) agreed to be responsible for future medical bills pursuant to an enforced Global Release. (Docs. 56, 57; <u>see also</u> 71, pp. 6-7).

Magistrate Judge Amanda Arnold Sansone recommended dismissal for the following reasons:

- Stillwells' conclusory FCA allegations were not pled with particularity under Rule 9(b) and were contradicted by the exhibits. (Doc. 71, pp. 8-9, 15-17, 19, 22, 24-26, 28).

- There is no requirement under the law to create a Medicare Set Aside ("MSA") for personal injury settlements to cover potential future medical expenses. (<u>Id.</u>, pp. 11-12, 19-20).

- The Global Release (i.e., settlement agreement)—held as a matter of law to be legally enforceable—imposes responsibility regarding Medicare payments and liens solely on the Stillwells. (<u>Id.</u>, pp. 19, 24-26).

- Defendants did not act with reckless disregard concerning presentment of false or fraudulent claims to Medicare because Medicare received notice about William Stillwell's personal injury lawsuit, medical treatment, and claims regarding the subject incident. (<u>Id.</u>, pp. 21-22).

- Defendants complied with their requirements as primary payers under the MSP Act given that the Global Release expressly provides for payment to Medicare pursuant to the settlement, and Stillwells failed to plead a plausible entitlement to damages under that Act. (<u>Id.</u>, pp. 30-31).

District Court Judge Steven D. Merryday entered an Order adopting the Report and Recommendation in its entirety (except as to whether the Stillwells adequately pled materiality under the FCA) and dismissed the First Amended Complaint with leave to amend. (Doc. 80).

William Stillwell passed away on April 21, 2020.  (Docs. 81, 105, p. 7).  The next three months of litigation involved withdrawal of Stillwells' second attorneys and substitution of the third counsel.  (Docs. 84-94).

The Stillwells filed a Second and, three days later, a Third Amended Complaint attaching 22 exhibits.[3]  (Docs. 101, 105, 105-[1-22]).  It brought nearly the same claims under the same facts as in previous iterations (i.e., violations under the FCA under 31 U.S.C. §§ 3729(a)(1)(A), (B), (C) & (G), and a private cause of action under the MSP Act under 42 U.S.C. § 1395y(b)(3)(A)).  (Doc. 105).

Defendants moved to dismiss the Third Amended Complaint on similar grounds as to the First Amended Complaint.  (Docs. 109, 110).  Judge Merryday entered a 17-page Order granting Defendants' motions and dismissing all Counts with prejudice for failure to state a claim.  (Doc. 124).  Judgement was entered in favor of Defendants, and Stillwells filed the instant appeal.  (Doc. 125, 126).

## III.  **STATEMENT OF THE FACTS**

    A.    **William Stillwell's Indiana personal injury lawsuit, his Medicare Enrollment, and Medicare's notice of his claims.**

---

[3] The First Amended Complaint included 16 exhibits (A-P), all of which were included in the Third Amended Complaint.  The Third Amended Complaint added 6 additional exhibits.  Motorists Mutual provided the District Court with a side-by-side comparison of the exhibits to the First and Third Amended Complaints.  (Doc. 110-1).

William Stillwell sustained serious injuries in a slip-and-fall accident in Indiana on December 13, 2010. (Doc. 105, p. 16). The Stillwells sued insureds of Motorists Mutual and State Farm in an Indiana state court for premises liability. (Docs. 105-2, 105, p. 17).[4]

Mr. Stillwell became Medicare eligible in 2011. (Doc. 105, p. 16). The Centers for Medicare & Medicaid Services ("CMS") was on notice as Mr. Stillwell "filed a liability insurance (including self-insurance), no-fault insurance, or workers' compensation claim." (Docs. 105, p. 18, 105-3). CMS wrote to Mr. Stillwell and his attorney on November 19, 2013 indicating that CMS opened a Medicare Secondary Payer recovery case. (Doc. 105-3). The letter requested settlement-related information from Mr. Stillwell and delineated rights and responsibilities of Mr. Stillwell and Medicare. (Doc. 105-3). Mr. Stillwell also had a Medigap insurer, Anthem Blue Cross and Blue Shield ("Anthem"), which paid a total of $6,769.86 on his behalf for medical expenses. (Docs. 105, pp. 16, 20, 105-6).

**B.    Settlement of Indiana claim: SETTLEMENT RECAP.**

---

[4] Motorists Mutual insured G.T. Services, Inc., which was represented in the Indiana litigation by Richard A. Rocap, Esq. State Farm insured Eagle-Kirkpatrick Management, et al., which was represented in the Indiana litigation by Bradley J. Schulz, Esq. (Doc. 105, pp. 17-18).

Litigation proceeded through May 2016, by which time Mr. Stillwell claimed entitlement to hundreds of thousands of dollars in future medical expenses related to the Indiana lawsuit. (Docs. 105, pp. 19-20, 105-4, 105-5).

Three months later, on or about August 22, 2016, the Stillwells agreed to settle the Indiana Lawsuit as reflected in a document titled SETTLEMENT RECAP and filed in the Indiana State Court lawsuit. (Docs. 105, pp. 20-21, 105-8). The total settlement was for $200,000, which accounted for $5,000 in unused MedPay funds, the $6,769.86 Anthem lien, and $12,483.17 to reimburse Medicare for conditional payments. (Doc. 105-8). The Settlement Recap, signed and dated by the Stillwells, stated in part:

> *We hereby acknowledge that the above settlement is accurate in accordance with our contract with the offices of Cohen & Malad, LLP. We understand that there may be outstanding liens, medical bills or claims not being paid from the settlement proceeds that will be our responsibility to pay.*
> *. . . .*
>
> *There are no other known lien holders other than those listed on this statement. These lien holders will be paid out of the monies remaining in Cohen & Malad , LLP trust account. . . . We understand that if an additional lien is later asserted . . . we are personally responsible for the repayment of said lien.*
>
> *. . . .*
>
> *We have informed our attorney that there are no other outstanding liens or outstanding medical bills in existence, other than those listed above. This will also acknowledge that we agree to pay any and all outstanding expenses, including litigation expenses, medical expenses and/or other fees outstanding to any third party, including repayment to any medical*

*provider and/or health insurance company, which are not being withheld above.*

(Doc. 105-8) (emphasis in original).

### C.    Additional letters from CMS to William Stillwell his counsel.

On October 5, 2016, CMS wrote Mr. Stillwell and his counsel regarding "Medicare's priority right of recovery as defined under the Medicare Secondary Payer provisions." (Docs. 105, p. 21, 105-9). The letter reflected that CMS made conditional payments ($10,573.35) for Mr. Stillwell's treatment, which are subject to reimbursement from settlement proceeds. (Doc. 105-9).

CMS wrote to Mr. Stillwell and his counsel again on December 5, 2016. (Docs. 105-10, 105, pp. 21-22). The letter indicated CMS learned of Mr. Stillwell's "settlement, judgment, award, or other payment" regarding the 2010 accident that "[y]ou are required to repay Medicare because Medicare paid for medical care you received related to the recovery of your case." (Doc. 105-10). The letter reflects that Medicare paid $29,509.33 for Mr. Stillwell's medical care but sought reimbursement of $19,627.99 pursuant to a statutory formula designed to account for post-settlement payment of attorney's fees. (Id.).

### D.    MEMORANDUM OF UNDERSTANDING.

The parties to the Indiana lawsuit filed a MEMORANDUM OF UNDERSTANDING with the trial court on December 7, 2016. (Docs. 105-11; 105, p. 21). It stated in part:

7

1.    Defendants shall pay, or cause to be paid to, the Plaintiffs a total of Two Hundred Thousand Dollars ($200,000.00) as full settlement of all claims, subject to the terms in this Memorandum of Understanding.

2.    The Plaintiffs shall sign an appropriate release, or releases, at a later date formalizing the terms and conditions of the resolution of this matter.

(Docs. 105-11; see also 105-16, pp. 10-14).

**E.    Settlement payment, original Indemnifying Release, and subsequent Global Release.**

State Farm sent a proposed plan to the Stillwells on January 9, 2017 for the settlement distributions, which specifically included "19,627.99 to Medicare in satisfaction of their interest per their recent letter." (Docs. 105, p. 22, 105-12, p. 3).

The only settlement obligation as to Motorists Mutual was to "write a single check for $100,000.00 payable" to the Stillwells and their counsel. (Doc. 105-12, p. 3). Motorists Mutual tendered that settlement check on January 20, 2017 and requested that the Stillwells execute an "Indemnifying Release." (Doc. 105-13). Stillwells' counsel negotiated the check and deposited into his firm's trust account. (Docs. 105-16, pp. 4-5, 105-18, p. 5).

The Indemnifying Release related only to Motorists Mutual. (Doc. 105-13). The Stillwells were "not opposed to releasing named party tortfeasors against 'future medical liens'" but requested changes to the Release regarding future medical treatment. (Doc. 105-14, p. 3; Doc. 105, p. 24). Stillwells' counsel gave two

8

options: (1) ask Defendants to remove the objectionable language, or (2) hire a third

party to determine whether a Medicare Set Aside is required.  (Doc. 105-14, p. 2).

