Case No. 21-13740-BB

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

PENELOPE STILLWELL, FOR HERSELF AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF WILLIAM STILLWELL,
DECEASED,
*Plaintiff/Appellant,*

v.

STATE FARM FIRE AND CASUALTY COMPANY and
MOTORISTS MUTUAL INSURANCE COMPANY,
*Defendants/Appellees.*

---

Appeal from the United States District Court
for the Middle District of Florida
District Court Docket No. 8:17-cv-1894-SDM-AAS

---

## ANSWER BRIEF OF DEFENDANT/APPELLEE
## STATE FARM FIRE AND CASUALTY COMPANY

---

D. Matthew Allen
Florida Bar No. 866326
CARLTON FIELDS, P.A.
Suite 1000
4221 West Boy Scout Boulevard
Tampa, Florida 33607
Telephone: (813) 229-4304
mallen@carltonfields.com

Benjamine Reid
Florida Bar No. 183522
Jeffrey A. Cohen
Florida Bar No. 057355
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone: (305) 530-0050
breid@carltonfields.com
jacohen@carltonfields.com

*Counsel for State Farm Fire and Casualty Company*

*Stillwell v. State Farm Fire and Cas. Co.*
Case No. 21-13740-BB

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellee/Defendant, State Farm Fire and Casualty Company, pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Local Rule 26.1-1, hereby files its certificate of interested persons and corporate disclosure statement as follows:

The following is a list of related persons and entities that have or may have an interest in the outcome of this case:

1.    Allen, Esq., David Matthew

2.    Anthem Blue Cross and Blue Shield (ANTM)

3.    Boyd & Jenerette, P.A.

4.    Carlton Fields, P.A.

5.    Centers for Medicare & Medicaid Services

6.    Chamberlain, Esq., Daniel

7.    Cohen, Esq. Jeffrey A.

8.    Cohen & Malad, LLP

9.    Emden, Esq., Christopher J.

10.   Engle-Kirkpatrick Management Company, Inc.

11.   Estate of William Stillwell, deceased

12.   Franz, Esq., Kevin D.

*Stillwell v. State Farm Fire and Cas. Co.*
Case No. 21-13740-BB

13.    Gooden, Esq., Kansas R.

14.    G.T. Services, Inc., d/b/a Green Tough Services, Inc.

15.    Grover, Esq., Steven F.

16.    Hill & Lemongello, P.A.

17.    Joven, Esq., Carol N.

18.    Kirkpatrick Management, Co., Inc.

19.    Lemongello, Esq., Daniel

20.    Merryday, Honorable Steven D.

21.    Motorists Mutual Insurance Company

22.    Optimal Performance and Physical Therapies

23.    Price Waicukauski Joven & Caitlin, LLC

24.    Reid, Esq., Benjamin

25.    Rocap, Esq., Richard A.

26.    Rocap Law Firm

27.    Sansone, Honorable Amanda A.

28.    Schulz, Esq., Bradley J.

29.    Section C Homeowners Association, Inc.

30.    State Farm Fire and Casualty Company

31.    State Farm Litigation Counsel

32.    Steven F. Grover, P.A.

*Stillwell v. State Farm Fire and Cas. Co.*
Case No. 21-13740-BB

33.    Stillwell, Penelope

34.    United States Attorney's Office

35.    United States of America Ex Rel.

Defendant/Appellee State Farm Fire and Casualty Company is a wholly-owned subsidiary of State Farm Mutual Automobile Insurance Company. State Farm Mutual Automobile Insurance Company is an incorporated mutual insurance company that is headquartered in Bloomington, Illinois. It is not publicly traded and has no stock or stockholders. It therefore has no parent company, and no publicly traded company owns 10% or more of its stock.

/s/  D. Matthew Allen
D. Matthew Allen
Florida Bar No. 866326

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

State Farm does not believe oral argument is necessary for this appeal, although undersigned counsel would be pleased to present oral argument should the Court desire it.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES ..........................................................................v

JURISDICTIONAL STATEMENT ...................................................................1

ISSUES PRESENTED FOR REVIEW ...............................................................2

STATEMENT OF THE CASE.........................................................................2

    A.    Nature of the Case ................................................................2

    B.    Statement of Facts ................................................................4

    C.    Course of the Proceedings and Ruling Below.....................7

STANDARD OF REVIEW .............................................................................9

SUMMARY OF ARGUMENT .........................................................................9

ARGUMENT ...........................................................................................11

I.    THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S MSP CLAIMS BECAUSE THE COMPLAINT FAILED TO DEMONSTRATE THAT THE INSURERS CONCEALED A PRIMARY-PAYER RESPONSIBILITY. ....................................................11

    A.    The District Court Correctly Ruled State Farm Was Not a Primary Payer for Future Medical Expenses. ......................12

# TABLE OF CONTENTS
### (continued)

*Page*

1.  The District Court Correctly Concluded State Farm Did Not Conceal a TPOC From CMS. ............................................13

2.  The District Court Correctly Concluded State Farm Did Not Conceal an ORM From CMS. ...........................................15

B.  Plaintiff's Arguments Are Unavailing. ...............................................19

1.  Nothing in the MSP Act Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.................................................................................19

2.  Nothing in CMS Regulations Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.................................................................................24

3.  Nothing in CMS Guidance Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.................................................................................28

4.  A Purported Failure to Report Does Not Create An MSP Act Claim. .................................................................................29

5.  Plaintiff's Additional Arguments Are Unavailing....................30

II.  THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S FALSE CLAIMS ACT CLAIMS................................................................35

A.  The District Court Correctly Ruled the Insurers Did Not Fail to Properly Report a TPOC Or ORM....................................................36

1.  The District Court Correctly Dismissed Counts 1-2: Knowing Presentment of a False Claim. ...............................37

a.  Counts 1-2 Failed the Presentment Requirement. ..........37

**TABLE OF CONTENTS**
(continued)

*Page*

       b.    Counts 1-2 Failed the False Claims and Materiality Requirements. ..................................................................39

       c.    Counts 1-2 Failed the Knowledge Requirement. ...........46

    2.    The District Court Correctly Dismissed Counts 3-4: Knowing Use of a False Record. ..............................................47

    3.    The District Court Correctly Dismissed Counts 5-6: Conspiracy To Present a False Claim. .....................................48

    4.    The District Court Correctly Dismissed Counts 7-8: Reverse False Claim. ..................................................................50

  B.    The District Court Correctly Ruled That Plaintiff Failed To Allege Causation. .................................................................52

CONCLUSION ....................................................................................56

CERTIFICATE OF COMPLIANCE......................................................57

CERTIFICATE OF SERVICE ..............................................................58

## TABLE OF AUTHORITIES

*Page*

## Cases

*Abate v. Wal-Mart Stores East, L.P.*,
  503 F. Supp. 3d 257 (W.D. Pa. 2020) ......................................17, 23

*Aranki v. Burwell*,
  151 F. Supp. 3d 1038 (D. Ariz. 2015)...............................17, 25, 26

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*,
  116 F.3d 1364 (11th Cir. 1997) .....................................................12

*Bruton v. Carnival Corp.*,
  2012 WL 1627729 (S.D. Fla. May 2, 2012)..................................17

*Cole-Hoover v. New York Department of Correctional Services*,
  2013 WL 5652751 (W.D.N.Y. Oct. 16, 2013).............................17

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005) .........................................38, 41, 43

*DuHammell v. Renal Care Group East, Inc.*,
  66 A.3d 736 (N.J. Super. Ct. Law Div. 2013).............................31

*Early v. Carnival Corp.*,
  2013 WL 462580 (S.D. Fla. Feb. 7, 2013) ...................................15

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
  544 U.S. 280 (2005)......................................................................35

*Finke v. Hunter's View, Ltd.*,
  2009 WL 6326944 (D. Minn. Aug. 25, 2009).......................17, 23

*Friedman v. Market Street Mortgage Corp.*,
  520 F.3d 1289 (11th Cir. 2008) ....................................................15

*Gallardo v. Marstiller*,
  142 S. Ct. 1751 (2022)..................................................................23

# TABLE OF AUTHORITIES
(continued)

*Page*

\* *Glover v. Liggett Group, Inc.*,
    459 F.3d 1304 (11th Cir. 2006) ..............................................................20, 22

*Hadden v. United States*,
    661 F.3d 298 (6th Cir. 2011) ..................................................................20, 22

*Harbuck v. Marsh Block & Co.*,
    896 F.2d 1327 (11th Cir. 1990) ....................................................................35

*Humana Medical Plan, Inc. v. Reale*,
    180 So. 3d 195 (Fla. 3d DCA 2015)..............................................................32

\* *Humana Medical Plan, Inc. v. Western Heritage Insurance Co.*,
    880 F.3d 1284 (11th Cir. 2018) ....................................................................32

*Humana Medical Plan, Inc. v. Western Heritage Insurance Co.*,
    832 F.3d 1229 (11th Cir. 2016) ............................................................*passim*

*Illinois Insurance Guaranty Fund v. Cochran*,
    2021 WL 1600172 (N.D. Ill. Apr. 23, 2021)..................................................42

*In re Petition for Approval of Settlements*,
    2014 WL 12776284 (W.D. Wash. Feb. 7, 2014) ..........................................17

*Klusmeier v. Bell Constructors, Inc.*,
    469 F. App'x 718 (11th Cir. 2012)..........................................................38, 43

*Manning v. Utilities Mutual Insurance Co.*,
    254 F.3d 387 (2d Cir. 2001) ........................................................................35

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994).....................................................................................27

*Mikes v. Straus*,
    274 F.3d 687 (2d Cir. 2001) ........................................................................54

## TABLE OF AUTHORITIES
(continued)

*Page*

Miller v. French,
530 U.S. 327 (2000)......................................................................18

Motor Vehicle Manufacturers Ass'n of United States, Inc. v. State
Farm Mutual Automobile Insurance Co.,
463 U.S. 29 (1983).......................................................................18

MSP Recovery Claims, Series LLC v. AIG Property Casualty Co.,
2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021)..............................29

MSP Recovery, LLC v. Allstate Insurance Co.,
835 F.3d 1351 (11th Cir. 2016) ...................................................33

MSPA Claims 1, LLC v. Tenet Florida, Inc.,
918 F.3d 1312 (11th Cir. 2019) ...................................................30

Negron v. Progressive Casualty Insurance Co.,
2016 WL 796888 (D.N.J. Mar. 1, 2016) ......................................53

Ocean Harbor Casualty Insurance Co. v. MSPA Claims, 1,
261 So. 3d 637 (Fla. 3d DCA 2018)............................................33

* Przedwojewski v. NHS Management, LLC,
2012 WL 12895655 (N.D. Ala. Feb. 17, 2012)................23, 31, 34

Reiter v. Sonotone Corp.,
442 U.S. 330 (1979).....................................................................20