Stillwells chose the former; a second Indemnifying Release as to Motorists Mutual

*and* State Farm ("Global Release"), excising the objectionable language, was drafted

and sent to Plaintiffs on February 3, 2017.  (Doc. 105-16, pp. 19-22).  The Stillwells

agreed to the global release, which stated in pertinent part:

> FOR THE SOLE CONSIDERATION of payment of the total sum of .
> . . $200,000.00 . . . payable as follows . . . $100,000.00 . . . by Motorists
> Mutual . . . $4,000.00[5] . . . by State Farm . . . $19,672.99 payable to
> "Medicare;" by State Farm . . . and . . . $76,327.01 . . . by State Farm .
> . . . payable to "William Stillwell and Penelope Stillwell and Cohen &
> Malad, their attorneys" . . . William Stillwell and Penelope Stillwell
> hereby release . . . Green Touch, Section C, and Kirkpatrick, as well as
> their respective insurers (Including without limitation Motorists Mutual
> Insurance Company and State Farm) . . . from any and all claims . . .
> known and unknown . . . which have resulted or may in the future
> develop from a slip and fall on ice/snow by William Stillwell that
> occurred on or about 13th day of December, 2010
>
> . . . .
>
> The undersigned represent that any existing or future medical lien or
> liens of any type relating to William Stillwell shall be the responsibility
> of William Stillwell and Penelope Stillwell, and they fully understand
> that the agreement for payment of the Settlement Funds is made based
> in part upon the promise to be responsible for and pay such liens by
> William Stillwell and Penelope Stillwell, their insurers, heirs,
> executors, administrators, agents, and assigns. . . .  Further, William
> Stillwell and Penelope Stillwell agree and promise to defend, indemnify
> and save harmless . . . [Defendants] from any claim . . . brought as a
> result of any treatment, injuries, or damages . . . .  By signing this release
> William Stillwell and Penelope Stillwell authorize their legal counsel,

---

[5] The Anthem lien was reduced to $4,000.  (Doc. 105, p. 22; Doc. 105-12).

to the extent not directly paid herein, to withhold from any Settlement Funds all monies necessary to satisfy any outstanding liens for expenses, including without limitation, medical expenses.

William Stillwell and Penelope Stillwell acknowledge the following:

1. They have considered the interests of Medicare/Secretary of Human Services as required by federal law;

2. They have an obligation to Medicare/Secretary of Human Services that an incident was the subject of a settlement, judgment or award;

3. They have an obligation to reimburse Medicare/Secretary of Human Services for medical services rendered to date in this manner.

4. They have complied with all known obligations pursuant to the Medicare/Secretary of Human Services rules; and

5. Their future medical care shall not be affected by the terms and conditions of this document.

(Doc. 105-16, pp. 19-21).

## F.    Enforcement of the settlement agreement in Indiana.

The Stillwells refused to sign the Global Release, and Defendant Green Touch moved to enforce the settlement in the Indiana State Court.  (Docs. 105, pp. 23, 105-16).  The trial court granted the motion, found "the settlement agreement enforceable as against William Stillwell and Penelope Stillwell," and entered judgment against the Stillwells.  (Doc. 105-17, p. 3).  The judgment incorporated the Medicare lien language from the Release, and provided in pertinent part:

All payments have been made as set forth herein and the Defendants have fulfilled their obligations for payment to the Plaintiffs.

10

The Stillwells are jointly and severally liable for payment of any existing or future medical lien or liens of any type relating to William Stillwell and shall defend, indemnify, and save harmless the Defendants and their respective insurers, agents, employees, assigns, officers, directors, shareholders, partners, members liable or who might be claimed to be liable from any claim (specifically, any claim by or on behalf of William Stillwell or Penelope Stillwell) brought as a result of any treatment, injuries, or damages, including, but not limited to, attorney fees incurred to defend such claims and all other costs.

(Doc. 105-17).

The Stillwells appealed as to "whether the trial court properly enforced the settlement agreement"—an agreement that included the Stillwells' "promise to . . . indemnify and save harmless [Motorists Mutual and State Farm] from any claim . . . ." (Doc. 105-16, p. 20).  The Indiana Court of Appeals affirmed the judgment, holding that "an enforceable settlement agreement existed."  (Doc. 105-18, p. 8). Both the Indiana Supreme Court and the United States Supreme Court denied discretionary review.  See also Stillwell v. Eagle-Kirkpatrick Mgmt. Co., 107 N.E. 3d 1113, 2018 Ind. App. Unpub. LEXIS 788 (Ind. Ct. App. July 6, 2018) trans. denied 2018 Ind. LEXIS 834 (Ind. Nov. 28, 2019) cert. denied, 139 S. Ct. 2756 (2019).

## G.    Third Amended Complaint.

The Stillwells filed the instant FCA action in Florida only two weeks after the Indiana State Court enforced the settlement.  (Doc. 1).  They went through three

separate counsel and three iterations of the complaint before filing their Third Amended Complaint. (See Civil Docket Sheet; Doc. 105).

The Third Amended Complaint alleged the following counts against Motorists Mutual: Count 2—31 U.S.C. § 3729(a)(1)(A) [false claims]; Count 4—31 U.S.C. § 3729(a)(1)(B) [false record or statement]; Count 6—31 U.S.C. § 3729(a)(1)(C) [conspiracy]; Count 8—31 U.S.C. § 3729(a)(1)(G) [avoidance of obligation/reverse false claim]; and Count 10—42 U.S.C. § 1395y(b)(3)(A) [private MSP Act cause of action]. (Doc. 105). Stillwells brought the same claims against State Farm. (Doc. 105). Stillwells alleged:

> State Farm and Motorists Mutual, through their counsel, recklessly or intentionally shifted primary payment responsibility for a Medicare beneficiary's future, accident-related medical bills to Medicare, in violation of the MSPA, by failing to report to the Center for Medicare and Medicaid Services ("CMS") their Ongoing Responsibility for Medicals ("ORM"), and Total Payment Obligation to Claimant ("TPOC") at the time the settlement papers were created in the Stillwells' personal injury lawsuit. They did so even though it was abundantly clear that Mr. Stillwell had a catastrophic injury that would result in very expensive, future medical care, and even though the Stillwells persistently drew their attention to the dictates of the MSPA.

(Doc. 105, p.16).

Stillwells alleged that Defendants procured and submitted to the Indiana State Court a fraudulent Release, and that the fraudulent release, Defendants' claims-processing procedures, and failure to report caused Mr. Stillwell's healthcare providers to submit false claims to Medicare. (Doc. 105, pp. 25-27).

12

Stillwells' MSP Act claim alleged that Motorists Mutual was a primary payer, was required to timely reimburse Medicare for its conditional payments, and failed to do so.  Stillwells claimed damages in the amount of $530.73 (i.e., for treatment from November 17, 2016 through January 17, 2017).  (Doc. 105, pp. 47-48).[6]

## H.    Motions to Dismiss the Third Amended Complaint.

Motorists Mutual moved to dismiss the Third Amended Complaint arguing it was merely a repackaged (and largely cut-and-paste) version of the dismissed First Amended Complaint.  (Doc. 110).   Motorists Mutual argued the Stillwells

> (1) failed to plead the FCA claims with particularity under Rule 9(b); (2) failed to provide enough factual allegations to raise a right to relief above the speculative level under Rule 8; (3) failed to state causes of action under the FCA and MSP Act under Rule 12(b)(6); and (4) agreed to be responsible for future medical bills pursuant to an enforced, nonfraudulent Global Release.

(Doc. 110, p. 1; see also p. 3).  State Farm raised similar arguments in its Motion to Dismiss.  (Doc. 109).

## I.    Order of dismissal with prejudice, final judgment, and appeal.

The District Court dismissed the Third Amended Complaint with prejudice for failure to state a claim.  (Doc. 124).  It noted that the Third Amended Complaint

---

[6] Mr. Stillwell treated with Optimal Performance and Phys. from November 17, 2016 through January 17, 2017, and his claims—specifically denominated "THIS IS NOT A BILL"—were submitted to his Medigap insurer, Anthem.   (Doc. 105-20, pp. 56-78).

"remains materially unchanged from the original complaint." (Doc. 124, p. 6). The

District Court summed up the Stillwells claim as follows:

> In essence, the Stillwells claim that, by failing to either settle for an
> amount exceeding the expected medical expenses or to provide in the
> settlement some other mechanism to pay future medical expenses, the
> insurers failed to discharge their primary-payer responsibility and
> remain primary payers for post-settlement medical expenses. The
> Stillwells further argue that, by failing to report this purported primary-
> payer responsibility to Centers for Medicare and Medicaid Services
> (CMS), the insurers caused William's doctors to falsely bill Medicare,
> instead of the insurers, as the primary payer for William's post-
> settlement medical expenses.

(Doc. 124, p. 2).

It noted that Stillwells "apparently conced[ed]" that no statute, regulation, or

other authority requires that a liability settlement with a Medicare beneficiary cover

future medical expenses . . . ." (Doc. 124, p. 2). The District Court rejected

legislating into Medicare such requirement. (Doc 124, pp. 2, 12). It found the

Stillwells—not Defendants—were responsible for paying post-settlement medical

expenses based on the settlement agreement. (Doc. 124, pp. 3, 12-13).

The District Court noted that "[t]he third amended complaint's assertion that

the insurers failed to properly report a TPOC or an ORM is a necessary predicate to

each claim." (Doc. 124, p. 8). It recognized, however, that "CMS learned of the

Stillwells' claim nearly three years before the parties signed the settlement recap."