Ruckh v. Salus Rehabilitation, LLC,
963 F.3d 1089 (11th Cir. 2020) ...................................................43

Sapuppo v. Allstate Floridian Insurance Co.,
739 F.3d 678 (11th Cir. 2014) .....................................................50

Silva through Abeyta v. Burwell,
2017 WL 5891753 (D.N.M. Nov. 28, 2017)................................17

## TABLE OF AUTHORITIES
(continued)

*Page*

\* *Sipler v. Trans Am Trucking, Inc.*,
  881 F. Supp. 2d 635 (D.N.J. 2012)....................................................17, 25, 28

*Stillwell v. Cohen & Malad LLP*,
  149 N.E.3d 676 (Ind. Ct. App. 2020) .............................................................7

*Stillwell v. Eagle-Kirkpatrick Management Co.*,
  107 N.E. 3d 1113 (Ind. Ct. App. 2018) ..........................................................7

*Taransky v. Secretary of United States Department of Health &*
  *Human Services*,
  760 F.3d 307 (3d Cir. 2014) ..........................................................................22

*Tye v. Upper Valley Medical Center*,
  2014 WL 2957037 (Ohio Ct. App. Jun. 27, 2014).......................................17

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*,
  290 F.3d 1301 (11th Cir. 2002) .....................................................................41

*United States ex rel. Cullins v. Astra, Inc.*,
  2010 WL 625279 (S.D. Fla. Feb. 17, 2010).................................................51

*United States ex rel. Drescher v. Highmark, Inc.*,
  305 F. Supp. 2d 451 (E.D. Pa. 2004).............................................................53

*United States ex rel. Harper v. Muskingum Watershed Conservancy*
  *District*,
  842 F.3d 430 (6th Cir. 2016) .........................................................................43

*United States ex rel. Kasowitz Benson Torres LLC v. BASF Corp.*,
  929 F.3d 721 (D.C. Cir. 2019).......................................................................43

\* *United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
  671 F.3d 1217 (11th Cir. 2012) ...............................................................40, 51

# TABLE OF AUTHORITIES
(continued)

*Page*

* *United States ex rel. Petratos v. Genentech Inc.*,
 855 F.3d 481 (3d Cir. 2017) ...................................................44, 45

* *United States ex rel. Phalp v. Lincare Holdings, Inc.*,
 857 F.3d 1148 (11th Cir. 2017) .............................................37, 47

* *United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.*,
 843 F.3d 1033 (5th Cir. 2016) .......................................................42

*United States ex rel. St. Joseph's Hospital, Inc. v. United Distributors, Inc.*,
 2015 WL 8207477 (S.D. Ga. Dec. 7, 2015) ..................................53

*United States ex rel. Wilkins v. United Health Group, Inc.*,
 659 F.3d 295 (3d Cir. 2011) ..........................................................43

*United States v. Bourseau*,
 531 F.3d 1159 (9th Cir. 2008) .......................................................51

*United States v. Genesis Global Healthcare*,
 2021 WL 4268279 (S.D. Ga. Sept. 20, 2021) ...............................53

*United States v. HPC Healthcare, Inc.*,
 723 F. App'x 783 (11th Cir. 2018) ................................................49

*United States v. Levy*,
 416 F.3d 1273 (11th Cir. 2005) .....................................................39

*United States v. Sanford-Brown, Ltd.*,
 840 F.3d 445 (7th Cir. 2016) .........................................................44

*United States v. Taneja*,
 2021 WL 3518206 (M.D. Fla. 2021)..............................................53

* *Universal Health Services, Inc. v. United States ex rel. Escobar*,
 579 U.S. 176 (2016).........................................................37, 44, 55

## TABLE OF AUTHORITIES
(continued)

*Page*

*Urquilla-Diaz v. Kaplan University*,
  780 F.3d 1039 (11th Cir. 2015) ....................................................................37

*Zodiac Group, Inc. v. Axis Surplus Insurance Co.*,
  542 F. App'x 844 (11th Cir. 2013) ...............................................................9

**Statutes**

31 U.S.C. § 3729 .........................................................................................*passim*

42 U.S.C. § 1395y ........................................................................................*passim*

**Rules and Regulations**

42 C.F.R. § 411 ...........................................................................................*passim*

85 Fed. Reg. 8793 (Feb. 18, 2020) ..........................................................42

Federal Rule of Civil Procedure 9 ...........................................................37

Federal Rule of Civil Procedure 10 .........................................................12

**Other Authorities**

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of
  Legal Texts* 116 (West 2012) ......................................................................20

*MMSEA Section 111 NGHP User Guide, Chapter II: Introduction and
  Overview* § 2 ......................................................................................13, 15

*MMSEA Section 111 NGHP User Guide, Chapter III: Policies* § 6.4 ...................13

*MMSEA Section 111 NGHP User Guide, Chapter III, Policy
  Guidance* § 6.3.2 ...........................................................................................28

# TABLE OF AUTHORITIES
### (continued)

*Page*

*MMSEA Section 111 NGHP User Guide, Chapter IV: Technical
Information* § 6.7 ......................................................................................15

Office of Information and Regulatory Affairs, Office of Management
and Budget, Medicare Secondary Payer and Certain Civil
Money Penalties (CMS-6061) (March 2022),
https://www.reginfo.gov/public/do/eoDetails?rrid=229413 ...........................42

Office of Information and Regulatory Affairs, Office of Management
and Budget, Medicare Secondary Payer and Future Medicals
(CMS-6047) (March 2022), https://www.reginfo.gov/public/
do/eoDetails?rrid=229414 ............................................................27

Office of Information and Regulatory Affairs, Office of Management
and Budget, Miscellaneous Medicare Secondary Payer
Clarification and Updates (CMS-6047) (March 2021),
https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=2
02010&RIN=0938-AT85 .............................................................27

# <u>JURISDICTIONAL STATEMENT</u>

State Farm agrees with Appellant's statement of jurisdiction.

## ISSUES PRESENTED FOR REVIEW[1]

1.    Did the district court correctly dismiss Appellant's MSP Act claims when the exhibits to the complaint refute Appellant's contention that the insurers concealed a primary-payer responsibility because those exhibits conclusively show that the insurers did not fail to properly report a "total payment obligation to claimant" or "ongoing responsibility for medicals"?

2.    Did the district court correctly dismiss Appellant's False Claims Act claims when the exhibits to the complaint refute the linchpin allegations of every claim that the insurers concealed a primary-payer responsibility?

## STATEMENT OF THE CASE

### A.    Nature of the Case

Appellant, Penelope Stillwell (hereinafter referred to as "Plaintiff"), appeals the dismissal of a lawsuit filed against two insurance companies under the False Claims Act ("FCA") and Medicare Secondary Payer Act ("MSP Act").

---

[1] The two issues Plaintiff presents on appeal differ from the three issues actually argued in her brief. In fact, the only issues necessary for adjudication are whether the district court correctly dismissed the Medicare Secondary Payer Act and False Claims Act claims. The third issue briefed by Plaintiff, whether the district court "was wrong to dismiss based on inaction by the Secretary or the judicial policy favoring settlement," is subsumed within these two issues and addressed as part of those issues in this brief.

This action arises from the settlement of a lawsuit in Indiana. After falling outside his home in Indiana, William Stillwell, a Medicare beneficiary, and his wife (Plaintiff here) sued the homeowners' association, the property management company, and the landscaping company in Indiana state court for negligence. They ultimately settled their lawsuit with the defendants and their insurers for a lump sum of $200,000. Although the Stillwells refused to execute the settlement documents, which included a release but not a "set aside" to cover Mr. Stillwell's future medical expenses, the Indiana courts held the settlement enforceable against the Stillwells.

Thereafter, Plaintiff, as executor of her late husband's estate, filed this lawsuit against the insurers with whom the Stillwells had settled in Indiana. Plaintiff alleged the $200,000 settlement improperly shifted the burden of Mr. Stillwell's future medical expenses from the insurers to Medicare. Plaintiff claimed that, by failing either to settle for an amount exceeding the medical expenses claimed in the litigation or to provide in the settlement some other mechanism to pay future medical expenses, the insurers failed to discharge their primary-payer responsibility under the MSP Act and remained primary payers for post-settlement medical expenses. Plaintiff further argued that, by failing to report this purported primary-payer responsibility to the Centers for Medicare and Medicaid Services (CMS), the insurers caused Mr. Stillwell's medical providers to falsely bill Medicare, instead of

the insurers, as the primary payer for Mr. Stillwell's post-settlement medical expenses.

After multiple attempts by Plaintiff to plead claims under the MSP Act and the FCA, the district court dismissed Plaintiff's third amended complaint ("complaint") with prejudice.

### B.    Statement of Facts

William Stillwell slipped at his Indiana home and injured his leg, which was later amputated. R.105. The Stillwells sued the homeowners' association, the property management company, and the landscaping company in Indiana state court for damages, including past and future medical expenses. R.105.

After the injury, Mr. Stillwell became a Medicare beneficiary. R.105. In November 2013, before the state-court was settled, CMS sent Mr. Stillwell a letter stating the lawsuit prompted the creation of a Medicare secondary-payer recovery account. R.105-3. Under the MSP Act, CMS will not pay a beneficiary's medical expenses if a primary payer, such as a private insurer or a tortfeasor (or, in this case, a tortfeasor's insurer) "has paid or can reasonably be expected to pay" the expenses. 42 U.S.C. § 1395y(b)(2)(A)(ii). After identifying a potential primary payer, CMS might "conditionally pay" the beneficiary's expenses, but the primary payer must reimburse CMS after its responsibility is confirmed. 42 U.S.C. § 1395y(b)(2)(B). The November 2013 letter advised Mr. Stillwell that CMS had identified potential

primary payers for his medical expenses and CMS would require reimbursement if Mr. Stillwell obtained a judgment or settlement. R.105-3 at 3.

In August 2016, the parties settled the Indiana action and executed a "settlement recap." R.105-8. In the recap, the state-court defendants agreed to pay $200,000. The settlement provided that Motorists would pay $100,000 to the Stillwells on behalf of its insured defendant, and State Farm would pay $100,000: $19,672.99 to Medicare, $4,000 to Anthem Blue Cross and Blue Shield, and $76,327.01 to the Stillwells on behalf of its insured defendant. *Id.* Once attorney's fees and outstanding medical expense liens (including Medicare conditional payments) were subtracted, and $5,000 in "unused Medpay funds" was added in, the Stillwells were expected to receive a net recovery of $90,186.62. *Id.*

In return, the Stillwells acknowledged there were no additional "known lien holders." *Id.* They "agree[d] to pay any and all outstanding expenses, including… repayment to any medical provider and/or health insurance company, which are not being withheld above." *Id.* The Stillwells acknowledged the settlement was "a voluntary act" entered into after discussing with counsel; was agreed to "after serious reflection;" and was "in our own best interest." *Id.*

In addition, although State Farm's Indiana counsel suggested establishing a Medicare set-aside to cover future medical bills, the Stillwells rejected that approach after their counsel explained the process and cost. R.105-14 at 2; 105-15 at 2. Thus,

the final settlement does not contain a Medicare set-aside. R.105-8, 11. Instead, the Stillwells agreed that "if an additional lien is later asserted, [the Stillwells' lawyers] will attempt to negotiate that lien at no charge to us, but we are personally responsible for the repayment of said lien," and that "we agree to pay any and all outstanding expenses, including … medical expenses … including repayment to any medical provider and/or health insurance company, which are not being withheld above." R.105-8 at 2.