(Doc. 124, p. 9). CMS also knew the amount of the settlement and attorney's fee

apportionment by December 2016, six months before settlement was enforced in

Indiana.    (Doc. 124, pp. 9-10).    These exhibits "conclusively contradict the unsupported assertion that the insurers failed to report a TPOC." (Doc. 124, p. 10).

It also found that Defendants were not responsible for issuing an ORM report for William Stillwell's post-settlement medical expenses.

> Although conceding that "no law or regulation requires a liability insurer settling a personal-injury claim to create a 'Medicare Set Aside' to cover future medical expenses," Penelope argues that a settling party must consider Medicare's interests by (1) creating a "Medicare set aside," (2) segregating part of the settlement for future medical expenses, (3) paying part of the settlement into the Medicare Trust Fund, or (4) proposing to CMS an alternative plan.

(Doc. 124, pp. 10-11).

The District Court found no legal authority supporting these contentions. (Doc. 124, pp. 10-11).  To the contrary, Medicare could recover from a settlement beneficiary post-settlement medical expenses until exhausting the settlement.  (Doc. 124, p. 11).  And the Stillwells released Defendants from "all claims . . . which have resulted or may develop in the future from [William's accident]."  (Doc. 124, p. 12 quoting Doc. 105-17, 3).

The District Court also found that the Third Amended Complaint failed to sufficiently plead with particularity that Defendants knowingly caused William's health care providers to submit false claims to Medicare or engaged in any sort of conspiracy to that end.  (Doc. 124, pp. 13-16).  The District Court dismissed the

action with prejudice "for failing to state a claim" and judgment was entered in Defendants' favor. (Doc. 124, p. 17; Doc. 125). This appeal followed. (Doc. 126).

## IV.   STANDARD OR SCOPE OF REVIEW

This Court reviews a dismissal with prejudice for failure to state a claim under the MSP Act and the FCA de novo. <u>Urquilla-Diaz v. Kaplan Univ.</u>, 780 F. 3d 1039, 1050 (11th Cir. 2015); <u>MSPA Claims 1, LLC v. Tenet Fla., Inc.</u>, 918 F. 3d 1312, 1317 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

This case is about buyers' remorse of a settlement of personal injury lawsuit. Stillwells settled their Indiana lawsuit for $200,000. The proceeds were paid and deposited. Stillwells, however, had cold feet and refused to execute a release. An Indiana trial court enforced that release. An Indiana appellate court affirmed. The Indiana Supreme Court and United States Supreme Court declined review.

Undeterred, the Stillwells continued their attempts to backout of the settlement by accusing the payors of fraud. For nearly five years, the Stillwells have attempted and failed to state valid causes of action under the FCA and MSP Act. They filed *four* versions of essentially the same complaint in this action. Each one repackaged by new counsel. The underlying facts did not change.

The exhibits attached to the Third Amended Complaint contradicted Stillwells' conclusory allegations.  CMS knew about Mr. Stillwell's personal injury action and settlement.  CMS was reimbursed exactly what it demanded after making conditional payments.  The Indiana State Court's Judgment reflects that all monies have been paid and obligations satisfied.  And, as per the Global Release and the Final Judgment, the Stillwells were responsible for any future medical expenses/liens.

Simply put, the Stillwells failed to plead any FCA claims with particularity and failed to state a cause of action under the FCA and MSP Act.  This Court should affirm.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I.     STILLWELLS DID NOT STATE A CLAIM UNDER THE MSP ACT.

#### A.     The Third Amended Complaint did not satisfy rules 8 or 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  This "tenet . . . is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft, 556 U.S. at 678.

The duty of the appellate court "to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  Griffin Indus. v. Irvin, 496 F. 3d 1189, 1206-07 (11th Cir. 2007).  See Williams v. Capital One Bank (USA) N.A., 785 F. App'x 741, 746 (11th Cir. 2019) ("[W]hen documents attached as exhibits in support of a complaint contradict the factual allegations in the pleadings, the exhibits control.").

The Third Amended Complaint includes conclusory allegations contradicted by the exhibits.  It does not state a claim to relief plausible on its face.  It was correctly dismissed with prejudice under Rules 8 and 12(b)(6).

### B.    Stillwells did not state a claim under the MSP Act.

The MSP statute ensures that Medicare does not pay for items and services that are covered by a primary plan or other entity. . . .  The statute allows Medicare to make conditional payments on behalf of a covered patient, subject to certain mandatory reimbursement by a primary plan or certain entities[.]

Harvey v. Fla. Health Scis. Ctr., Inc., 728 F. App'x 937, 944 (11th Cir. 2018).

"The MSP authorizes a private cause of action against a primary plan that pays a judgment or a settlement to a Medicare beneficiary, but fails to pay Medicare its share."  Glover v. Liggett Group, Inc., 459 F. 3d 1304, 1310 (11th Cir. 2006).  "As the unequivocal language of 42 U.S.C. § 1395y(b)(3)(A) makes clear—and as the

18

Eleventh Circuit's decision in [Humana Med. Plan, Inc. v. Western Heritage Ins. Co., 832 F. 3d 1229, 1238 (11th Cir. 2016)] reiterates—any action brought under this subsection of the MSPA must be predicated upon nonpayment by a primary payer." MSPA Claims I, LLC v. Tenet Fla., Inc., 318 F. Supp. 3d 1349, 1355 (S.D. Fla. 2018).

To comply with its obligations under the MSP Act, the "primary payer must make payment to either of the following: (1) To the entity designated to receive repayments if the demonstration of primary payer responsibilities is other than receipt of a recovery demand letter from CMS or designated contractor[,] [or] [a]s directed in a recovery demand letter." 42 CFR § 411.22(c)(1), (2). The Medicare beneficiary must show: "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." Humana Med. Plan, Inc., 832 F. 3d at 1239.

Stillwells allege Defendants were required to reimburse Medicare for its conditional payments but failed to do so. (Doc. 105, pp. 46-47). The exhibits to the Third Amended Complaint contradict these allegations. They show Medicare knew of the settlement and was reimbursed all its conditional payments down to the penny. They also reflect that reimbursement for future medical expenses—post settlement agreement—was the Stillwells' responsibility.

19

As early as 2013, CMS specifically noted "a Medicare Secondary Payer (MSP) recovery case has been established in our system." (Doc. 105-3; see also Doc. 105-9). CMS was aware that Mr. Stillwell's claim settled and wrote to him demanding reimbursement for its conditional payments of $19,672.99 related to his personal injury claim. (Doc. 105-10). Anthem also had a lien for past medical expenses totaling $6,769.86, which was negotiated down to $4,000. (Docs. 105-6, 105-10, 105-12, 105, p. 22). The Settlement Recap reflected settlement of $200,000 accounting for the Anthem lien and reimbursement of conditional payments owed to CMS. (Doc. 105-8). MedPay in the amount of $5,000 was included as part of the $200,000 settlement. (Id.).

State Farm agreed that exactly $19,672.99 and $4,000 of its $100,000 settlement portion would go to CMS and Anthem, respectively, to satisfy their liens. (Doc. 105-8; Doc. 105-11). All conditional payments made by CMS were reimbursed in compliance with the MSP Act. Indeed, the Indiana trial court noted that direct payments were made to the lienholders, which would include Medicare. (Doc. 105-17, p. 5).

Upon reimbursement—by the express terms of the enforced settlement agreement—the *Stillwells* then agreed to be responsible for any existing or future medical lien of any type. (Doc. 105-8, 105-16, pp. 19-21). The Indiana State court enforced the settlement finding that "The Stillwells are jointly and severally liable

for payment of any <u>existing</u> or <u>future</u> medical lien or liens of any type relating to William Stillwell . . . ." (Doc. 105-17) (emphasis added).

Stillwells have alleged no set of facts—nor could they—to support the bald allegation that Appellees failed to pay Medicare its fair share.  <u>See</u> <u>Bacon v. 21st Century Ins. Co.</u>, No. CV 18-5509 PA (MRW), 2018 U.S. Dist. LEXIS 198816 (C.D. Cal Nov. 20, 2018) (dismissing Plaintiff's cause of action under § 1395y(b)(3)(A) and finding that insurer's tender of $50,000 to Plaintiff/insured and Medicare for reimbursement of conditional payments fully complied with all obligations under the Medicare Secondary Payer Act).

Accordingly, the Third Amended Complaint fails to allege facts plausibly showing that Defendants failed to reimburse Medicare or that the Stillwells suffered damages from any alleged failure to reimburse Medicare.  <u>See</u> (Doc. 80, pp. 2-3). The District Court correctly dismissed the MSP Act Counts.

### C.    CMS may recover any additional payments from the Stillwells—a commonplace occurrence in personal injury settlement agreements involving a Medicare beneficiary.

Medicare has "the right to seek 'reimbursement' from the responsible entity *or* the beneficiary if the beneficiary himself later receives payment directly from the responsible entity." <u>Hadden v. United States</u>, 661 F. 3d 298, 300 (6th Cir. 2011) (emphasis in original; citing 42 U.S.C. § 1395y(b)(2)(B)(ii), (iii)).  "Medicare is empowered to recoup from the rightful primary payer (or from the recipient of such

payment) if Medicare pays for a service that was, or should have been, covered by the primary insurer." United States v. Baxter Int'l, 345 F. 3d 866, 875 (11th Cir. 2003). See also Shapiro v. Sec'y of HHS, No. 15-22151-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 42278, *7 (S.D. Fla. Mar 23, 2017) ("If, however, the tortfeasor directly pays the settlement proceeds to the Medicare beneficiary, Medicare may seek reimbursement from the beneficiary."); Benson v. Sebelius, 771 F. Supp. 2d 68, 70 (D.D.C. 2011) ("CMS may seek reimbursement for Medicare-disbursements from the recipient of a judicial settlement.") (citing 42 C.F.R. § 411.22(a)-(b)(3)).