In the meantime, on October 5, 2016, CMS sent Mr. Stillwell a letter requesting reimbursement for $10,575.35 in conditional payments, R.105-9 at 2. Two months later, on December 5, 2016, CMS sent him a follow up letter stating it "learned you have received a settlement…" and "determined that you are required to repay the Medicare program $19,672.99 for the cost of medical care it paid relating to your case." R.105-10 at 2-3.

In January 2017, Motorists Mutual tendered to the Stillwells a settlement check and release, but the Stillwells refused them. R.105-14. Instead, the Stillwells requested from Motorists Mutual and State Farm a revised joint release that omitted a stipulation that Mr. Stillwell had completed the required medical care. R.105-14. The insurers acquiesced, but the Stillwells still refused to execute the revised release. R.105-16.

After the Stillwells' lawyer deposited the settlement check into his trust account, Motorists moved to enforce the settlement. R.105-16. The Indiana court granted the motion. R.105-17. The enforcement order incorporated the revised joint release presented to the Stillwells, discharged the insurers from any claims "which have resulted or may in the future develop from [Mr. Stillwell's accident]," and held the Stillwells "jointly and severally liable" to pay any present or future medical expense. R.105-17 at 3-4. The court declared the Stillwells acknowledged they had "considered the interests of Medicare" and an "obligation to reimburse Medicare" for medical services rendered in the matter, and they had "complied with all known obligations pursuant to the Medicare…rules." R.105-17 ¶ 4.4.

The Indiana court's ruling was affirmed on appeal. *See Stillwell v. Eagle-Kirkpatrick Mgmt. Co.*, 107 N.E. 3d 1113 (Ind. Ct. App.) (unpublished), *transfer denied*, 113 N.E. 3d 629 (Ind. 2018), *cert. denied*, 139 S. Ct. 2756 (2019). The Stillwells sued their Indiana lawyers for legal malpractice, but the Indiana court dismissed the claim. *See Stillwell v. Cohen & Malad LLP*, 149 N.E.3d 676 (Ind. Ct. App. (unpublished), *mem. decision on rehearing*, 155 N.E.3d 670 (Ind. Ct. App. 2020) (unpublished).

## C.    Course of the Proceedings and Ruling Below

Two weeks after the Indiana court entered the enforcement order, the Stillwells filed this *qui tam* action in the Middle District of Florida against State

Farm and Motorists Mutual. The Stillwells claimed that by failing to discharge their duty as purported primary payers for Mr. Stillwell's medical expenses, the insurers caused Mr. Stillwell's healthcare providers to submit claims to Medicare instead of the insurers and to submit claims that falsely listed Medicare as the primary payer. R.1.

The United States declined to intervene. R. 7. The complaint was unsealed, and the defendants were served. R.8; 12; 13. After the defendants moved to dismiss, the Stillwells filed the first amended complaint. R.23; 26; 55. The defendants then moved to dismiss that pleading, which was granted without prejudice. R.56; 71; 80.

After Mr. Stillwell's death, Plaintiff filed a second amended complaint, in which she sued on behalf of herself, her late husband's estate, and the United States. R.101. After yet further leave to amend, Plaintiff filed the third amended (and operative) complaint, which was largely unchanged from the first amended complaint except it alleged that the defendants were liable for $152,361.23 in post-settlement medical bills submitted to Medicare. R.105 ¶¶ 138-141. Plaintiff alleged the settlement should have "carved out" a "sum certain"—"for example, $25,000"—to cover these expenses, rather than provide that "Mr. Stillwell would be responsible for future medical bills" out of the $176,327.01 settlement sum directly allocated to him. R.105 ¶¶ 5, 7, 110 117. Each insurer again moved to dismiss. R.109; 110. The

district court dismissed the third amended complaint, this time with prejudice. R.124.

## STANDARD OF REVIEW

The standard of review is *de novo*. *Zodiac Grp. v. Axis Surplus Ins. Co.*, 542 F. App'x 844, 848 (11th Cir. 2013).

## SUMMARY OF ARGUMENT

This case is really about buyer's remorse in entering into a settlement agreement, not underpayments to Medicare or false claims to the government. Plaintiff wishes State Farm and Motorists Mutual paid her more than they did in the settlement she agreed to and the Indiana courts enforced. However, because she cannot bring a claim saying that directly, she concocted an argument that a liability insurer with primary payer responsibility under the MSP Act is obligated to cover an injured beneficiary's medical care *beyond* those amounts established in the parties' settlement and *irrespective* of the terms of the settlement. This argument fails under the plain language of the MSP Act and CMS regulations implementing it, and since this argument is the linchpin of all of Plaintiff's claims, its failure required the dismissal of the complaint in its entirety.

The text of the MSP Act provides, in the context of third-party tort claims, that the primary payer's obligation is determined and bounded by the terms of the settlement. Unless the insurer agrees in the settlement to cover the Medicare

beneficiary's medical expenses, the insurer is not a primary payer for those expenses under the Act. Moreover, the insurer becomes a primary payer only to the extent that the settlement fixes the amount of compensation to be paid.

All settlements allocate future damages in some fashion or another. Yet nothing in the MSP statute or regulations requires a liability insurer to structure the settlement to separately cover future medical expenses that otherwise would be paid by the beneficiary—let alone to cover such expenses beyond the terms of the settlement. As the district court correctly ruled, although CMS, the agency that administers Medicare, actively regulates workers' compensation settlements that include a Medicare beneficiary, it has not taken that approach with respect to private liability settlements that involve a Medicare beneficiary.

Plaintiff concedes as much, IB at 22, but nonetheless proposes importing the workers' compensation standard into a private liability settlement. The district court correctly rejected this invitation to the judiciary to impose that inapposite standard onto CMS's ample regulatory regime.

Because Plaintiff's linchpin premise fails, all of her claims fail, too. This Court should affirm.

## **ARGUMENT**

I.    **THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S MSP CLAIMS BECAUSE THE COMPLAINT FAILED TO DEMONSTRATE THAT THE INSURERS CONCEALED A PRIMARY-PAYER RESPONSIBILITY.**

Paragraph 3(A) of the MSP Act states: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A).[2] Thus, to establish an MSP Act claim, a plaintiff must allege: (1) defendant's status as primary plan; (2) defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016), *reh'g denied by* 880 F.3d 1284 (11th Cir. 2018).

Plaintiff argues State Farm and Motorists were primary plans because the settlement agreement and payments "demonstrate primary plan responsibilities." IB at 24. She asserts the insurers ignored their primary payer obligations because, after the settlement, her husband's health care providers submitted claims to Medicare for

---

[2] Plaintiff concedes the MSP Act private cause of action is not a *qui tam* statute. IB at 23 (citing *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016)). Thus, the MSP Act claims are brought on her own behalf, not on behalf of the Government.

treatment he received for his injuries, and Medicare "reimbursed the health care providers in part or in full," but the insurers did not reimburse Medicare. IB at 25.

The complaint's exhibits undisputedly establish the Stillwells declined to establish a Medicare set-aside fund to cover future medical expenses after the insurers offered it as part of the settlement.[3] Instead, the Stillwells agreed to be responsible for all future medical bills. Nonetheless, Plaintiff argues under the MSP Act, the insurers remained responsible for Mr. Stillwell's post-settlement injury-related care after the settlement was accepted because "a private settlement agreement without the government's participation" cannot "waive CMS's right to repayment under MSP [Act]." IB at 26. Plaintiff is incorrect.

## A. The District Court Correctly Ruled State Farm Was Not a Primary Payer for Future Medical Expenses.

The district court observed that the linchpin allegations in Plaintiff's complaint were: "State Farm and Motorists Mutual failed to report the MOU [memorandum of understanding] in accordance with TPOC obligations, and failed to report their ORM obligation…" *See* R.124 at 7-8 & n.2.. The court stated under federal law , a primary payer must report to CMS after assuming a "total payment obligation" ("TPOC") or an "ongoing responsibility for medicals" ("ORM") owed

---

[3] The district court properly considered the complaint's exhibits in ruling on defendants' Rule 12(b)(6) motion. Fed. R. Civ. P. 10(c); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

to a Medicare beneficiary, but neither obligation supported Plaintiff's claims. R.124 at 7-8 (citing *Dept. Health & Human Servs., MMSEA Section 111 NGHP User Guide, Chapter III: Policy Guidance §§ 6.3-6.4*). The court was correct.

### 1. The District Court Correctly Concluded State Farm Did Not Conceal a TPOC From CMS.

A TPOC is a one-time payment typically resulting from a settlement or judgment. *Section 111 NGHP User Guide, Chapter II: Introduction and Overview* § 2. It is the "dollar amount of the total payment obligation to, or on behalf of the insured party in connection with the settlement…" *Id., Chapter III: Policies* § 6.4 at 6-14. Under the MSP Act, a primary payer must report a TPOC to CMS when the primary payer becomes responsible to pay the TPOC. *Id., Chapter III: Policy Guidance* § 6.4. In turn, a primary payer becomes responsible to pay a TPOC to CMS "when the parties execute a settlement release or, if necessary, when an order enforces a settlement." *Id.* A primary payer must report (1) the identity of the beneficiary, the payer, and the beneficiary's attorney; (2) the date, nature, and cause of the injury; (3) the settlement date and amount; and (4) the responsibility, if any, of the payer for the beneficiary's future medical expenses. R.105-1.

The district court correctly concluded the TPOC reporting requirement was satisfied. The first letter CMS sent Mr. Stillwell listed the date of incident and demonstrated CMS learned of Mr. Stillwell's injury and claim nearly three years before the parties signed their settlement recap. R.124 at 8. Moreover, CMS's second

letter demonstrates CMS knew the amount of both the settlement and the Stillwells'
attorney's fee by December 2016, six months before the Indiana court enforced the
settlement. *Id.* at 8-9. Thus, the district court properly held Plaintiff pled no facts
supporting the allegation that the insurers' hid their TPOC obligation.

Plaintiff does not dispute these points. She argues only that (a) the CMS letters
concerned "the Stillwells' obligations to Medicare, not those of the insurers," and
(b) "neither the identities nor types of insurance were identified in the notices." IB
at 31. Plaintiff's first argument is irrelevant; she does not and cannot suggest the
insurers failed to pay, as part of the settlement, the already-incurred medical
expenses demanded by CMS. There could be no hiding the insurers' TPOC
obligation when the insurers paid and thereby satisfied it.