A beneficiary's acceptance of responsibility to reimburse Medicare vis-à-vis a settlement agreement—like the Global Release—is commonplace and valid.

> Like the other courts of appeals that have considered the issue, we hold that the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare. *See Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009). For this reason, we adopt the Sixth Circuit's analysis in *Hadden*, which held that "the scope of the plan's 'responsibility' for the beneficiary's medical expenses—and thus of [the beneficiary's] own obligation to reimburse Medicare—is ultimately defined by the scope of *[the beneficiary's] own claim against the third party*" that is later released in settlement. 661 F.3d at 302 (emphasis in original).
>
> . . .
>
> Applying these principles, Taransky's settlement—which released Larchmont from all her claims, including those for medical expenses—renders her liable to the Government. In *Mathis*, the Eighth Circuit found that a beneficiary's obligation under the MSP Act was triggered

22

even when the parties did not specifically address obligations to Medicare. 554 F.3d at 733. Here, Taransky's settlement agreement expressly anticipated Medicare's lien, and provided that reimbursement to the Medicare program would be "satisfied and discharged from the settlement proceeds."

Taransky v. Sec'y of the United States HHS, 760 F. 3d 307, 315 (3d Cir. 2014). See

also Benson, 771 F. Supp. 2d at 70 (recognizing that the "primary payer" may be the

recipient of a settlement); Weiss v. Azar, No. ELH-17-1127, 2018 U.S. Dist. LEXIS

208285, *36-37 (D. Md. Dec 7, 2018) ("The release of the claim for Mr. Weiss's

medical expenses suffices to deem the Estate responsible for the conditional

payment."); Siclari v. CBI Acquisitions, LLC, No. 2015-28, 2017 U.S. Dist. LEXIS

184017, *2 (D.V.I. Nov. 7, 2017) (approving settlement providing that "Plaintiff

shall be responsible for payment of all medical liens . . . Medicare or Medicaid liens,

or other liens relating to this matter."); Daniels v. Rivers, No. 14 C 1533, 2014 U.S.

Dist. LEXIS 169719, *8 (N.D. Ill. Dec 9, 2014) (quoting release providing that "If

Plaintiff is the subject of any such Medicare payments, Plaintiff bears the sole

responsibility for reimbursing this amount in its entirety and any Medicare right of

reimbursement related to this suit will be satisfied by Plaintiff."); Guinn v. Sturm,

No. 10-cv-00320-LJO-SKO, 2013 U.S. Dist. LEXIS 31804, *7 (E.D. Cal. Mar 7,

2013) (recommending enforcement of settlement agreement providing "Plaintiff

agrees to be fully responsible for any Medicare . . . liens . . . ."); Bertrand v. Talen's

Marine & Fuel LLC, No. 10-cv-1257, 2012 U.S. Dist. LEXIS 78053, *9 (W.D. La.

23

June 4, 2012) (concluding that settlement required beneficiary who received payment from a primary plan to be "responsible as a primary payer for future medical items or services that would otherwise be covered by Medicare"); Frank v. Gateway Ins. Co., No. 11-0121, 2012 U.S. Dist. LEXIS 33581, *11 (W.D. La. Mar. 13, 2012) (finding Medicare's interests adequately protected by settlement agreement expressly requiring Medicare beneficiary who received payment from a primary plan to be responsible as primary payer for future medical expenses); Guidry v. Chevron USA, Inc., No. 10-cv-00868, 2011 U.S. Dist. LEXIS 148942, *8 (W.D. La. Dec. 28, 2011) ("Part of the consideration for all of the settlements was that the plaintiffs would be responsible for protecting Medicare's interests under the MSP."); Wright v. Liberty Med. Supply, Inc., No. 09-cv-02490-JMC, 2011 U.S. Dist. LEXIS 81621 (D.S.C. July 25, 2011) (finding settlement protected Medicare's reimbursement rights by requiring Plaintiffs to indemnify and hold harmless Defendants for any health care liens, which are to be paid by Plaintiffs and their attorneys).

Stillwells do not acknowledge the above authorities, which is likely why they question how a settlement agreement can require the beneficiary to be responsible to Medicare for future medical expenses. Stillwells cite no authority for their grievance that the Government must be involved in such private settlement agreement—because none exists in the context of this case. Indeed, none of the

24

above-cited cases required government approval as a prerequisite to settlement enforcement.

Medicare's interests and reimbursement rights remained intact pursuant to the settlement agreement, and CMS did not waive its right to repayment by the Stillwells. The Third Amended Complaint alleges the following damages based on Motorists Mutual's failure to reimburse Medicare: "payments for amputation therapy for prosthetic ambulation totaling $530.73 ($272.12 for Nov. 17, 2016 – Dec. 30, 2016; plus $259.61 for Jan. 3, 2017 – Jan, 17, 2017)." (Doc. 105, p. 48). These alleged damages post-date the Settlement Recap. Per the Settlement Recap, the enforced Global Release, and the Indiana State Court Judgment, the *Stillwells* are responsible for these medical expenses/liens. See also § 42 C.F.R. 411.22(b)(3) ("A primary payer's responsibility for payment may be demonstrated . . . "By other means, including but not limited to a settlement, award, or contractual obligation.").

**D.    Stillwells improperly ask this Court for an advisory opinion unsupported by precedent or legal authority on an issue never raised below.**

Stillwells' first question presented asks this Court to advise whether Medicare must be involved in private settlement agreements involving personal injury actions. This issue was not raised below and should not be considered on appeal. See Dean Witter Reynolds, Inc. v. Fernandez, 741 F. 2d 355, 360-61 (11th Cir. 1984).

Regardless, Stillwells' request that this court "clarify the impact of private settlements on primary plan responsibilities" impermissibly asks this Court for an advisory opinion—something that should be declined. Sirpal v. Univ. of Miami, 509 F. App'x 924, 932 (11th Cir. 2013) ("Article III does not permit courts to issue advisory opinions."). See also Wilson v. Pac. Gulf Marine, Inc., No. 08-60879-CIV-ALTONAGA, 2009 U.S. Dist. LEXIS 132472, *6 (S.D. Fla. Mar. 6, 2009) (declining to issue "an advisory opinion . . . or rewrite the settlement agreement" as it concerns a Medicare set-aside for future medical needs). It also violates separation of powers and would invade the province of the executive branch as discussed below.

In any event, "[o]ne of our country's bedrock principles is the freedom of individuals and entities to enter into contracts and rely that their terms will be enforced." United States ex rel. Modern Mosaic, Ltd. v. Turner Constr. Co., 946 F. 3d 201, 204 (4th Cir. 2019). Nothing relied on by Stillwells in the opening brief diminishes this right or requires the Government's participation in a personal injury action settlement agreement involving a Medicare beneficiary who *voluntarily* agrees to be responsible for his own future medical expenses. The MMA, cited by Stillwells, merely reiterates primary payer obligations but certainly does not preclude Medicare beneficiaries from accepting responsibility to reimburse Medicare for future medical expenses vis-à-vis a settlement agreement.

Hinging their argument on a dissenting opinion of a denial for a rehearing en banc and the NGHP User Guide—neither of which have precedential value or the force of law—also falls flat.  See Young v. Borders, 850 F. 3d 1274, 1287 (11th Cir. 2017) (providing that orders denying rehearings en banc and, dissents thereto, have no precedential value); Christensen v. Harris County, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters - - like interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . lack the force of law . . . ."); Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 99 (1995) ("[Medicare Provider Reimbursement Manual] PRM . . . is a prototypical example of an interpretive rule . . . .  [that] do[es] not have the force and effect of law and [is] not accorded that weight in the adjudicatory process[.]").

Thus, Stillwells' first question presented should not be entertained.

## II.     STILLWELLS DID NOT STATE A CLAIM UNDER THE FCA.

### A.     Stillwells did not satisfy the heightened pleading standard under Rule 9(b) for the FCA claims.

"[I]n a qui tam action, the enhanced pleading requirements of Rule 9(b) apply."  Marsteller ex rel. U.S. v. Lynn Tilton, Patriarch Partners, LLC, 880 F. 3d 1302, 1310 (11th Cir. 2018).  "To satisfy this heightened-pleading standard in a False Claims Act action, the relator has to allege facts as to time, place, and substance of the defendant's alleged fraud, particularly, the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  Urquilla-Diaz, 780

27

F. 3d at 1052 (cleaned up).  See also United States ex. rel. Clausen v. Lab. Corp. of

Am., 290 F. 3d 1301, 1308, 1309 (11th Cir. 2002).

> The mere disregard of federal regulations or improper internal practices
> does not create liability under § 3729(a)(1) unless, as a result of such
> acts, the defendant knowingly asked the Government to pay amounts it
> does not owe. Indeed, the central question regarding whether a relator's
> allegations state a claim under this subsection is, did the defendant
> present (or caused to be presented) to the government a false or
> fraudulent claim for payment? So to satisfy Rule 9(b)'s heightened-
> pleading requirements, the relator must allege the actual presentment of
> a claim with particularity, meaning particular facts about the "who,"
> "what," "where," "when," and "how" of fraudulent submissions to the
> government.