Plaintiff's second argument is refuted by the CMS letters themselves. The
2013 letter states the Stillwells filed a "liability insurance…, no-fault insurance, or
workers' compensation claim," (R.105-3 at 3), and the October 5, 2016 letter
references "proceeds you may receive pursuant to a settlement…." R.105-9 at 3. The
blank settlement detail form attached to the complaint obviously was filled out and
submitted to CMS, because the subsequent December 13, 2016 letter states that CMS
"learned you have received a settlement…related to your case for the Date of
Incident listed above" and determined "you are required to repay the Medicare
program $19,672.99." R.105-10 at 2. This amount was reduced based on attorney's

fees established in the settlement. R.124 at 5 n.1. Thus, CMS clearly was on notice of the insurers' TPOC obligation, and the district court correctly ruled "[t]he two letters," presented by Plaintiff as exhibits to her complaint, "conclusively contradict the unsupported assertion that the insurers failed to report a TPOC." R.124 at 10. *See Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) ("Where there is a conflict between allegations in a pleading and exhibits thereto, . . . the exhibits control.").

### 2. The District Court Correctly Concluded State Farm Did Not Conceal an ORM From CMS.

The district court correctly ruled the insurers had no ORM to report. An ORM is an obligation to pay, on an ongoing basis, a party's future medical expenses. *Section 111 NGHP User Guide, Chapter IV: Technical Information* § 6.7. It typically "only applies to no-fault and workers' compensation claims." *Id., Chapter II: Introduction and Overview* § 2). This case involves neither of these—only liability insurance claims.[4]

---

[4] Plaintiff notes the NGHP User Guide states ORM "may occur in some circumstances with liability insurance." IB at 29 n.15 (citing *NGHP User Guide, Chapter III: Policies* § 6.3 at 6-10). Such circumstances may involve settlements where future medical expense payments are structured to be made over time. *See Early v. Carnival Corp.*, 2013 WL 462580, at *3 (S.D. Fla. Feb. 7, 2013) (describing such a factual scenario). The settlement agreement in this case was not structured that way.

The district court observed that, in this liability insurance context, Plaintiff "cited no statute, regulation, or other authority to support the premise that a primary payer…must assume and report an ORM for the beneficiary's post-settlement medical expenses." R.124 at 10. Indeed, Plaintiff conceded the MSP Act "did not require the creation of a MSA [Medicare set-aside] for future medical bills." R.120 at 26. She nonetheless argued that in structuring the settlement, if no set-aside were created, the insurers were required to consider Medicare's interests in some other way: by segregating part of the settlement for future medical expenses, paying part of the settlement into the Medicare Trust Fund, or proposing to CMS an alternative plan. Plaintiff even alleged in the complaint that the settlement should have "carved out" $25,000 to "cover" future medical bills. R.105 ¶5.

Each of Plaintiff's claims is a variant on the theme that the settlement agreement was required to designate a particular portion of the amount for future medical expenses arising out of the accident. But the district court correctly found Plaintiff "fails to identify any source of law requiring that a settlement with a Medicare beneficiary include any one of these mechanisms." R.124 at 11.

As the court noted, Plaintiff conceded that "no law or regulation requires a liability insurer settling a personal injury claim to create a 'Medicare Set-Aside' to cover future medical expenses." R.124 at 2. Although CMS prescribes in 42 C.F.R. § 411.46(b)(2) a standard for voiding a workers' compensation settlement that fails

to cover expected medical expenses, "no similar standard exists to escape a settlement in a personal injury action." R.124 at 12. Indeed, "no law (statutory, regulatory, or otherwise) imposes a substantive duty to settle a personal injury claim for an amount that covers future medical expenses." *Id.* (citing *Sipler v. Trans Am Trucking*, 881 F. Supp. 2d 635, 638 (D.N.J. 2012)).

Indeed, in dismissing the MSP Act claim, the district court merely joined a long line of courts recognizing that "no federal law or CMS regulation [currently] requires the creation of a [Medicare Set-Aside] in personal injury settlements to cover potential future medical expenses." *Aranki v. Burwell*, 151 F. Supp. 3d 1038, 1040 (D. Ariz. 2015); *see also Sipler*, 881 F. Supp. 2d at 638; *Abate v. Wal-Mart Stores East, L.P.*, 503 F. Supp. 3d 257, 275 (W.D. Pa. 2020); *Silva through Abeyta v. Burwell*, 2017 WL 5891753, at *5 (D.N.M. Nov. 28, 2017); *Tye v. Upper Valley Med. Ctr.*, 2014 WL 2957037, at *13 (Ohio Ct. App. Jun. 27, 2014); *In re Petition for Approval of Settlements*, 2014 WL 12776284, at *2 (W.D. Wash. Feb. 7, 2014); *Cole-Hoover v. N.Y. Dep't of Corr. Servs.*, 2013 WL 5652751, at *3 (W.D.N.Y. Oct. 16, 2013); *Bruton v. Carnival Corp.*, 2012 WL 1627729, at *2 n.1 (S.D. Fla. May 2, 2012); *Finke v. Hunter's View, Ltd.*, 2009 WL 6326944, at *2 (D. Minn. Aug. 25, 2009).

Plaintiff cites no case or regulation to the contrary. Thus, the district court correctly rejected Plaintiff's invitation to import the standard applied to a worker's

compensation settlement into a private liability settlement by judicial fiat. As the court recognized, "CMS can protect Medicare's interest by promulgating…either a rule regulating a liability settlement or a mechanism for approving a proposed liability settlement[,]" but CMS has not done so. R.124 at 2. And because CMS had not done so, it would have been improper for the district court, and would be improper for this Court, to create such a rule as it is hornbook law that establishment of a rule or approval mechanism is exclusively either an executive or legislative prerogative. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We may not supply a reasoned basis for the agency's action that the agency itself has not given") (internal citation omitted); *Miller v. French*, 530 U.S. 327, 341 (2000) ("[T]he concept of separation of powers…prohibits one branch from encroaching on the central prerogatives of another…").

In sum, the district court properly concluded that under the current CMS regime, the Stillwells became primarily responsible for future medical expenses after receiving the settlement, and because "the Stillwells, not the insurers, retain the primary responsibility to pay [Mr. Stillwell's] future medical expenses until the Stillwells exhaust the settlement proceeds, the insurers had no ORM to report." R.124 at 12-13. Thus, the insurers had no TPOC nor ORM reporting obligation, and

the insurers did not, as a matter of law, fail to properly report to CMS. This Court should affirm.

### B.    Plaintiff's Arguments Are Unavailing.

The district court found that "by accepting the lump sum settlement the Stillwells released the insurers from the obligation to pay under the insurance policies, and consequently, the Stillwells—not the insurers—became the primary payers for post-settlement medical expenses." (R.124 at 3). Plaintiff argues that the text of the MSP Act, CMS regulations implementing it, and CMS policy pronouncements or guidance mandate the conclusion that the insurers remained primary payers regardless of the terms of the settlement. Plaintiff is mistaken.

### 1.    Nothing in the MSP Act Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.

Plaintiff argues the text of the MSP Act mandates an insurer cannot extinguish primary payer duties through settlement with the beneficiary. She bases this assertion on the fact that § 1395y(b)(2)(B)(ii) employs the disjunctive "or" between "has" or "had." The plain language of the statute belies this argument.

The first sentence of § 1395y(b)(2)(B)(ii) reads: "… a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.*" 42 U.S.C. §

1395y(b)(2)(B)(ii). The disjunctive "or" suggests inclusion rather than exclusion. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise"); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 116 (West 2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives").

Thus, pursuant to the plain language of this first sentence, "if it is demonstrated that" a primary plan "*had*" a responsibility to make payment, the plan "shall reimburse" CMS for "any payment made by the Secretary." The term "*had*" is past tense. Moreover, the term "responsibility" is not "undefined," but is a "term of art" defined by the next sentence. *Hadden v. U.S.*, 661 F.3d 298, 302 (6th Cir. 2011).

The next sentence of the statute reads: "A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." § 1395y(b)(2)(B)(ii).

A liability settlement creates a "payment conditioned upon the recipient's compromise … or release." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309-10

(11th Cir. 2006) ("After the Medicare beneficiary obtains a favorable…settlement of state tort claims, Medicare is entitled to reimbursement to the extent of its conditional payments").

In other words, for conditional payments CMS already made, a liability settlement must account for reimbursement of such payments under its terms. As already discussed, here, the complaint's exhibits show the settlement did, in fact, reimburse CMS for conditional payments made to cover Mr. Stillwell's medical treatment. Thus, to the extent that the insurers "*had*" a primary payer responsibility to reimburse CMS for conditional payments already made, they fulfilled that responsibility and fully reimbursed CMS.

Also pursuant to the plain language of the first sentence of § 1395y(b)(2)(B)(ii), "if it is demonstrated that" a primary plan "*has*" a responsibility to make payment, the plan "shall reimburse" CMS for "any payment made by the Secretary." The word "has" is present tense. Accordingly, the question on this prong is whether, at the time of settlement, the insurers retained an existing responsibility to pay CMS for future medical expenses incurred by Mr. Stillwell.

As discussed, the last sentence of § 1395y(b)(2)(B)(ii) provides that "[a] primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release…" In other words, the terms of the settlement themselves *created* and *defined* the insurers'

primary payer responsibility. *See Humana*, 832 F.3d at 1237 ("the defined term 'primary plan' presupposes an existing obligation (whether by statute or contract) to pay for covered items or services"); *Glover*, 459 F.3d at 1309-10 (stating MSP Act "does not create a private cause of action against alleged—as opposed to proved—tortfeasors whose responsibility for payment of medical costs has not been previously established" and primary plan obligation commences when another source "pays a judgment or settlement to a Medicare beneficiary"); *see also Hadden*, 661 F.3d at 302 ("the scope of the plan's 'responsibility' for the beneficiary's medical expenses…is ultimately defined by the scope *of his own claims against the third party*") (italics in original); *Taransky v. Sec'y of U.S. Dep't of Health & Human Serv.*, 760 F.3d 307, 315 (3d Cir. 2014) (same).

In short, the MSP Act takes primary coverage as it comes; it does not create that coverage or determine the extent of it. Accordingly, here, the settlement limited and ended the insurers' primary payer responsibility. The district court correctly concluded that, because the settlement allocated post-settlement medical expenses to the Stillwells for payment, the insurers did not violate their primary payer obligation or their reporting duty as TPOCs or ORMs.