Urquilla-Diaz, 780 F. 3d at 1051-52 (cleaned up).  See also Clausen, 290 F. 3d at

1310 (detailing the particularity requirement in an FCA action).

This heighted pleading requirement is for "safeguarding reputation of

defendants, disposing early of unfounded fraud claims advanced only for their

nuisance value, and preventing fishing expeditions."  Olson v. Fairview Health

Servs. of Minn., 831 F. 3d 1063, 1073 (8th Cir. 2016) (citation omitted).

Inferences about the submission of false claims must be disregarded.  Corsello

v. Lincare, Inc., 428 F. 3d 1008, 1013 (11th Cir. 2005) ("Although we construe all

facts in favor of the plaintiff when reviewing a motion to dismiss, we decline to make

inferences about the submission of fraudulent claims because such an assumption

would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'") (quoting

Clausen, 290 F. 3d at 1312 n.21).

Stillwells *admit* their false claims allegations are based on inferences:

> Although the Stillwells did not state so expressly, the Court could **infer** from the allegations in the complaint that the insurers falsely represented to CMS that they were not primary plans responsible for coverage on William's injury-related medical care.

> From these allegations and sources, it is fair to **infer** that the insurers made false affirmative material misrepresentations regarding primary payer responsibilities.

*Initial Brief, 32.* (emphasis added).

Based on this admission alone, Stillwells concede failure to plead with specificity. This Court should affirm. See Clausen, 290 F. 3d at 1311 ("This Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards."); Jallali v. Sun Healthcare Grp., 667 F. App'x 745, 745 (11th Cir. 2016) (affirming dismissal with prejudice of FCA claims).

## B.    Stillwells did not state a cause of action under the FCA.

> The False Claims Act permits private persons to file a form of civil action (known as *qui tam*) against, and recover damages on behalf of the United States from, any person who . . . knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval . . . [or] knowingly makes, uses, or cause to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

Bingham v. HCA, Inc., 783 F. App'x 868, 870 (11th Cir. 2019) (cleaned up).

> To establish a cause of action under the False Claims Act, a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false. *United States v. R&F Properties of Lake County, Inc.,* 433

29

F.3d 1349, 1355 (11th Cir. 2005), *cert. denied,* 127 S. Ct. 554, 166 L. Ed. 2d 423 (2006).

United States ex rel. Kaimowitz v. Ansley, 250 F. App'x 912, 914-15 (11th Cir. 2007).   Furthermore, the fraud must be "material to the Government's payment decision to be actionable under the False Claims Act."   Universal Health Servs., Inc. v. U.S. ex rel. Escobar, 579 U.S. 176, 192 (2016).

The District Court correctly dismissed all FCA Counts for failure to state a cause of action.

## C.    The District Court correctly dismissed Count 2: 31 U.S.C. § 3729(a)(1)(A).

Under 31 U.S.C. § 3729(a)(1)(A), Stillwells must prove "(1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false."   United States ex rel. Phalp v. Lincare Holdings, Inc., 857 F. 3d 1148, 1155 (11th Cir. 2017).   There exists a "materiality" requirement under the FCA as well.   Escobar, 579 U.S. at 191. "Under binding precedent, each element of an FCA claim must meet the pleading standard of Rule 9(b)."   Jallali, 667 F. App'x at 745.   Stillwells did not meet the heightened pleading standard as to any element.

### i.    There are no false claims.

"[S]ome indicia of reliability must be given in the complaint to support an allegation of an actual false claim for payment being made to the Government."

Clausen, 290 F. 3d at 1311 (emphasis in original).  To establish the first element, Stillwells must identify with particularity the specific document and statement alleged to be false.  United States ex rel. Matheny v. Medco Health Solutions, Inc., 671 F. 3d 1217, 1225 (11th Cir. 2012).  Stillwells claim that the Global Release, which did not include a MSA for future medical expenses, is a false and fraudulent document.  (Doc. 105, pp. 23-27).

### a. The Global Release is not a false or fraudulent document.

The Stillwells' false claims theory is predicated on the alleged false or fraudulent Global Settlement, which did not include a Medicare Set Aside for future medical expenses.  (Doc. 105, pp. 23-27).  Initially, Stillwells attempt to push a false narrative that the enforced release included a false statement that Mr. Stillwell concluded medical treatment and did not anticipate future medical costs.  *Initial Brief, 29.*  That provision in the original release was excised and is not part of the enforced Global Release.  (Doc. 105-16, pp. 19-21).

The Stillwells' interpretation of their Medicare-related responsibilities vis-à-vis the Global Release, the Indiana state court judgment, and the opinion on appeal, is grossly misplaced.  The Global Release provides that the Stillwells' are responsible for future medical liens.  (Doc. 105-18).  The Indiana trial court enforced the Global Release and entered a judgment ruling:

> The Stillwells are jointly and severally liable for payment of any existing or future medical lien or liens of any type relating to William Stillwell and shall defend, indemnify, and save harmless the Defendants and their respective insurers . . . from any claim . . . brought as a result of any treatment, injuries, or damages . . . .

(Doc. 105-17). The appellate court affirmed the judgment. (Doc. 105-18). Thus, there is no question that the Stillwells are responsible for future medical expenses/liens.

Stillwells cannot challenge the Global Release for two reasons. First, they are estopped because (a) the enforceability of the Global Release was litigated in the Indiana litigation, (b) the determination of enforceability was a critical and necessary part of the judgment in that litigation, and (c) the Stillwells had a full and fair opportunity to litigate the issue. See I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F. 2d 1541, 1549 (11th Cir. 1986) (outlining the elements of collateral estoppel).

Second, the Indiana Judgment enforcing the Global Release affirmed on appeal is entitled to full faith and credit in this Court. See Stillwell v. Eagle-Kirkpatrick Mgmt. Co., 107 N.E. 3d 1113, 2018 Ind. App. Unpub. LEXIS 788 (Ind. Ct. App. July 6, 2018) trans. denied, cert. denied, 139 S. Ct. 2756 (2019). "Federal courts must accord the same preclusive effect to a state court judgment as would be accorded that judgment under the law of the state in which the judgment was rendered." Harbuck v. Marsh Block & Co., 896 F. 2d 1327, 1328 (11th Cir. 1990). The Global Release is not a false record because it was enforced and validated by

the Indiana courts and that judgment must be accorded the same preclusive effect here.

In dismissing the Third Amended Complaint with prejudice, the District Court correctly stated:

> The Stillwells in the third amended complaint cannot escape the peremptory conclusion that, by accepting the lump sum settlement the Stillwells released the insurers from the obligation to pay under the insurance policies, and consequently the Stillwells—not the insurers— became the primary payers for post-settlement medical expenses.

(Doc. 124, p. 3).

The Indiana state court's judgment reflects that all monies have been paid and obligations satisfied.  (Doc. 105-17).

Stillwells allege that Defendants knew about the severity of Mr. Stillwell's injuries and need for future treatment.  This is irrelevant.  Even *after* procuring the life care plan, Stillwells agreed (1) their case was valued at $200,000 and (2) to release Defendants against future medical liens (which would necessarily include the alleged expenses in the life care plan).  The enforced Global Release makes the Stillwells responsible for any future medical expenses.

In a similar vein, Exhibits S-V of the Third Amended Complaint (Docs. 105-19-22) are merely alleged submissions by Mr. Stillwell's health care providers of his "accident-related" treatment/services to Medicare, along with Medicare's payments. These expenses *post-dating* the Global Release are the Stillwells' responsibility per

33

agreement.  Therefore, to the extent any false or fraudulent claims were submitted to Medicare—which there were not—it would be the *Stillwells* who were responsible for allowing such submissions.

### b. There is no requirement to create a "Medicare Set Aside" or to "carve out" additional funds for Medicare.

Stillwells allege Motorists Mutual violated the FCA by not creating "a Medicare Set Aside." (Doc. 105, p. 23).  Stillwells add that Motorists Mutual "could have . . . carved out" funds in other ways to comply with their obligations.  (Id. at 23-24).

The District Court correctly found that no law or regulation requires a liability insurer settling a personal injury action to create a Medicare Set-Aside—or any other related machination—to cover potential future medical expenses.

> "Medicare does not currently have a policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases." *Big R Towing, Inc. v. David Wayne Benoit, et al*, 10-538, 2011 U.S. Dist. LEXIS 1392, 2011 WL 43219 (W.D. La. 2011); *see also, Warren Frank v. Gateway Ins. Co*., 6:11-cv-00121, 2012 U.S. Dist. LEXIS 33581, 2012 WL 868872 (W.D. La. 2012). Medicare "does not currently require or approve Medicare Set Asides when personal injury lawsuits are settled." *Warren Frank*, 2012 U.S. Dist. LEXIS 33581, 2012 WL at *3.

<u>Berry v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 1:11-CV-01611, 2015 U.S. Dist.