To be clear, allocating responsibility to a plaintiff who receives settlement funds to pay *existing* Medicare expenses is a perfectly acceptable way of considering the interests of Medicare. *See Taransky*, 760 F. 3d at 315 (dismissing beneficiary's

claim that she was not required to pay proceeds to Medicare when settlement allocated expenses for medical treatment to plaintiff, stating "she cannot now hide behind the lump sum settlement to deprive the Government of the reimbursement it is owed"); *Finke v. Hunter's View, Ltd.*, 2009 WL 6326944, at *4 (D. Minn. Aug. 25, 2009) (approving settlement allocating to injured plaintiff the reimbursement of conditional payments made by Medicare); *Przedwojewski v. NHS Mgmt.,* LLC, 2012 WL 12895655, at *5 (N.D. Ala. Feb. 17, 2012) (paying plaintiff amounts that Medicare conditionally paid in judgment under expectation plaintiff will in turn reimburse Medicare is "exactly the way the MSP and its applicable regulations are designed to work"). So is including a provision in a settlement agreement that plaintiff is responsible for *future* medical expenses. *Abate*, 503 F. Supp. 3d at 273-74 (enforcing settlement containing such terms as protecting Medicare's interest). The settlement here did exactly that.

Although Plaintiff insists a lump sum liability settlement is prohibited by the MSP Act, she cites nothing in the statute prohibiting such a structure. Congress knows how to specify the way settlement payments should be allocated if it desires to do so. It so specified in the Medicaid reimbursement context. *See Gallardo v. Marstiller*, 142 S. Ct. 1751, 1756 (2022) (Florida Medicaid implementing statute authorizes Medicaid to receive 37.5% of a beneficiary's total settlement recovery, which presumptively represents the portion of the tort recovery for "past and future

medical expenses"). Congress chose not to specify how liability settlements are to be allocated in the MSP Act, so this Court should respect that decision.

As such, under established law, the Indiana settlement not only created the insurers' primary plan responsibility, it also determined the scope and extent of the insurer's potential reimbursement obligation, and under the facts of this case, no such obligation existed.  As such, this Court should affirm. *See* § 1395y(b)(2)(B)(ii) ("[a] primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release…"); *Humana*, 832 F.3d at 1237 ("defined term 'primary plan' presupposes an existing obligation (whether by statute or contract) to pay for covered items or services").

> **2.** **Nothing in CMS Regulations Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.**

Relying on 42 C.F.R. § 411.46, which applies only to "workers' compensation cases," Plaintiff asserts CMS regulations implementing § 1375y(b)(2) require insurers to pay post-settlement medical expenses not allocated to them in a settlement. Plaintiff is wrong.  There are good reasons that a worker's compensation settlement and a personal injury settlement are treated differently in this context. As one court observed:

> In contrast to the worker's compensation scheme that generally determines recovery on the basis of a rigid formula, often with a statutory maximum, tort cases involve noneconomic damages

> not available in workers' compensation cases, and a victim's damages are not determined by an established formula. Thus, to require personal injury settlements to specifically apportion future medical expenses would prove burdensome to the settlement process, and in turn, discourage personal injury settlements.

*Sipler*, 881 F. Supp. 2d at 638 (cleaned up); *see also Aranki*, 151 F. Supp. 3d at 1040 (noting 42 C.F.R. § 411 applies "in workers' compensation cases").

Plaintiff also cites 42 C.F.R. § 411.22 for the proposition that "a primary payer may not extinguish its obligations under the MSP provisions by paying the wrong party—for example, by paying the Medicare beneficiary or the provider when it should have reimbursed the Medicare program." IB at 27. She notes CMS explained it implemented § 411.22 to "clarify that a primary payer, and an entity that receives payment from a primary payer, become obligated to reimburse CMS if and when it is demonstrated that the primary payer has or had primary payment responsibility." *Id.* (quoting 73 Fed. Reg. 9679, 9680). But this regulation speaks only to possible sources of reimbursement; it says nothing about *when* an insurer becomes a primary payer and *to what extent*. If anything, it supports the district court's conclusion that when, as here, the settlement "remains silent on future medical expenses, the entire settlement is available to satisfy Medicare's interests." R. 124 at 11.

Plaintiff cites 42 C.F.R. § 411.39(d) for the proposition that Medicare "cannot collect reimbursement for future claims yet to be made." IB at 31.[5] Her point is obviously true, but irrelevant. Nothing in this regulation requires CMS to pursue primary payers for future medical bills when the parties' settlement allocated those expenses to the Medicare beneficiary.

Plaintiff finally notes in passing a 2012 advanced notice of proposed rulemaking in which CMS considered whether to implement a similar MSA review process for personal injury settlements as it did for workers' compensation. IB at 38 (citing 77 Fed. Reg. 35917-02 (June 15, 2012)). But as another court correctly observed in 2015, "this report was merely a solicitation of opinion, and as of today, no such process exists." *Aranki*, 151 F. Supp. 3d at 1040 n.1. The same is true now. As such, the Court should reject Plaintiff's attempt to apply the rules governing workers' compensation settlements to liability settlements because CMS has declined to do so.

Moreover, Plaintiff's proposed standard would contravene judicial policy encouraging settlement. Although sometimes the law imposes some restriction on

---

[5] 42 C.F.R. § 411.39(d) states "[f]inal conditional payment amounts obtained via the Web portal represent Medicare covered and otherwise reimbursable items and services that are related to the beneficiary's settlement, judgment, award, or other payment furnished before the time and date stamped on the final conditional payment summary form."

settlement (e.g., settlement of FLSA claims), here, neither Congress nor CMS has imposed such a restriction, and as such, "the policy favoring settlement of personal injury claims militates decisively against either creating a new standard to review a final settlement or imposing a new duty on a settling party." R.124  at 12 (citing *Sipler*, 881 F. Supp. 2d at 638-39); *see also McDermott, Inc. v. AmClyde*, 511 U.S. 202, 2015 (1994)) (noting that "public policy wisely encourages settlements").

Plaintiff points to no other rule or regulation supporting her argument, and none exists. To the contrary, a March 2021 notice of proposed rulemaking confirms the approach used to settle the Stillwells' Indiana lawsuit in 2016—by allocating future medical expenses to the Medicare beneficiary—*is and was an acceptable way to satisfy Medicare*. The notice states a proposed rule "would clarify" MSP obligations "related to liability insurance" by stating "that an *individual or Medicare beneficiary* must satisfy Medicare's interest with respect to future medical items and services related to such settlements…"[6] Although the Indiana lawsuit settlement occurred several years before this notice (and to State Farm's knowledge, no rule

---

[6] Office of Information and Regulatory Affairs, Office of Management and Budget, Miscellaneous Medicare Secondary Payer Clarification and Updates (CMS-6047) (March 2021), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202010&RIN=0938-AT85.  The "clarify[ing]" language quoted in the text was deleted from a March 1, 2022 version of the notice. On March 1, 2022, OIRA announced that a proposed rule was under regulatory review. https://www.reginfo.gov/public/do/eoDetails?rrid=229414. The contents of this proposed rule have not yet been made public.

associated with it has yet been implemented), the notice suggests allocating future medical expenses to "an individual or Medicare beneficiary" is sufficient to "satisfy Medicare's interest." If that were not so, the proposed rule would not "clarify" pre-existing MSP obligations, but instead would have proposed changing them.

### 3. Nothing in CMS Guidance Requires Insurers To Pay Post-Settlement Medical Expenses Not Allocated In a Settlement.

Plaintiff acknowledges "CMS has not provided specific guidance on liability Medicare set-asides," but nonetheless contends that CMS's NGHP [Non-Group Health Plan] User Guide offers "[o]nly three possible reasons" to report the termination of ORM, and settlement with the beneficiary "is not among the reasons." IB at 38, 30 (citing *NGHP User Guide, Chapter III, Policy Guidance*, § 6.3.2, at 6-12).

Plaintiff is incorrect. An ORM termination date may be submitted by a primary plan "[w]here the insurer's responsibility for ORM has been terminated under applicable state law associated with the insurance contract." *NGHP User Guide, Chapter III, Policy Guidance* § 6.3.2 at 6-12. A state law settlement such as that entered into by the Stillwells creates a termination of ORM responsibility "under applicable state law associated with the insurance contract."

In any event, "it is well-settled that 'interpretations contained in policy statements, agency manuals, and enforcement guidelines…lack the force of law." *Sipler*, 881 F. Supp. 2d at 638 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587

-28-

(2000)). At bottom, nothing in the MSP Act, its supporting regulations, or CMS guidance prohibits lump sum settlements in the liability settlement context. This Court should affirm.

### 4.    A Purported Failure to Report Does Not Create An MSP Act Claim.

Plaintiff argues that a failure to report a primary payer obligation gives rise to an MSP Act claim. As discussed above, the district court correctly ruled the reporting requirement was properly followed here. But even under the assumption it was not, such a failure still would not give rise to a claim.

Section 1395y(b)((8)(E) provides an applicable plan that fails to comply with reporting requirements "may be subject to a civil money penalty of up to $1,000 for each day of noncompliance with respect to each claimant." This penalty "shall be in addition to any other penalties prescribed by law and in addition to any Medicare secondary payer claim under this subchapter with respect to an individual." *Id.*

Failure to report, however, does not itself give rise to an MSP Act private cause of action. The payment obligation and reporting requirement are separate. Insurers are required to report to CMS "regardless of whether there is a determination or admission of liability." 42 U.S.C. § 1395y(b)(8). Moreover, CMS's operating guidance makes clear that reporting by itself does not constitute an admission by the reporting entity that it is a primary plan with a payment obligation. *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at

-29-

*12 n.25 (S.D.N.Y. Mar. 26, 2021) (citing https:www.cms.gov/Medicare/ Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/Downloads/New-Downloads/NGHPUserGuide-Version-56-Chapter-III-Policy-Guidance.pdf).

In contrast, the MSP Act private cause of action says: "There is established a primary cause of action…in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(2)(B)(3)(A). Under the plain language of this provision, the cause of action is for failure to "provide for primary payment," as this Court has recognized in multiple cases. *See Humana*, 832 F.3d at 1238 (this is a "broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its primary payment or reimbursement obligations"); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1320 (11th Cir. 2019) (The MSP Act's private cause of action is only available "in the case of *a primary plan* which fails to provide for primary payment (or appropriate reimbursement)") (italics in original). As demonstrated above, Plaintiff has not shown any failure to pay that gives rise to an MSP Act claim, irrespective of any ostensible failure to report.

### 5.    Plaintiff's Additional Arguments Are Unavailing.

Plaintiff makes several other unavailing arguments.

First, Plaintiff argues Mr. Stillwell "cannot be a 'primary plan' as defined in § 1395y(b)(2)(A)(ii)." IB at 26. Plaintiff concedes, however, that even where the Government asserts its right to reimbursement of conditional payments already made, it "can seek reimbursement *from the beneficiary who has been compensated*." IB at 27 (citing *Humana*, 880 F.3d at 1297 (Tjoflat, J., dissenting)).