LEXIS 3319, *4-5 (W.D. La. 2015).[7]

> Although defendants could have conditioned the settlement on
> plaintiff's providing a physician's letter or agreeing to a MSA, they did
> not do so. *See* <u>Bruton v. Carnival Corp.</u>, 2012 U.S. Dist. LEXIS 64416,
> 2012 WL 1627729, **2, 3 (S.D.Fla. 2012) ("the [settlement]
> Agreement does not require the creation of a Medicare set-aside trust
> account. The Agreement specified only that Plaintiff was to execute a
> general release with "Medicare provisions" without specifying what
> those provisions would be. The Agreement makes no mention
> whatsoever of a Medicare set-aside account . . . . There is no legal
> requirement that the settlement in this personal injury lawsuit include a
> Medicare set-aside trust account"); <u>Sipler v. Trans Am Trucking, Inc</u>.,
> 881 F.Supp.2d 635, 638, 639 (D.N.J. 2012) ("no federal law requires
> set-aside arrangements in personal injury settlements for future medical
> expenses . . . . [T]he parties in this case need not include language in
> the settlement documents noting [plaintiff's] obligations to Medicare or
> fashion a Medicare set-aside for future medical expenses").

<u>Cole-Hoover v. N.Y. Dep't of Corr. Servs.</u>, No. 01-CV-00826(M), 2013 U.S. Dist.

LEXIS 148989, *8-9 (W.D.N.Y. Oct. 16, 2013).  <u>See also</u> <u>Abate v. Wal-Mart Stores</u>

<u>East, L.P.</u>, 503 F. Supp. 3d 257 (W.D. Pa. 2020) (recognizing that Liability Medicare

Set-Aside Arrangements are not mandated by the MSP Act in personal injury actions

involving liability insurance settlements not involving workers' compensation);

<u>Aranki v. Burwell</u>, 151 F. Supp. 3d 1038, 1040 (D. Ariz. 2015) ("[N]o federal law

---

[7] In fact, there is disagreement even among the various regional branches of CMS as
to whether regulations should be implemented to require Medicare set-asides in
personal injury lawsuit settlements.  <u>See</u> Aaron D. Frishman, Esq., <u>Medicare Set-
Asides in Personal Injury Cases:  Is There A Standard Method of Practice?</u>, NAELA
Journal, Vol. 8, No. 2, Fall, 2012 at 169-170.

or CMS regulation requires the creation of a MSA in personal injury settlements to cover potential future medical expenses.").

In the present case, not only is there no duty under the law for Motorists Mutual to create a Medicare Set Aside, the Global Release (with similar terms to those in <u>Bruton</u>), includes appropriate Medicare provisions. Per those provisions, the *Stillwells*—not the Appellees—are responsible for future medical expenses. Accordingly, there exist no false or fraudulent claims in this case.

### ii.    Presentment of claims is not pled with particularity.

Stillwells proceeded under an "implied certification theory" alleging that the Global Release, through a convoluted and speculative chain of events, somehow concealed Defendants' primary payer responsibility and recklessly caused Mr. Stillwell's healthcare providers to provide fraudulent and false claims to Medicare. (Doc. 105, pp. 23-28).

Under the implied certification theory, "liability is premised on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." <u>United States ex rel. Wilkins v. United Health Grp., Inc.</u>, 659 F. 3d 295, 305 (3d Cir. 2011) (abrogated on other grounds).

> [T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied: First, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to

disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

Escobar, 579 U.S. at 190.

> We find that for "cause to be presented" claims, proximate causation is a useful and appropriate standard by which to determine whether there is a sufficient nexus between the defendant's conduct and the submission of a false claim. It has the advantage of familiarity and serves to cull those claims with only attenuated links between the defendant's conduct and the presentation of the false claim. "Under this analysis, a defendant's conduct may be found to have caused the submission of a claim for Medicare reimbursement if the conduct was (1) a substantial factor in inducing providers to submit claims for reimbursement, and (2) if the submission of claims for reimbursement was reasonably foreseeable or anticipated as a natural consequence of defendants" conduct." *Marder*, 208 F. Supp. 3d at 1312-13. (internal quotation and alteration omitted).

Ruckh v. Salus Rehab., LLC, 963 F. 3d 1089, 1107 (11th Cir. 2020).

The Third Amended Complaint failed to sufficiently allege causation (i.e., presentment of a false claim). Stillwells failed to allege facts about any alleged misrepresentation, such as whether it was oral or written, what Defendants stated, who or even which Defendant stated it and to whom, when it was stated, or where it was stated. Stillwells did not plead with particularity how Defendants, or the enforced Global Release, caused Mr. Stillwell's healthcare providers to do anything violative of the FCA or Medicare's rights.

Instead, Stillwells vaguely and conclusively assert that Defendants' collective "actions, claims processing procedures, and failure to report caused Mr. Stillwell's

healthcare providers to submit claims to Medicare for medical items or services" when the defendants had primary payer responsibility. (Doc. 105, p. 26). These conclusory allegations are insufficient to support an FCA claim. See generally Klusmeier v. Bell Constructors, Inc., 469 F. App'x 718, 721 (11th Cir. 2012).

Stillwells have not pointed to any law requiring an insurance carrier to notify an insured's health care providers of the insurer's primary payer status. To the contrary, the Medicare Claims Processing Manual, cited by Stillwells, requires *providers* make "a good faith effort to determine whether Medicare is the primary or secondary payer." Medicare Claims Processing Manual, Chapter 26, p. 6.[8] The law imposes a duty on the *providers*, not an insurance carrier, to complete CMS-1500 Data Set to the best of *its* knowledge and "on the basis of information obtained by *the individual* [i.e., William Stillwell] to whom the item or service is furnished." § 1395y(b)(6)(A) (emphasis added). Thus, Stillwells' attempt to blame Defendants in terms of submission of claims vis-à-vis CMS-1500 is misplaced.

Stillwells attach to the Third Amended Complaint medical expense claims allegedly submitted to Medicare from November 2016 through 2020 as purported evidence that Defendants caused Mr. Stillwell's healthcare providers to provide fraudulent claims to Medicare. (Doc. 105-19-22). None of these documents reflect

---

[8] https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c26pdf.pdf

a statement by the healthcare providers that Medicare is the primary payer for William's claim.  There is no indication that Motorists Mutual knew of these medical summaries or had any role in presenting bills related to this treatment to Medicare.  And post-settlement expenses cannot support a claim under § 3729(a)(1)(A) because any outstanding medical bills were the Stillwells' responsibility.

Stillwells' reliance on <u>United States ex. rel. Mikes v. Straus</u>, 274 F. 3d 687, 692, 700 (2d Cir. 2001) is misplaced as that case was brought against *health care providers* for violations of § 1395y(a)(1)(A).  This case was not brought against Mr. Stillwell's healthcare providers and does not concern that statutory provision.

The Stillwells were required to plead that the Defendants' conduct was a substantial factor inducing the fraudulent claim's submission to Medicare and that the submission was reasonably foreseeable.  <u>Ruckh</u>, 963 F. 3d at 1107.  They offer only conclusory accusations.  There are no allegations pled with particularity showing conduct by Defendants directing, inducing, suggesting, or prompting any of William's healthcare providers to file <u>anything</u> (let alone a false claim that Medicare was the primary payer for William's claim) with Medicare.[9]

### iii.    The *knowledge* element is not pled with particularity.

---

[9] The definition of a baseless, bald, and conclusory allegation can be found in footnote 20 of the Initial Brief, where Stillwells theorize that the Global Release phrase "future medical care shall not be affected" meant to induce William Stillwell to have his doctors and suppliers submit claims Medicare.  There are no facts to support this, and certainly, no facts plead with particularity to suggest Stillwells' physicians knew of this or took any action based on this language.

The knowledge element of the FCA requires a person must have "actual knowledge of the information" in question or act in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1)(A).  The knowledge element applies to a "situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted."  United States v. Kaman Precision Prods., No. 6:09-cv-1911-Orl-31GJK, 2011 U.S. Dist. LEXIS 97263, *14 (M.D. Fla. Aug. 30, 2011) (quoting S. Rep. No. 99-345, at 21 (1986)).

The Third Amended Complaint (exactly like the dismissed First Amended Complaint), alleges that Defendants "'knew or should have known that they were causing Mr. Stillwell's healthcare providers to submit false or fraudulent claims under the MSP Act' and were deliberately ignoring and acting with reckless disregard as to the falsity of the claims under the MSP Act." (Doc. 71, p. 22 (quoting Doc. 61, ¶ 76)); see also (Doc. 105, ¶ 125 repeating the identical allegations).

Stillwells do not allege details of Motorists Mutual's purported fraudulent acts, when they occurred, or who engaged in them.  Clausen, 290 F. 3d at 1308.  They do not allege any time, place, or speaker concerning any fraud perpetrated by Motorists Mutual.  There are no allegations of any statements made by Motorists Mutual or any agent, let alone contents of such statements or the manner in which they materially mislead *anyone*.  There are no allegations that anyone on behalf of

Motorists Mutual had any interaction at any particular time with CMS or with Mr. Stillwell's medical providers so as to compel those providers to present anything to CMS for Medicare purposes. Thus, there are no facts tying Motorists Mutual to anything fraudulent, let alone any "knowledge" on Motorists Mutual's behalf of fraudulent activity.

Stillwells' failure to report allegations also fail in light of the exhibits. CMS was fully advised concerning Mr. Stillwell's claim. The primary payer must report (1) the identity of the beneficiary, the payer, and the beneficiary's attorney; (2) the date, nature, and cause of the injury; (3) the settlement date and amount; and (4) the responsibility, if any of the payer for the beneficiary's future medical expenses. (Doc 105-1). This information is required "to enable the Secretary to make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." 42 U.S.C. § 1395y(b)(8)(B)(iii).