Further, 42 C.F.R. § 411.24(g) states "CMS has a right of action to recover its payments from any entity, including a beneficiary…that has received a primary payment." *See also DuHammell v. Renal Care Grp. E., Inc.*,66 A.3d 736, 738 (N.J. Super. Ct. Law Div. 2013) ("Beneficiaries, providers, physicians, attorneys, or State agencies, or private insurers that have received a primary payment may also be exposed to liability"); *Przedwojewski*, 2012 WL 12895655, at *6 (§ 411.24(g) authorizes Medicare to seek recovery from beneficiary who received payment from the primary plan).

Second, Plaintiff asserts Judge Tjoflat's dissent from denial of rehearing *en banc* in *Humana* is "dispositive" here. IB at 28. In *Humana*, a Medicare Advantage Organization (essentially, privatized Medicare) made conditional payments to a Medicare beneficiary who was injured in a condominium accident where the alleged tortfeasor was insured by Western Heritage. The issue in the lawsuit (unlike here) involved the reimbursement of those conditional payments already made. Western Heritage settled the tort case and placed $19,155.41 in trust for the medical bills. A

divided panel affirmed a judgment for the MAO, holding MAOs have a private right of action under the MSP Act, a conclusion that has no bearing on this case. 832 F.3d at 1232. In dissenting from denial of *en banc* review on *that issue*, Judge Tjoflat noted the MSP Act allows CMS to seek reimbursement from the primary plan or the beneficiary, assuming it has been "demonstrated that such primary plan has or *had* a responsibility to make payment." 880 F.3d 1284, 1287 (11th Cir. 2018) (quoting § 1395y(b)(2)(B)(ii); emphasis in original). Judge Tjoflat rightly emphasized the word "*had*" in the statute because, in *Humana*, the $19,155.41 for which the MAO sought payment involved a reimbursement of already paid conditional payments. *See Humana Med. Plan, Inc. v. Reale*, 180 So. 3d 195, 197 (Fla. 3d DCA 2015) (in predecessor lawsuit against the beneficiary, the state court explained the $19,155.41 was for conditional Medicare payments already made). As noted, Plaintiff does not argue here that the insurers failed to reimburse CMS from settlement proceeds for already-made conditional payments.

Similarly, Judge Tjoflat's statement in *Humana* that "a beneficiary's release of a liability insurer does not extinguish the liability insurer's obligation, as a primary payer, to reimburse the Government," 880 F.3d at 1287, does not address *when* the primary payer's obligation exists, continues, or terminates. As such, nothing in Judge Tjoflat's dissent supports reversal here.

Third, Plaintiff argues in passing that State Farm's and Motorists' no-fault policies provide an "independent basis for primary plan status." IB at 24. While it is true that a contractual obligation such as medical payments coverage (or MedPay) can create a primary payer responsibility, *see MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1360-61 (11th Cir. 2016), that obligation is limited by the amount of contractual coverage available. *See Ocean Harbor Cas. Ins. Co. v. MSPA Claims, 1*, 261 So. 3d 637, 644 (Fla. 3d DCA 2018). Once the no-fault coverage is exhausted, the insurer is no longer a primary payer under that coverage. Here, Exhibit G to the complaint shows the Stillwells received $5,000.00 from unused MedPay funds as part of or before the settlement. R. 105-7 at 2. Thus, the primary payer responsibility arising from the MedPay coverage was extinguished, and Plaintiff's argument does not support reversal.

Finally, Plaintiff asserts the district court's statement that she "requested imposition of a set-aside in liability cases underscores a misunderstanding of the case." IB at 39. To the contrary, the district court understood perfectly well. Plaintiff insists the only way for a liability insurer to lawfully comply with the MSP Act is to "directly pay providers for injury-related care."[7] IB at 39-40. As a practical matter,

---

[7] Her other proposed "options" are unrealistic: to be exposed to "a government or private action under MSP, and pay twice" or "pay neither the providers nor Medicare" but "be subject to a claim like Stillwell's under the False Claims Act, and pay three times." *Id.* at 40. If the law insisted that an insurer pay Medicare expenses "a second time," then "every tortfeasor who is at fault in causing injury to any

such an inflexible approach would hamper parties' ability to enter into settlements and thus contravene the public policy. And nothing in the MSP Act requires such a straightjacket. The Act only requires reimbursement of Medicare payments "if it is demonstrated that" a primary plan "*had*" or "*has*" a responsibility to make payment. With respect to post-settlement medical expenses, the parties' settlement agreement allocated those expenses to the Stillwells. Because nothing in the MSP Act requires insurers to pay post-settlement medical expenses, the district court correctly rejected this argument.

*    *    *

Lurking behind each of Plaintiff's claims is a dissatisfaction with the settlement terms she and her husband agreed to in the Indiana case under an apparent belief that the settlement  amount was insufficient to pay her late husband's post-settlement medical bills. However, the parties in the Indiana case—including the Stillwells—elected to structure their settlement in such a way that, after satisfying the then-existing liens, including reimbursing conditional payments made by CMS, the Stillwells would be responsible out of the settlement funds for the payment of

---

Medicare beneficiary would have no choice but to remit payment in full, not only to the beneficiary, but also to Medicare—even when the liability for such expenses is contested." *Przedwojewski*, 2012 WL 12895655, at *5. "To do otherwise would risk a likely MSP private cause of action for double the amount conditionally paid by Medicare." *Id.*

post-settlement medical expenses for Mr. Stillwell's treatment. Clearly, Plaintiff has buyer's remorse and is seeking to use this lawsuit as a vehicle for restructuring her deal. But Plaintiff's regret does not make her settlement any less enforceable,[8] and nothing in the MSP Act requires a different conclusion. Accordingly, Plaintiff should not be permitted to mis-employ the MSP Act in an effort to avoid the settlement into which she and her husband entered. This Court should affirm.

## II.    THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFF'S FALSE CLAIMS ACT CLAIMS.

The district court also correctly dismissed Plaintiff's FCA claims. Unlike the MSP Act, which merely creates a statutory reimbursement right, the FCA targets fraud. *See Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 394, 397 (2d Cir. 2001). The FCA imposes liability upon any person who, *inter alia*:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C)  conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
>
> …

---

[8] *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (federal court must "give the same preclusive effect to a state-court judgment as another court of that State would give") (internal citation omitted); *Harbuck v. Marsh Block & Co.*, 896 F.2d 1327, 1328 (11th Cir. 1990) (same).

-35-

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(A)-(C), (G).

Here, in Counts 1-2 of the operative complaint, Plaintiff alleges the insurers violated 31 U.S.C. § 3729(a)(1)(A) by causing Mr. Stillwell's healthcare providers to present false claims to CMS. In Counts 3-4, Plaintiff alleges the insurers violated 31 U.S.C. § 3729(a)(1)(B) by causing Mr. Stillwell's providers to submit false statements material to a false claim to CMS. In Counts 5-6, Plaintiff alleges violations of 31 U.S.C. § 3729(a)(1)(C) because the insurers purportedly conspired both to conceal purported primary-payer responsibility and to cause Mr. Stillwell's providers to submit to CMS false claims. Finally, Counts 7-8 alleged violations of 31 U.S.C. § 3729(a)(1)(G) because the insurers allegedly hid purported primary-payer responsibility to avoid an obligation to the government.

### A.  The District Court Correctly Ruled the Insurers Did Not Fail to Properly Report a TPOC Or ORM.

The district court ruled the FCA claims alleging concealment from CMS of a TPOC or an ORM owed to Mr. Stillwell failed to satisfy Rule 8 and as such, "necessarily fail to satisfy the more stringent requirement of Rule 9." R.124 at 9 n.3. More specifically, the insurers "neither (1) failed to properly report a TPOC nor (2) had any ORM to report." R.124 at 13. The court then concluded because this linchpin

factual premise for each of Plaintiff's FCA claims failed, "each claim in the third amended complaint collapses." R.124 at 13. These conclusions were correct.

### 1. The District Court Correctly Dismissed Counts 1-2: Knowing Presentment of a False Claim.

To survive the motions to dismiss Counts 1-2 for violation of 31 U.S.C. § 3729(a)(1)(A), Plaintiff had to allege the following elements: (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; (3) the defendant knew the claim was false or fraudulent; and (4) the falsity or fraud was material. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 191 (2016); *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017). Counts 1-2 fail to adequately allege these elements because each is premised upon the legal conclusion that the insurers failed to properly report a TPOC and ORM, which the district court rightly rejected.

### a. Counts 1-2 Failed the Presentment Requirement.

The district court correctly ruled "the complaint fails to show that the defendants knowingly caused healthcare providers to present false claims because the claims were true." R.124 at 13. The "presentment" requirement must be alleged with the particularity required by Rule 9(b), meaning particular facts about the "who," "what," "where," "when," and "how" of fraudulent submissions to the government. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015).

The complaint does not allege State Farm itself presented false claims to Medicare. Instead, it vaguely alleges the insurers "recklessly or knowingly caused false or fraudulent claims for payment to be submitted or presented to…the Medicare Program." R.105 ¶ 144. But no specific facts are alleged to support this conclusory allegation. Vague allegations about an improper practice or scheme, without more, are insufficient to state a claim under the FCA. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013-14 (11th Cir. 2005); *Klusmeier v. Bell Constructors, Inc.*, 469 F. App'x 718, 721 (11th Cir. 2012).

Nor do the complaint's exhibits "fill these gaps." The statements in Exhibits S and T are not bills; they explicitly state, "This is not a bill." R.105-19; 105-20. Instead, they and the statements summarized in Exhibits U and V are summaries of services provided to Mr. Stillwell and the amounts paid by Medicare and billed to Mr. Stillwell or his Medigap insurer for those services for dates 2016-2020.

And even if these exhibits are construed to be bills, significantly, the complaint alleges no facts showing how State Farm somehow "caused" providers to present them to Medicare for services. Indeed, the law imposes on *providers*, not insurance carriers, the duty to determine to the best of their ability whether Medicare is a primary or secondary payer. *See* Medicare Claims Processing Manual, Chapter 26, p. 6. To the extent anyone "caused" the providers to submit false bills to Medicare, it was not the insurers.

In her initial brief, Plaintiff does not address her failure to allege "presentment" with particularity. Arguments not preserved in an initial brief are deemed abandoned and will not be considered. *See, e.g.*, *U.S. v. Levy*, 416 F.3d 1273, 1275-76 (11th Cir. 2005) (per curiam). For this reason alone, the dismissal of Counts 1-2 should be affirmed.