CMS received sufficient information to make such a determination. The letters from CMS, dating back to 2013, reflect that CMS knew: (a) Mr. Stillwell was a Medicare beneficiary, (b) the identity of his attorneys, (c) that he brought claims for personal injuries, (d) that he received treatment resulting from the personal injuries, (e) that he settled his claim, and (f) that CME had lien rights for conditional payments.

CMS demanded that Mr. Stillwell reimburse CMS for $19,672.99 related to the claims. CMS reached this figure by accounting for its medical payments (i.e., $29,509.33) in conjunction with "the costs (such as attorney's fees) paid by the beneficiary to obtain his/her settlement . . . ." (Doc. 105-10, p. 3). CMS, therefore, knew of the settlement (which included attorney's fees designations and MedPay in the amount of $5,000), "applied the formula and determined the amount you owe Medicare is $19,672.99." (Id.). Accordingly, the exhibits contradict Stillwells' reporting violation allegations. Stillwells did not, and cannot, establish that Defendants acted with reckless disregard to their responsibilities or buried their heads in the sand given the letters from CMS.

### iv.     Materiality is not pled with particularity.

"Materiality is defined as 'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" United States v. Mortg. Inv'rs Corp., 987 F. 3d 1340, 1347 (11th Cir. 2021) (quoting Escobar, 579 U.S. at 192-93). Relevant factors to materiality include: "(1) whether the requirement is a condition of the government's payment, (2) whether the misrepresentations went to the essence of the bargain with the government, and (3) to the extent the government had actual knowledge of the misrepresentations, the effect of the government's behavior." Mortg. Inv'rs Corp., 987 F. 3d at 1347.

"The materiality standard is demanding . . . . [and] "rigorous." <u>Escobar</u>, 579 U.S. at 194.  Particularized facts must be plead to satisfy the standard.  <u>Id.</u> at n.6.  The Third Amended Complaint does not, with any particularity, plead facts satisfying the three elements above.

The Stillwells allegations of noncompliance with section 1395y (in terms of reporting violations) simply cannot establish materiality.  "The mere fact that § 1395y is a condition of payment, without more, does not establish materiality." <u>United States ex. re. Petratos v. Genentech Inc.</u>, 855 F. 3d 481, 490 (3d Cir. 2017) (affirming dismissal of FCA claim for lack of materiality where relator claimed pharmaceutical company violated reporting requirements necessary for Medicare reimbursement).

In fact, this Circuit recognizes that a mere disregard of government regulations does not give rise to an FCA cause of action:

> Not every violation of a government regulation results in a violation of the FCA. <u>See</u> <u>Corsello</u>, 428 F.3d at 1012 ("Liability under the [FCA] arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies.") (citing <u>Clausen</u>, 290 F.3d at 1311).

<u>Klusmeier</u>, 469 F. App'x. at 721 (dismissing FCA complaint with prejudice as allegations in Complaint did not show that monthly invoices [sent in non-compliance with governmental regulations] actually resulted in a submission of false claims or included a fraudulent request for payment).  <u>Accord</u> <u>Escobar</u>, 579 U.S. 176 at 191

43

("[S]tatutory, regulatory, and contractual requirements are not automatically material, even if they are labeled as conditions of payment.").

"The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." Id. at 194 (internal citations and quotations omitted). See also United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp., 929 F. 3d 721, 728 (D.C. Cir. 2019) (rejecting Relators' attempt to state a FCA action based on a failure to adhere to reporting requirements); United States ex rel. Harper v. Muskingum Watershed Conservancy Dist., 842 F. 3d 430, 437 (6th Cir. 2016) ("[T]he FCA is aimed at stopping fraud against the United States and does not create a vehicle to police technical compliance with federal obligations.") (citations and quotations omitted); Urquilla-Diaz, 780 F. 3d at 1058 ("Congress did not intend to turn the False Claims Act, a law designed to punish and deter fraud . . . into a vehicle either punishing honest mistakes or incorrect claims submitted through mere negligence . . . .") (cleaned up).

The alleged failure to report allegations—even if plead with particularity, which they were not—are much like the sort of "'minor or insubstantial' noncompliance that the Supreme Court explained should not be litigated under the False Claims Act." Petratos, 855 F. 3d at 490 (citing Escobar, 579 U.S. at 194). This is likely why there are no cases in which a violation of ORM or TPOC reporting has been found sufficient to support a FCA action.

44

The District Court correctly dismissed Count 2.

**D.    The District Court correctly dismissed Count 4: 31 U.S.C. § 3729(a)(1)(B).**

Under § 3729(a)(1)(B), Stillwells must show that "(1) defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." Phalp, 857 F. 3d at 1154. As argued above, Stillwells cannot satisfy any of these elements. The District Court correctly dismissed Count 4.

**E.    The District Court correctly dismissed Count 6: 31 U.S.C. § 3729(a)(1)(C).**

"To state a claim of conspiracy to violate the False Claims Act, the plaintiff must allege (1) an unlawful agreement between defendants to commit a violation of § 3729(a)(1); (2) an act performed in furtherance of the conspiracy; and (3) that the United States suffered damages as a result." United States v. HPC Healthcare, Inc., 723 F. App'x 783, 791 (11th Cir. 2018) (affirming dismissal of § 3729(a)(1)(C) due to lack of specific allegations of an agreement to violate the FCA).

"To sustain a claim for conspiracy, a Relator must provide evidence of an agreement and must identify with specificity the individuals who participated in the conspiracy." United States ex rel. Bane v. Breathe Easy Pulmonary Servs., 597 F. Supp. 2d 1280, 1289-90 (M.D. Fla. 2009). See also Corsello, 428 F. 3d 1008 (11th

45

Cir. 2005) (dismissing FCA conspiracy count because employee only alleged in conclusory fashion that employers were engaged in a conspiracy).[10]

Stillwells offer only vague and conclusory allegations of a conspiracy between State Farm and Motorists Mutual. (Doc. 105, pp. 39-40). There are no allegations of direct communications between the Defendants in *this* action; instead, Plaintiffs refer to communications between counsel for parties to the *Indiana* action. (Doc. 105-7, 105-12, 105-13 & 105-15). There are no facts pled identifying with specificity any individuals who reached an agreement or communicated to conspire to defraud Medicare. "A mere conclusory allegation which asserts fraud without a description of the fraudulent conduct does not satisfy Rule 9(b)." <u>United States ex rel. Stinson, Lyons, Berlin & Bustamante, P.A. v. Provident Life & Acci. Ins. Co.</u>, 721 F. Supp. 1247, 1258 (S.D. Fla. 1989) (dismissing Realtor's 31 U.S.C. § 3729(a)(3) claim for conspiracy based on failure to allege an agreement to defraud). And, as shown above, Defendants did not violate the FCA in the first place, let alone conspire to do so. The District Court correctly dismissed Count 6.

## F.    The District Court correctly dismissed Count 8: 31 U.S.C. § 3729(a)(1)(G).

---

[10] Stillwells' concern with pre-FERA and post-FERA claims are of no import. "There does not appear to be a difference between the elements of a pre-FERA conspiracy claim under Section 3729(a)(3) and a post-FERA conspiracy claim under Section 3729(a)(1)(C)." <u>United States ex. rel. Rosenfeld v. Univ. of Miami & Timothy G. Murray</u>, No. 12-24513-CIV-LENARD/LOUIS, 2018 U.S. Dist. LEXIS 233729, *21 n.3 (S.D. Fla. Mar. 29, 2018).

"Section 3729(a)(1)(G), the so-called reverse false-claims provision of the FCA, provides for recovery from someone who 'knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the government.'"  Olson, 831 F. 3d at 1072 (quoting 31 U.S.C. § 3729(a)(1)(G)).  "The reverse false claims provision does not eliminate or supplant the FCA's false claim requirement."  United States ex rel. Kelly v. Serco, Inc., 846 F. 3d 325, 336 (9th Cir. 2017) (internal quotations and citations omitted).

"'Knowingly' must be interpreted to refer to a defendant's awareness of *both* an obligation to the United States *and* his violation of that obligation."  Muskingum Watershed Conservancy Dist., 842 F. 3d at 436 (discussing 31 U.S.C. § 3729(a)(1)(G); emphasis in original).  "Concealment [is] equivalent to a misrepresentation[,]" . . . .  [and] "[i]t is evident that the language at issue here encompasses fraudulent conduct to which Rule 9(b)'s pleading requirements apply."  Olson, 831 F. 3d at 1074.  See also United States ex rel. Gelbman v. City of New York, 790 F. App'x 244, 249 (2d Cir. 2019) ("We have also applied Rule 9(b)'s heightened pleading standard to *qui tam* actions brought under § 3729(a)(1)(G) for reverse false claims.").  If there is "no . . . fraudulent conduct under the FCA, then there can be no reverse liability under § 3729(a)(1)(G)."  Olson, 831 F. 3d at 1074.

As shown above, there were no false statements made or fraudulent conduct. The "who," "what," "where," "when," and "how" of fraudulent submissions to the

government was not pled with particularity. <u>Urquilla-Diaz</u>, 780 F. 3d at 1052. Count 8 offers the same "conclusory allegations, unwarranted deductions of facts [and] legal conclusions masquerading as facts" as alleged in Counts 2, 4 & 6. <u>See</u> <u>Oxford Asset Mgmt. v. Jaharis</u>, 297 F. 3d 1182, 1188 (11th Cir. 2002).