Even if the Court overlooks the abandonment, however, Plaintiff's brief merely repeats her arguments that the insurers retained primary payer responsibilities. IB at 29-32. As discussed in Section I above, the complaint's allegation that State Farm improperly "caused" these bills to be presented to Medicare fails because no law or regulation requires a liability insurer settling a personal-injury claim to set aside funds to cover future medical expenses. Rather, the parties were free to proceed as they did and fashion a settlement that placed the responsibility for paying future medical expenses on the Plaintiff out of settlement funds. *See supra* at 19-28. Because the insurers did not "cause" false bills to be presented to Medicare, the district court did not err in ruling that Counts 1-2 fail.

### b.    Counts 1-2 Failed the False Claims and Materiality Requirements.

For the same reasons, Counts 1-2 fail to allege the existence of *false* claims to Medicare made by State Farm. To satisfy the second element of a § 3729(a)(1)(A) claim, the relator must identify with the particularity required by Rule 9(b) the

specific document and statement submitted to Medicare alleged to be false. *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012).

Plaintiff's theory of falsity is that "the providers certified falsely to the unavailability [of] other health care plans." IB at 33. In other words, Plaintiff argues because the insurers should not have been released from responsibility for future medicals, they remained primary payers, and "[w]hen providers submitted claims to Medicare as primary payer, and omitted State Farm and Motorists as other insurance plans, these certifications were untrue." *Id.*

If provider certifications were untrue, it is only because the Stillwells failed to disclose to providers that *the Stillwells* were responsible for post-settlement medical expenses up to the amount of the settlement. As demonstrated in Section I, there was nothing improper about the way the settlement was structured to make the Stillwells responsible for future medical expenses. State Farm and Motorists paid $176,327.01 of the settlement funds directly to the Stillwells, relying on the Stillwells to pay future medical bills out of these proceeds. If any bills, including the $152,361.23 in payments represented by the statements attached to the complaint as Exhibits S-V, were submitted to Medicare, the Stillwells caused that submission, not the insurers.

Plaintiff also argues the insurers' purported failure "to report in compliance with mandatory Section 111 requirements is akin to an affirmative false certification

of a material fact." IB at 32. But Plaintiff admits she "did not state so expressly" in her complaint. *Id.* Instead, she asks this Court to "infer from the allegations in the complaint that the insurers falsely represented to CMS that they were not primary plans responsible for coverage on William's injury-related medical care." *Id.*

This Court's precedent rejects this argument. This Court has ruled that "[b]ecause it is the submission of a false claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." *Corsello*, 428 F.3d at 1013. "Although we construe all facts in favor of the plaintiff when reviewing a motion to dismiss, we decline to make inferences about the submission of fraudulent claims because such an assumption would "strip all meaning from Rule 9(b)'s requirements of specificity." *Id.* (cleaned up); *see also U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1312 n.21 (11th Cir. 2002) ("We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the 'true essence of the fraud' of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme.").

Even setting aside the failure to plead the false statements with particularity, failure to report under the MSP Act alone cannot give rise to a false claim under the FCA as a matter of law for three reasons.

1.     A failure to report under Section 111 may result in a contingent penalty of $1,000 per claim per day to the government, but this contingent penalty is not recoverable under the FCA. CMS "may," not "must," assess penalties for non-compliance with reporting obligations of "up to" $1,000. 42 U.S.C. § 1395y(b)(8)(E)(i). But this possibility of the Government imposing a penalty in the future is not a "payment obligation" to the Government. *See U.S. ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.*, 843 F.3d 1033, 1036-38 (5th Cir. 2016) (it is "widely accepted" that contingent penalties are not "obligations"). And in any event, during 2016, the relevant time frame of this case, CMS had not promulgated a rule that would provide for enforcement of this provision of the MSP Act. *See Illinois Ins. Guar. Fund v. Cochran*, 2021 WL 1600172, at *4 (N.D. Ill. Apr. 23, 2021) ("Although CMS has statutory authority to impose penalties, CMS has not yet promulgated a final rule on how and when it may impose penalties").[9] In sum, a statute enforceable through an unassessed monetary penalty creates an obligation to obey the law, not an obligation to pay money. *Simoneaux*, 843 F.3d at 1037.

---

[9] As of August 1, 2022, CMS's proposed final rule was still under regulatory review. *See* https://www.reginfo.gov/public/do/eoDetails?rrid=229413. Moreover, even under that prospective rule, no penalty will be enacted below an "error tolerance" (proposed at 20 percent in a given reporting cycle). 85 Fed. Reg. 8793, 8798-99 (Feb. 18, 2020).

2.    The "*sine qua non* of an FCA violation is a submission of a false claim to the government," *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1103 (11th Cir. 2020) (cleaned up), and the law is well settled that a mere disregard of government regulations is not enough to state a FCA claim. *See Corsello*, 428 F.3d at 1012 ("Liability under the [FCA] arises from the submission of a false claim to the government, not the disregard of government regulations or failure to maintain proper internal policies"); *Klusmeier*, 469 F. App'x at 721 (dismissing claim when allegations did not show monthly invoices sent in non-compliance with government regulations actually resulted in a fraudulent request for payment); *U.S. ex rel. Kasowitz Benson Torres LLC v. BASF Corp.*, 929 F.3d 721, 728 (D.C. Cir. 2019) (FCA claim cannot be based on failure to adhere to reporting requirements); *see also U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 437 (6th Cir. 2016) ("the FCA is aimed at stopping fraud against the United States and does not create a vehicle to police technical compliance with federal obligations") (citations and quotations omitted); *U.S. ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 307 (3d Cir. 2011) (FCA is not "a blunt instrument to enforce compliance with all…regulations"). Here, Plaintiff has not shown how a failure to report, even if credited, resulted in a false claim to the government.

3.    In *Escobar*, the Court explained that a misrepresentation is not material "merely because the Government designates compliance with a particular statute,

regulatory, or contractual requirement as a condition of payment…[or because] the Government would have the option to decline to pay if it knew of the defendant's noncompliance." 579 U.S. at 194. Materiality also "cannot be found where noncompliance is minor or insubstantial." *Id.* After *Escobar*, courts have held that a failure to comply with technical reporting requirements does not satisfy the materiality requirement of the FCA when the government would have paid the same amount on the claim. *See U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017); *U.S. v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (dismissing False Claims Act complaint on materiality grounds because "federal agencies in this case have already examined [the claims] multiple times over and concluded that neither administrative penalties nor termination was warranted").

*Petratos* is illustrative. There, the court affirmed the dismissal of a FCA claim where the relator alleged a drug manufacturer suppressed data that caused doctors to certify incorrectly that a cancer drug was necessary for certain Medicare patients. The district court noted the complaint contained no factual allegations that CMS would not have reimbursed the claims had the alleged reporting deficiencies been cured. According to the Third Circuit, this "dooms" Plaintiff's case. 855 F.3d at 490. "Simply put, a misrepresentation is not 'material to the *Government's payment decision*,' when the relator concedes that the Government would have paid the claims with full knowledge of the noncompliance." *Id.* Similarly, when the relator

"does not plead that knowledge of the violation could influence the Government's decision to pay, the misrepresentation likely does not 'have a natural tendency to influence…payment,' as required by the statute." *Id.* (cleaned up). Indeed, the court noted the government agencies "deemed these violations insubstantial (or at least would do so if made aware)." *Id.* Accordingly, "we do not think it appropriate for a private citizen to enforce these regulations through the False Claims Act." *Id.*

Here, any failure to report on the part of the insurers was not material to any payment obligation. As discussed *supra* at 41, the exhibits to the complaint show CMS clearly knew the terms of the settlement and received everything it demanded from the parties in terms of the recovery of conditional payments. In addition, the parties were entitled to place the responsibility of post-settlement medical expenses on the Stillwells. Accordingly, apart from the possibility the Stillwells themselves failed to comply with their settlement obligations and caused providers to make false claims to CMS, there was no false claim or failure on the part of the insurers to satisfy their primary payer obligations.

Thus, any failure to report on the part of the insurers, under the facts set forth in the complaint and its exhibits, cannot give rise to an FCA claim as a matter of law.

Plaintiff also complains that the unsigned global release was a false record. IB at 29, 32. But once again, the exhibits attached to her complaint belie that assertion.

Although Plaintiff alleges the original Motorists release falsely stated that Mr. Stillwell "has completed treatments for his injuries suffered in the Incident," R.105 ¶ 105, that statement was not incorporated in the operative and enforced global release. R.105-16 at 19-21. Thus, the district court did not err in ruling that Counts 1-2 "fail[] to show that the defendants knowingly caused healthcare providers to present false claims because the claims were true." R.124 at 13.

### c.    Counts 1-2 Failed the Knowledge Requirement.

Counts 1-2 similarly fail to allege how State Farm *knowingly* caused the presentation of false claims to Medicare. Plaintiff does not even allege State Farm knew of the statements identified in Exhibits S-V. She only alleges State Farm "intentionally or recklessly" avoided its reporting requirements under the MSP Act. *E.g.*, R.105 ¶ 3.[10] But these bare legal conclusions are insufficient. This is particularly true considering the district court's correct finding that the complaint failed to allege facts showing the insurers remained primary payers after paying in

---

[10] Plaintiff does argue that she "alleges facts showing the attorneys for the primary plans had actual knowledge of Medicare's payment for William's injury-related care, and of the plans' obligation to reimburse the government for those payments." IB at 37. However, she does not make this argument in challenging the dismissal of Counts 1-2. Nonetheless, the attorneys' knowledge of "Medicare's payment" and the insurers' responsibility to reimburse Medicare for "those payments" is irrelevant in light of the complaint's exhibits showing the settlement reimbursed Medicare in full for the conditional payments it made and for which it sought reimbursement. Thus, even if Plaintiff's argument applied to Counts 1-2, this knowledge cannot relate to the presentment of a *false* claim to Medicare.

accord with the settlement and after Mr. Stillwell accepted responsibility for future medical expenses. *See supra* at 12-19.

### 2. The District Court Correctly Dismissed Counts 3-4: Knowing Use of a False Record.

In Counts 3-4, Plaintiff claims the insurers violated the FCA provision imposing liability upon a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). The elements of the claim are (1) the defendant made or caused to be made a false statement; (2) the defendant knew it to be false; and (3) the statement was material to a false claim. *Phalp*, 857 F.3d at 1154.

Here, Plaintiff does not allege any false claims in support of Counts 3-4 other than those alleged for Counts 1-2. *See* R.105 ¶¶ 152, 157. Because she fails to adequately state a claim in Counts 1-2, the district court did not err in ruling that Counts 3-4 fail for the same reason.

In addition, as the Magistrate Judge ruled in evaluating an earlier version of the complaint, Plaintiff failed to show how the global release "was a false record submitted to Medicare" or "how the global release forced Mr. Stillwell's healthcare providers to submit fraudulent claims to Medicare." R.71 at 25. The global release did not contain the language to which the Stillwells objected, that Mr. Stillwell "has completed treatment for his injuries suffered in the incident." R.105-16 at 19-21. Although the Stillwells refused to sign the global release, the Indiana courts enforced

it. Accordingly, that "release is not a false record because the Indiana court validated the settlement agreement based on the Memorandum of Understanding between the parties and so enforced the settlement including the global release." R. 71 at 25.