Additionally, "[t]o establish a reverse false claim cause of action pursuant to 31 U.S.C. § 3729(a)(1)(G), a relator must show that the defendant owed a definite and clear obligation to pay money to the United States at the time of the allegedly false statements." <u>United States ex rel. Paul v. Biotronik, Inc.</u>, 18-cv-396-T-36JSS, 2020 U.S. Dist. LEXIS 68818, *18 (M.D. Fla. Apr. 20, 2020) (cleaned up). <u>See also</u> <u>Medco Health Solutions, Inc.</u>, 671 F. 3d at 1223.

Appellees did not owe any obligation to pay money to the United States. CMS was properly reimbursed its conditional payments. At that point, any possible obligation to pay CMS fell on the Stillwells per agreement. Thus, reverse false claim Count 8 was properly dismissed. <u>See</u> <u>United States v. Lee Mem'l Health Sys.</u>, 14-cv-437-FtM-38CM, 2019 U.S. Dist. LEXIS 35783, *24 (M.D. Fla. Mar. 6, 2019) ("Therefore, this reverse false claim must also fail because the Amended Complaint cannot establish that Lee Health had an obligation to repay the Government.").

Additionally, the government *may* assess a $1,000 fine for violating reporting requirements. 42 U.S.C. 1395y(b)(8)(E)(i). That has not occurred here. Even if a fine was imposed, that would not give rise to an FCA action. <u>See</u> <u>United States ex</u>

rel. Simoneaux v. E.I. DuPont de Nemours & Co., 843 F. 3d 1033, 1035, 1039 (5th Cir. 2016) (reaffirming that potential or contingent obligations to pay the government fines or penalties cannot establish a reverse false claim under the FCA).

Thus, Stillwells' reporting violation allegations do not give rise to an FCA action.  The District Court correctly dismissed Count 8.

## III.    THE DISTRICT COURT PROPERLY CONSIDERED JUDICIAL POLICY FAVORING SETTLEMENTS AND PROPERLY DECLINED TO LEGISLATE FROM THE BENCH.

Stillwell's 'third' issue is based on a false premise and is not dispositive in any event.  The District Court did not dismiss the Third Amended Complaint with prejudice *because* of inaction by the Secretary or judicial policy favoring settlements.  Dismissal was based on failure to state a cause of action under the FCA and MSP Act.  Sound public policy simply supports the decision.

Judge Merryday is right, and as the Stillwells concede, there is no statutory or regulatory law requiring a liability settlement with a Medicare beneficiary to cover future medical expenses in *any* manner.  To create one by judicial fiat would invade the right of the Secretary of Health and Human Services to promulgate Medicare regulations.

"Medicare . . . [is] administered by the Secretary of Health and Human Services, who has general statutory authority to promulgate regulations 'as may be necessary to the efficient administration of the functions with which he is charged.'"

Biden v. Missouri, 142 S. Ct. 647, 650 (2022) (quoting 42 U.S.C. § 1302(a)). "Congress vested the Secretary large rulemaking authority to administer Medicare. A court lacks authority to undermine the Secretary's regime unless her regulation is arbitrary, capricious, or manifestly contrary to the statute." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 146-47 (2013) (internal quotations and citation omitted).

Since there is no regulation being questioned, providing the relief the Stillwells request would involve improper judicial intrusion of the rule making authority vested in the executive branch. This would violate the separation of powers. Accord Miller v. French, 530 U.S. 327, 341 (2000) ("the concept of separation of powers . . . . prohibits one branch from encroaching on the central prerogatives of another . . . .").

The Stillwells also improperly ask this Court to issue an advisory opinion on the legal requirements of the MSP Act or re-write the settlement agreement. First, the Global Release has been adjudicated as valid and enforceable; it must be enforced. Harbuck, 896 F. 2d at 1328. Second, "[c]ourts are not permitted to modify settlement terms or in any manner rewrite the agreement reached by the parties." Holmes v. Continental Can Co., 706 F. 2d 1144, 1160 (11th Cir. 1983). And third, "the federal courts are constitutionally empowered only to render judgments which are not advisory opinions." R.T. Vanderbilt Co. v. Occupational Safety & Health Review Com., 708 F. 2d 570, 574 (11th Cir. 1983).

The Stillwells also incorrectly analogize settlements in the workers' compensation context to the present matter and suggest and that imposing upon Appellees similar settlement restrictions would not discourage settlements. They are wrong on both scores as succinctly stated in <u>Sipler</u>:

> The settlement in this case, however, does not arise in the worker's compensation context. And it does not indicate a particular amount to compensate Mr. Sipler for future medical expenses arising out of the accident. Nor should it. In contrast to the worker's compensation scheme that "generally determine[s] recovery on the basis of a rigid formula, often with a statutory maximum . . . . [t]ort cases . . . involve noneconomic damages not available in workers' compensation cases, and a victim's damages are not determined by an established formula." <u>Zinman v. Shalala</u>, 67 F.3d 841, 846 (9th Cir. 1995) (citation omitted). Thus, to require personal injury settlements to specifically apportion future medical expenses would prove burdensome to the settlement process and, in turn, discourage personal injury settlements. <u>See McDermott, Inc. v. AmClyde</u>, 511 U.S. 202, 215, 114 S. Ct. 1461, 128 L. Ed. 2d 148 (1994) (noting that "public policy wisely encourages settlements"). In sum, the parties in this case need not include language in the settlement documents noting Mr. Sipler's obligations to Medicare or fashion a Medicare set-aside for future medical expenses.

<u>Sipler</u>, 881 F. Supp. 2d at 638-639.

The Stillwells and the defendants (and their insurers) in the Indiana lawsuit reached a settlement agreement for $200,000. All parties believed this was fair considering the facts of the case including William Stillwell's needs for future medical treatment. Portions were set-aside—by agreement—to satisfy Medicare and Anthem's liens. Defendants paid the $200,000, which was accepted and deposited. The *Stillwells* agreed they were responsible for any future medical expenses owed

to Medicare.  The law does not require anything else from Defendants simply because the Stillwells had buyers' remorse.

## CONCLUSION

The District Court correctly dismissed Plaintiff's Third Amended Complaint with prejudice for failure to state a cause of action.  The Stillwells settled their claims, accepted the funds, and agreed to be responsible.  This settlement agreement was enforced by courts in Indiana.  The Stillwells simply have buyers' remorse, which is wholly insufficient to plead a cause of action.  This Court must affirm.

WHEREFORE, Appellee MOTORISTS MUTUAL INSURANCE COMPANY requests this Court affirm the Final Judgment.

**BOYD & JENERETTE, PA**

*/s/ Kansas R. Gooden*
**KANSAS R. GOODEN**
Florida Bar No. 058707
kgooden@boydjen.com
11767 S. Dixie Hwy, #274
Miami, FL 33156
Tel: (305) 537-1238
**KEVIN D. FRANZ**
Florida Bar No. 015243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel: (561) 208-0708
Counsel for Appellee Motorists Mutual

<u>**CERTIFICATE OF COMPLIANCE**</u>

We hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 32(a)(7)(B) in that it contains 12,717 words (including words in footnotes) according to Microsoft 365, the word-processing system used to prepare this brief.

<u>**CERTIFICATE OF SERVICE**</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via CMS and via Federal Express upon the following clerk of court this 1st day of August, 2022:

> David J. Smith, Clerk of Court
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth St., N.W.
> Atlanta, Georgia 30303

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court through the CM/ECF system and furnished upon the following counsel this 1st day of August, 2022.

<u>**Service List**</u>

| | |
|---|---|
| Jeremy L. Friedman | Christopher J. Emden |
| Law Office of Jeremy L. Friedman | UNITED STATES ATTORNEY'S |
| 2801 Sylhowe Road | OFFICE |
| Oakland, CA 94602 | USA No. 158 |
| Telephone: (510) 530-9060 | 400 North Tampa Street, Suite 3200 |
| Facsimile: (510) 530-9087 | Tampa, FL 33602 |
| jlfried@comcast.net | Telephone (813) 274-6000 |
| ***Attorney for Appellants*** | Facsimile: (813) 274-6200 |
| | Christopher.Emden@usdoj.gov |

53

*Attorney for the United States of America*

Benjamine Reid
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL 33131-2113
Telephone (305) 539-7222
Facsimile: (305) 530-0055
breid@carltonfields.com
***Attorneys for State Farm Mutual Auto. Insurance Company***

David Matthew Allen
CARLTON FIELDS JORDEN BURT, P.A.
4221 West Boy Scout Boulevard
Suite 1000
Tampa, FL 33607
Telephone (813) 223-7000
Facsimile: (813) 229-4133
mallen@carltonfields.com
***Attorneys for State Farm Mutual Auto. Insurance Company***

Daniel Lemongello
HILL & LEMONGELLO, P.A.
800 Southeast 3rd Avenue, Suite 200
Fort Lauderdale, FL 33316
Telephone: (954) 462-3623
Facsimile: (954) 523-1940
danl@hill-lem-law.com
***Attorney for Motorists Mutual Insurance Company***

*/s/ Kansas R. Gooden*
KANSAS R. GOODEN