Plaintiff's initial brief does not address any of these infirmities. It argues only that the district court "took no issue with the language of the releases rejected by the Stillwells, including the false statement about William's 'concluded' medical care." IB at 32. This assertion is unfounded, though, in light of the exhibits attached to the complaint. Although Plaintiff alleges State Farm "acknowledged" the "possibility of future medical services," that nowhere demonstrates with particularity that the terms of the release are false in light of the Stillwells' own agreement to release the named party tortfeasors against future medical liens. R.105-14 at 2-3. Plaintiff does not explain how the compromise of the Stillwells' litigation position during settlement negotiations somehow creates in State Farm a knowledge of falsity of release terms. Once again, the district court did not err in dismissing Counts 3-4.

### 3.    The District Court Correctly Dismissed Counts 5-6: Conspiracy To Present a False Claim.

In Counts 5-6, Plaintiff alleges that the insurers violated 31 U.S.C. § 3729(a)(1)(C), which creates liability for any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)." A relator must allege (1) an unlawful agreement between defendants to commit a violation of § 3729(a)(1); (2) an act performed in furtherance of the conspiracy; and (3) the United States

suffered damages as a result. *United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 791 (11th Cir. 2018). Here, the district court correctly ruled that "without a false claim or statement, the conspiracy claims in Counts V and VI also fail." R.124 at 13.

Plaintiff's only argument in her Initial Brief is to say her "allegations fit even more comfortably…within the conspiracy allegations in Counts 5 and 6." IB at 35. For all the reasons discussed above with respect to the preceding FCA counts, however, the district court did not err in this ruling. And in any event, because Counts 5-6 contain only bare legal conclusions shorn of any specific allegations of agreement or an overt act in support of an agreement, the district court did not err in ruling that "these unsupported assertions fail under Rule 9." R.124 at 16.

Moreover, the district court also dismissed Counts 5-6 on an additional, independent ground; those counts fail to allege conspiracy with the particularity required by Rule 9(b). R.124 at 15-16. A conspiracy claim must allege "*specific* facts that show an agreement to violate the False Claims Act." *HPC Healthcare*, 723 F. App'x at 791. The district court correctly held the complaint alleges only that the insurers "conspired…to defraud…the Medicare Program, by getting false or fraudulent claims allowed or paid." R.105 ¶¶ 164, 169. The complaint, however, does not "support[] this assertion with factual allegations about the substance or circumstances of the agreement." R.124 at 15-16. Nor does the complaint identify any direct communications between State Farm and Motorists; the only

-49-

communications attached to the complaint are between the Stillwells' Indiana counsel and counsel for the defendants. R.105-7; 105-12, 105-13, 105-15, 105-16 at 10-14, 22.

Plaintiff does not challenge the district court's conclusion that her conspiracy allegations are shorn of the factual detail required to plead these claims with particularity, and thus, she has waived her right to appeal the dismissal of Counts 5 and 6. This Court has declared: "To obtain reversal of a district court's judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Because Plaintiff failed to challenge the court's finding that the conspiracy allegations of Counts 5-6 were fatally infirm, the Court must affirm the dismissal of those claims.

### 4.    The District Court Correctly Dismissed Counts 7-8: Reverse False Claim.

The district court also correctly dismissed the reverse false claims act claims in Counts 7-8. In these counts, Plaintiff alleged the insurers violated 31 U.S.C. § 3729(a)(1)(G), which creates liability for any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit

money or property to the Government." This provision is referred to as the "reverse false claims" provision because it covers a material misrepresentation to avoid paying money owed to the government. *Matheny*, 671 F.3d at 1222; *U.S. ex rel. Cullins v. Astra, Inc.*, 2010 WL 625279, at *5 (S.D. Fla. Feb. 17, 2010) (quoting S. Rep. No. 99-345, at 18 (1986); 1986 U.S.C.C.A.N. 5266, 5283). The elements are: (1) a false record or statement; (2) defendant's knowledge of the falsity; (3) defendant made, used, or caused to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation. *Matheny*, 671 F.3d at 1222; *see also United States v. Bourseau*, 531 F.3d 1159, 1164-71 (9th Cir. 2008) (collecting cases).

Counts 7-8 contain no factual allegations to support these claims. These counts allege no amounts owed to the government by the insurers and provide no other information to put the defendants on notice of the substance of the claims. The district court ruled that "because the insurers reimbursed CMS for the conditional payments, no unpaid obligation exists." R.124 at 13. The Magistrate Judge further noted in dismissing an earlier iteration of the complaint that the only exhibits to the complaint reflected purported payments made to the government. R. 71 at 28. The same is true with respect to the third amended complaint. Although Counts 7-8 incorporate the allegations of paragraphs 1-24 and 27-141, those paragraphs

nowhere allege specific payments *not* made to Medicare that should have been made. Accordingly, the district court did not err in ruling Counts 7-8 fail because "no unpaid obligation exists." Doc. 124 at 13.

In her Initial Brief, Plaintiff acknowledges she "must plead facts showing an obligation to pay that is independent of an affirmative False Claims Act violation." IB at 36. She contends in ¶¶ 172-181 of the complaint she satisfies this standard, *id.* at 35-36, but those paragraphs do not identify any independent obligation but merely incorporate the same factual allegations that comprise her other FCA claims.

The only "independent" source" Plaintiff cites is "MSP," IB at 36, apparently a reference to the MSP Act. Thus, her argument that Counts 7-8 state claims amounts to nothing more than a reprise of her contention that the insurers retained a primary payment responsibility to cover Mr. Stillwell's future medical expenses and failed to report this continuing obligation to CMS. *Id*. at 36-37. Because her MSP Act and other FCA claims were correctly dismissed as described above, the district court likewise did not err in dismissing her reverse False Claims Act claims.

### B. The District Court Correctly Ruled That Plaintiff Failed To Allege Causation.

The district court also correctly dismissed Counts 1-8 for failure to allege facts showing causation. The court noted Plaintiff was required to plead, with particularity, that the insurers caused Mr. Stillwell's healthcare providers to submit false claims to Medicare. R.124 at 13-14 (citing *U.S. ex rel. Clausen v. Lab'y Corp.*

*of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Moreover, to adequately plead causation, Plaintiff had to allege the defendants' conduct was a substantial factor inducing the claim's or statement's submission, and the submission was reasonably foreseeable. *Id.* at 14 (citing *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020)).

Plaintiff appears to take issue with the *Ruckh* standard of causation, arguing that "[a]t the pleading stage," the requirement "to substantiate proof of causation is less exacting." IB at 34 (citing *U.S. ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 460 (E.D. Pa. 2004)). To be sure, *Ruckh* was decided on post-trial motions, not a motion to dismiss. But its standard for proving causation is applicable on a motion to dismiss under *Twombly*. *See U.S. v. Taneja*, 2021 WL 3518206, at *3 (M.D. Fla. 2021) (applying *Ruckh* standard to motion to dismiss); *U.S. v. Genesis Global Healthcare*, 2021 WL 4268279, at *15-*16 (S.D. Ga. Sept. 20, 2021) (same).

In any event, as the district court observed, the courts emphasize if a defendant does not submit a claim or statement to CMS directly, the defendant *only* becomes liable under the FCA by directing or inducing a third party to submit a false claim or statement. *See Drescher*, 305 F. Supp. 2d at 460; *U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distributors, Inc.*, 2015 WL 8207477, at *7 (S.D. Ga. Dec. 7, 2015); *Negron v. Progressive Cas. Ins. Co.*, 2016 WL 796888, at *6 (D.N.J. Mar. 1, 2016). Here, Plaintiff never identified any conduct by the insurers directing or inducing a

healthcare provider to file a false claim with Medicare, nor did the insurers convey, either implicitly or explicitly, that Medicare was the primary payer on a claim.

Plaintiff asserts the FCA claims allege the insurers "caused submission of false claims to Medicare" because "providers certified falsely to the unavailability [of] other health care plans," and that the insurers' "failure to make primary payments, non-compliance with Section 111 reporting requirements, releases that purported to shift primary payer responsibility to a beneficiary with Medicare's knowledge—caused providers' submissions to be legally false." IB at 33, 35. This argument fails for the reasons discussed above. Simply put, the insurers did not fail to make primary payments, and even assuming, *arguendo*, that they failed to comply with Section 111 reporting, it did not change the fact that CMS was fully reimbursed for all its conditional payments and the insurers were not obligated to pay future medical expenses. Thus, the district court did not err in concluding that "[a]lthough failing to report a primary-payer responsibility might result in a false claim or statement by a third party," Plaintiff still did not identify any "conduct by the insurers directing or inducing a provider to file a false claim with Medicare." R.124 at 15.

Plaintiff's principal case, *Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001), does not even address the issue of causation, but rather, addresses whether the failure to disclose violation of a qualitative standard of care for "spirometry services" constitutes an "implied false certification" that supports FCA liability. The court

held it did not. The Supreme Court overruled that determination in *Escobar*, holding "implied false certification" can "in some circumstances" provide a basis for FCA liability when a material omission renders the defendant's representations misleading with respect to the goods or services provided. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 187 (2016). But the court nowhere addressed the causation standard applied by the district court here.

Simply put, the complaint provides no connection between the insurers' alleged failure to report and the providers' submission of requests for payment of Mr. Stillwell's post-settlement medical expenses. If anything, the Stillwells falsely represented to the providers that Medicare was the appropriate source of payment—rather than their own settlement proceeds.

Finally, Plaintiff asserts that "[h]ad the insurers provided required notice of no-fault coverage, providers could have billed them directly." IB at 34. This ignores her own exhibits showing the $5,000 in medical payments coverage was paid to her and exhausted. *See supra* at 33. There was no remaining no-fault coverage for the insurers to report, and accordingly, Plaintiff's argument should be rejected.

## <u>CONCLUSION</u>

This Court should affirm in all respects.

Dated:  August 1, 2022                    Respectfully submitted,

<u>/s/  D. Matthew Allen</u>
Benjamine Reid (FBN 183522)
breid@carltonfields.com
Jeffrey A. Cohen (FBN 057355)
jacohen@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

D. Matthew Allen (FBN 866326)
mallen@carltonfields.com
CARLTON FIELDS, P.A.
Suite 1000
4221 West Boy Scout Boulevard
Tampa, Florida 33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

*Counsel for Appellee*
*State Farm Fire and Casualty Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Eleventh Circuit Rule 28-1. This brief contains 12,985 words and uses a Times New Roman 14 point font.

/s/  D. Matthew Allen
D. Matthew Allen
Florida Bar No. 866326

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of August, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/  D. Matthew Allen
D. Matthew Allen
Florida Bar No. 866326

129179179